## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL BENTLEY, ROBERT DEGNER, CHERYL ERVIN, AND SAM LEE, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>    v.<br><br>LG ELECTRONICS U.S.A., INC.<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

## <u>NATURE OF THE ACTION</u>

1.      This class action is brought on behalf of individuals who purchased refrigerators manufactured by LG that are equipped with linear compressors (the "LG Refrigerators"). LG designed, manufactured, promoted, distributed, and sold the LG Refrigerators, pricing them in the range of $1,400 to $7,000.

2.      A latent defect causes failure of the refrigerator's linear compressor—a central component responsible for cooling. The compressor defect renders the LG Refrigerators unable to perform their most basic function: cooling and preserving food and beverages. When the compressor defect manifests, the refrigerator warms and its perishable contents spoil, unless they are

1

moved to a working refrigerator or cooler. Although refrigerators last 13 years on average, the LG Refrigerators have been failing *en masse* within 36 months.

3.     LG previously settled a class action alleging its refrigerators are defective. The claims extinguished by the judgment in that case, however, are limited to those involving purchases before January 29, 2014, which marks the beginning of the class period in this case. *See* Judgment, *Clark v. LG Elecs. USA, Inc.*, No. 3:13-CV-485-JM (JMA), ECF No. 71, ¶ 2 (S.D. Cal. May 15, 2015); *see also id.* ECF No. 44-3, § 2.71(a). Since settling *Clark*, LG has continued selling defective refrigerators that have failed at extremely high rates—a "pandemic," according to one news report. Despite its knowledge of the compressor defect, LG sold and continues to sell the LG Refrigerators without alerting purchasers to the problem.

4.     When consumers have made warranty claims for malfunctioning LG Refrigerators, LG has not replaced them with working units or offered refunds. Instead, LG has attempted futile repairs or replaced defective compressors with other defective compressors—a practice that, for many, has resulted in repeated refrigerator failures. Consumers who bought LG Refrigerators have been forced to live out of coolers or prematurely buy replacement refrigerators.

5.     The compressor defect existed in each LG Refrigerator at the time it was sold. Plaintiffs were deprived of the benefit of their bargain and bring this

2

action to obtain relief for themselves and others who purchased an LG Refrigerator.

## PARTIES

6.      Plaintiff Michael Bentley is a Michigan citizen residing in St. Clair Shores, Michigan.

7.      Plaintiff Robert Degner is a Florida citizen residing in Gainesville, Florida.

8.      Plaintiff Cheryl Ervin is a Utah citizen residing in West Valley City, Utah.

9.      Plaintiff Sam Lee is a Washington citizen residing in Shoreline, Washington.

10.     Defendant LG Electronics U.S.A., Inc., the North American subsidiary of LG Electronics Inc., is incorporated under Delaware law and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class

members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and

(3) Plaintiffs and Defendants are domiciled in different states.

12.     The Court has personal jurisdiction over LG because its principal

place of business is within this District and it has sufficient minimum contacts in

New Jersey to render the exercise of jurisdiction by this Court proper and

necessary.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims occurred in

this District.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Plaintiff Michael Bentley

14.     Plaintiff Michael Bentley purchased a Kenmore-branded LG

Refrigerator (Model 795.51833.411) for approximately $1,500 in 2015 from a

Sears store in Roseville, Michigan.

15.     Before purchasing the refrigerator, Mr. Bentley saw sales and

marketing materials portraying the refrigerator as high quality and fully

functional. After purchasing the refrigerator, but before using it, Mr. Bentley was

provided with additional information about the unit, and its compressor, in

product brochures and owners' manuals. At no point before using the refrigerator

did Mr. Bentley see any disclosure that the refrigerator is defective and prone to compressor failure.

16.     In September 2018, Mr. Bentley's refrigerator failed from the compressor defect. His refrigerator would not stay cool, resulting in spoiled food.

17.     Mr. Bentley contacted Sears to request repairs.  Although a Sears representative initially told Mr. Bentley that the repairs would be covered by his warranty, Sears charged him $100 to diagnose the problem. The technician determined that the compressor needed to be replaced and charged Mr. Bentley $700 for the new compressor.

18.     The refrigerator failed from the compressor defect again on or about March 20, 2019.  His refrigerator would not stay cool, resulting in spoiled food.

19.     Mr. Bentley next contacted a local repair shop—Raleigh Appliance— and a technician came to his home on four separate occasions to diagnose and repair the refrigerator. The repairs cost Mr. Bentley approximately $750.  The repairman advised Mr. Bentley that he was wasting money on repairs because the refrigerator would likely fail again from the same problem.

20.     On April 2, 2019, Mr. Bentley purchased a new General Electric refrigerator to replace his LG Refrigerator.  The GE refrigerator cost approximately $1,279.  Mr. Bentley is retired and the cost of the new refrigerator was approximately half his monthly income.

21.     As a result of the repeated failures, Mr. Bentley did not have a working refrigerator for three to four weeks.

22.     Before purchasing his refrigerator and until it failed, Mr. Bentley did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund during Sears's 30-day return period.

### Plaintiff Robert Degner

23.     Plaintiff Robert Degner purchased a Kenmore-branded LG Refrigerator (Model 795.7402.410) for $2,584.98 on October 29, 2014 from a Sears store in Gainesville, Florida.

24.     Before purchasing the refrigerator, Mr. Degner saw sales and marketing materials portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Mr. Degner was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Mr. Degner see any disclosure that the refrigerator is defective and prone to compressor failure.

25.     In September 2018, Mr. Degner's refrigerator failed from the compressor defect. His refrigerator would not stay cool, resulting in spoiled food.

26.     Mr. Degner contacted Sears to request repairs on September 18 but was told that his refrigerator was no longer eligible for warranty service.

27.     Mr. Degner next contacted a local repair shop—Voyles Service Inc.—and a technician came to his home on September 21. Within 5 minutes of arriving, the technician determined that Mr. Degner's compressor had failed and directed Mr. Degner to again contact Sears.  Voyles charged Mr. Degner $78 for the service visit.

28.     Mr. Degner called Sears again, and on September 22, a Sears repair person visited his home and determined that the refrigerator needed a new compressor.  The repairmen arranged for installation to occur on October 4. Sears charged Mr. Degner $94.79 for the visit.

29.     On October 4, a Sears repair person installed the new compressor and dryer and charged Mr. Degner $271.61 for the repair.

30.     Mr. Degner did not have a working refrigerator during the seventeen days between his reporting of the problem and the repair.

31.     Mr. Degner's refrigerator has begun to operate at warmer temperatures and is showing signs that it will again fail from the compressor defect.

32.     Before purchasing his refrigerator and until it failed, Mr. Degner did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund during Sears's 30-day return period.

**Plaintiff Cheryl Ervin**

33.     Plaintiff Cheryl Ervin and her husband purchased an LG Refrigerator (Model LDCS24223W) for $1,338 on December 23, 2017 from an RC Willey store in Salt Lake City, Utah.

34.     Before purchasing the refrigerator, Plaintiff Ervin saw sales and marketing materials portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Ms. Ervin was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Ms. Ervin see any disclosure that the refrigerator is defective and prone to compressor failure.

35.     On September 27, 2018, Ms. Ervin's refrigerator failed from the compressor defect. Her refrigerator would not stay cool, resulting in spoiled food.

8

36.    Ms. Ervin contacted RC Willey, which directed her to contact LG. LG then directed Ms. Ervin to call Mr. Appliance, an authorized repair provider.

37.    A Mr. Appliance repair person visited Ms. Erwin's home and determined that her LG Refrigerator needed a new compressor, evaporator and condenser. The repairperson remarked that Ms. Erwin was "in for a battle" because LG compressors fail frequently.

38.    After waiting approximately 4 weeks to get the needed parts from LG, the Mr. Appliance repair person returned to Ms. Ervin's home to fix the refrigerator.  The new compressor, however, did not work.  The Mr. Appliance repairman offered to return with a working part.

39.    After another 4 weeks, Ms. Ervin called Mr. Appliance to inquire about the status of the new part. She learned that Mr. Appliance repair person had not ordered the part because LG refused to pay him for his work or the other parts he ordered.

40.    Ms. Ervin called LG again, who agreed to contact Mr. Appliance about the repair. Ms. Ervin then called Mr. Appliance again, but Mr. Appliance told Ms. Ervin that it is not accepting any more jobs from LG.

41.    Ms. Ervin called LG again, and LG agreed to send an LG technician. Over the course of two visits, the LG technician determined there was a leak in the cooling system and replaced the compressor and related parts.

42.     Ms. Ervin did not have a working refrigerator during the 9 weeks between reporting of the problem and the repair.

43.     Before purchasing her refrigerator and until it failed, Ms. Ervin did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, or in the accompanying brochures, she would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price she did, or would have returned her LG Refrigerator for a refund during RC Willey's 14-day return period

## Plaintiff Sam Lee

44.     Plaintiff Sam Lee purchased an LG Refrigerator (Model LPCS34886C) for $3,613.49 on January 3, 2016 from Costco.  He purchased his LG Refrigerator while living in Shoreline, Washington, and, on February 3, Costco delivered the refrigerator to his home in Shoreline, Washington.

45.     Before purchasing the refrigerator, Mr. Lee saw sales and marketing materials portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Mr. Lee was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Mr. Lee see any disclosure that the refrigerator is defective and prone to compressor failure.

46.     On April 18, 2019, Mr. Lee's refrigerator failed from the compressor defect. His refrigerator would not stay cool, resulting in spoiled food.

47.     Mr. Lee contacted an independent repair shop who declined to work on his refrigerator because it was made by LG.  Mr. Lee contacted a second repair shop, which directed him to contact LG.

48.     When Mr. Lee contacted LG, a representative advised him to turn his refrigerator off and then on again, but this troubleshooting was ineffective.   LG then agreed to send a repair person.

49.     The LG repair person replaced the compressor on Mr. Lee's refrigerator.  He informed Mr. Lee that he had replaced compressors on at least 2 other LG Refrigerators that same day and warned Mr. Lee that the refrigerator would likely fail again in a few years.

50.     Mr. Lee did not have a working refrigerator between his reporting of the problem and the repair.

51.     Before purchasing his refrigerator and until it failed, Mr. Lee did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the

price he did, or would have returned his LG Refrigerator for a refund during

Costco's 90-day return period.

*      *      *

52.     Plaintiffs prefer the features and aesthetics of the LG Refrigerators to

other refrigerators. LG continues to advertise the LG Refrigerators' high quality

and functionality. But, because of their experience with the LG Refrigerators,

Plaintiffs do not trust LG's representations about its refrigerators. As a result,

although Plaintiffs would like to buy another LG Refrigerator, they will not do so

unless LG takes sufficient steps to cure the defect and ensure the accuracy of its

representations about its refrigerators.

## COMMON FACTUAL ALLEGATIONS

53.     Refrigerators, an essential part of the modern American household,

can be found in 99.9% of homes. Refrigerators allow people to preserve their

food and reduce the risk of food-borne disease.

54.     According to the National Association of Home Builders, the average

life span of a refrigerator is approximately 13 years. LG has represented that its

refrigerators have a 20-year life span.

55.     The industry standard is that a refrigerator should not have any major

failures within the first 10 years of use.

12

A.    **The LG Refrigerators and LG's Representations About Them**

56.    LG designs, manufactures, distributes, and sells refrigerators throughout the country. The LG Refrigerators are available for purchase in large retail stores like Sears, Home Depot, and Best Buy as well as in smaller appliance stores and online. The Manufacturer's Suggested Retail Price for the LG Refrigerators ranges from approximately $1,400 to $7,000, with most models falling in the $1,400 to $3,000 MSRP range.

57.    A compressor is the central component—the "engine"—of any refrigerator. A compressor contains a motor and pump that move refrigerant throughout the refrigerator's cooling system. Typically, sensors in a refrigerator detect temperature increases and activate the compressor, which triggers the refrigeration cycle.

58.    After being released from the compressor, refrigerant flows through the refrigerator's condenser. The condenser—usually located outside of the refrigerator—condenses the vaporized refrigerant to liquid form, releasing heat in the process. The liquid refrigerant then flows through the refrigerator's evaporator, which draws heat from the regions of the refrigerator that need to be cooled, thus cooling the inside of the refrigerator and also causing the refrigerant to vaporize. The vaporized refrigerant then returns to the compressor, and the cycle repeats.

59.     LG developed its proprietary linear compressor in the early 2000s. LG designed the linear compressor to be an energy-efficient replacement for the reciprocating compressor used in many other refrigerators. Instead of the traditional, less efficient crank mechanism, which converts rotary motion into reciprocating motion, LG's linear compressor uses a magnet and springs to drive a piston motor.

60.     LG's proprietary linear compressor refrigerators are important to its business and are featured prominently in its public representations, including in advertisements and marketing materials. LG represented in a November 24, 2014 press release that 10 million LG Refrigerators had been sold since 2001. According to LG:

> In 2001, LG introduced the world's first refrigerator powered by an Inverter Linear Compressor, continuing to improve the technology ever since. . . . LG's technology employs a straight piston drive instead of a conventional reciprocating drive, resulting in less internal friction than conventional motors. This increases the refrigerator's reliability and durability while also generating less noise while running. LG refrigerators featuring Inverter Linear Compressor technology proved to be approximately 32 percent more energy efficient than those equipped with conventional reciprocating compressors, contributing significantly to lower electricity bills.

61.     In the same release, LG touted that the LG Refrigerators are "up to 25 percent quieter" than refrigerators powered by reciprocating compressors. LG also touted the linear compressor's reliability, stating that the component

14

"reduced internal friction by 64.2 percent, causing less wear to the refrigerator and helping it to achieve a 20 year life-span, a first in the industry."

62.    LG singled out the linear compressor in its public statements about its refrigerators: "LG is so confident in its technology that the Inverter Linear Compressor has been covered under a 10-year warranty since 2009, a first in the industry."

63.    LG issued another press release on March 21, 2017 to mark the sale of its "15th million refrigerator worldwide powered by its proprietary Inverter Linear Compressor"—which LG characterized as "the appliance division's most successful core technology." In the same release, LG projected that it would sell 4 million more units in 2017, or "an average of seven refrigerators sold every minute." As in the 2014 press release, LG cited statistics concerning the linear compressor's performance, claiming that it "delivers 55 percent better energy efficiency and 15 percent less noise compared [to] its first generation compressor."

64.    Similar statements appear on the LG website's refrigerator home page and product pages:

- "When you buy a refrigerator, you don't want to worry that it won't last. Because the Linear Compressor uses fewer moving parts and operates more efficiently, LG confidently backs the Linear Compressor with a 10-year limited warranty."

- "The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer."

- "You'll get all the latest features like LG's exclusive Linear Compressor technology, which delivers optimum cooling, operating efficiency and reliability."

65.    Statements approved by LG and made by its authorized resellers also advertised the linear compressors and the LG Refrigerators' overall functionality. These statements include the following:

- **Sears.** "For fresher food longer, Kenmore and Kenmore Elite refrigerators with GeniusCool™ technology use Digital Temperature Control, Multi Air Flow and electronic sensors to keep all of your food fresh while the linear compressor adjusts to quick temperature changes."

- **Best Buy.** "Achieve the right chill. Vents and a linear compressor will keep temperature and humidity conditions at ideal levels inside the fridge."

- **Home Depot.** "Linear compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer; strategically-placed vents in every section help to surround your food with cool air no matter where you put it."

- **Lowes.** "Smart Cooling® system is designed to maintain superior conditions within the refrigerator. The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer."

- **P.C. Richard & Son.** "With LG Smart Cooling® Plus technology, digital sensors help the Linear Compressor and Dual Evaporators maintain optimum temperature and humidity levels, while vents in every

section work with the Fresh Air Filter to surround your food with the freshest air possible."

**B.**     **The Defect Manifests in the LG Refrigerators**

66.     LG's linear compressors have caused consumers problems for many years. When an LG compressor fails, the refrigerator warms and the perishables within it spoil.

67.     LG's linear compressor contains an intake valve—where refrigerant enters—and a discharge valve—where refrigerant exists. These valves are responsible for regulating and controlling the flow of refrigerant through the compressor.

68.     LG's linear compressor works in close connection with another important component, called the evaporator. The evaporator is where heat transfer takes place. Together, the compressor and evaporator are essential components for cooling. Before refrigerant enters the compressor, it flows through the evaporator. The evaporator absorbs heat from the interior of the refrigerator and into the refrigeration system. This process causes the refrigerant to vaporize, and the vaporized refrigerant is then sent through the compressor.

69.     As used herein, "compressor defect" refers to the defective nature of the linear compressor and related parts, including the evaporator, in the LG Refrigerators.

70.   The tubing of the evaporator in LG Refrigerators is defective and prone to corrosion and pitting from ordinary usage. Pin-holes develop in the evaporator tubing, which cause leaks and allow atmospheric air to enter. Because of the air leakage, the refrigerant that passes from the evaporator to the condenser generates excess pressure that stresses the compressor and contaminates oil in the compressor.

71.   The compressor's components are defective and incapable of withstanding the additional pressure, resulting in failure. Typically the weakest component of the compressor—the discharge valve—is the first to fail.

72.   Once the compressor on an LG Refrigerator fails, even if a repair is performed, the refrigerator remains substantially certain to fail within two years because LG instructs its technicians to use the same defective parts as replacements.

73.   LG's linear compressors are thus inherently defective—and the defect inevitably manifests. LG nevertheless has responded to warranty claims by attempting futile repairs. As a result, consumers have been left without a refrigerator for weeks while they wait for service, and many have experienced repeated failures.

74.   One technician, whose company was previously an authorized repair unit for LG, reports that LG compressors fail at alarming rates compared to other

18

brands of refrigerators. He recalls replacing about 80 LG compressors per month, whereas his company only replaced about three to five compressors per month on competing refrigerator brands such as Thermador, Sub-zero, and Whirlpool. The technician stopped doing business with LG because of the high rate of compressor failures and LG's failure to adequately respond to the problem by providing non-defective parts for repairs.

75.     There have been thousands of complaints, from refrigerator repair professionals in addition to consumers, about LG Refrigerator failures. These complaints date back several years and include the following:

- **2/2/12:** ". . . Four years to the day, after plugging in our new fridge, the compressor failed. That was November 22, 2011. I am sending this note on February 2, 2012, and we are still waiting for parts to repair the new LG."

- **1/21/13:** "We purchased a top of the line LG refrigerator Model #LFX28978ST from Home Depot on July 4th, 2012. On December 23, 2012, it quit working. It is now January 21, 2013 and I am still without a refrigerator! I called the LG Hotline on December 23rd and was told that they could have their certified repairman out on the 28th of December. He came out and told me we needed a new compressor; he didn't carry this part on his truck so it would have to be ordered. The compressor would take a week to get here."

- **6/22/13:** ". . . The compressor failed within 4 years, and it never keeps the right temperature, constantly freezing food in the fridge. We set it at 45-47, it does 30-32. We're throwing away lots of vegetables ruined by freezing. Even worse, when we needed repair for the compressor, under warranty, we contacted LG. Their repairman came out and said he would order the part, and then we never heard from him again. Only

one local vendor would work on it. The rest said they refuse to work on LG…"

- **6/24/13:** "Compressor failed in less than 2 years. LG would not help me and then hung up on me. This is an awful company that makes cheap poor quality products!!! Be warned. Do not buy their products."

- **7/30/13:** "After slightly less than 3 years my French Door Refrigerator suddenly could not get cold enough to safely refrigerate the food and safely keep foods frozen. The temperature in the refrigerator box hovered at about 40 and the freezer at around 32. The temperatures would not change even though I increased the coldness setting. A repairman from a reputable repair company and after testing and checking all of the different components he said the compressor was failing. He said that it was a common problem with the LG refrigerator. He said he had several compressor failures in them a year and that nearly all of them were less than 3 years old. The repair cost is more than it is worth."

- **8/30/13:** "Purchased this LG Refrigerator Model LFX25974 on July 3, 2013 from Home Depot and was delivered on July 16. 7 weeks later, the freezer and refrigerator stopped cooling…. The ice was water! LG arranged to have an "authorized" repairman to come out. The appointment was confirmed with the ApplianceMan in Westerville, Ohio for Thursday, August 29th between 1-5p. NEVER SHOWED!!!! When I contacted them Fri. am, was told they "lost" my appt. After they arrived Friday afternoon, was told I needed new compressor and evaporator and parts ordered. 1-2 weeks before they come in and then need to schedule another appt to fix.... According to the other reviews, this seems to be the trend with LG. I will never purchase another LG appliance."

- **2/2/14:** "This was the biggest mistake buying the LG LFX 2578ST. After only 6 months the compressor conked out. LG has left us waiting for a replacement compressor on order that will take "2 or 3 days" at which point the repair person would be sent out…LG has been less than helpful and really left us stranded with no fridge. I have no confidence in their product and customer service has been disappointing. They are not solution focused, have no intention of replacing the fridge and state

20

they will cover only $250 in perishables in a lifetime. I would not recommend this product…."

- **6/9/14:** "We have had numerous issues with flooding and ice all over the floor and with the unit not keeping food cold enough. We contacted LG for service, only to realize that it would take two weeks to install a new compressor and worrying if that would hold. I lost over $200.00 in food."

- **8/3/14:** "Our 9 month old LG French Door Refrigerator has had a horrible vibrating sound almost from the day we bought it. As a final measure before throwing it out, I took the lower rear cover off the compressor area. The compressor is vibrating very loudly to the point of complete annoyance."

- **1/23/15:** "Model LFX28978SB - For the 2nd time in the last 4 months, I have thrown away all of the food in our LG refrigerator/freezer. This refrigerator had the compressor replaced 4 months ago and then again, one month later.**"**

- **10/27/15:** "They have been to my house 5 times, replaced the compressor twice along with other parts. I had to pay $600+ for the labor and parts that weren't under warranty. It still doesn't work. My wife called LG and they said there is nothing more they can do. I'm out $600 and a fridge. Lousy product and a lousy company!"

- **11/10/16:** "Terrible product. Compressor not functioning after only 18 months. Calling the service line is a joke. 40 minutes on the phone…. After all was said and done, it will cost me $348 for a service call which can only be done by their service techs. Absolutely pitiful product, Model LMXC23746S/00. I built homes for 40 years and never had to deal with a malfunctioning appliance this quickly."

- **4/28/17:** "Compressor went bad after 11 months. LG replaced the compressor. That one was bad as soon as it was plugged in. Replaced a third time. It has worked for 5 years and stopped cooling again. Been trying for 2 weeks to get someone to come and fix it. 4 bad compressors in 5 years. If you're thinking of buying a refrigerator think other than LG."

- **12/15/17:** "LG fridge LFXS29626S French Door…Compressor went out 1yr 4mos… No fridge for Thanksgiving and looks like no fridge for Christmas. Don't get me started on the customer service. One rep told me pretty much to get over it, she was without fridge once for 5 mos. 6 weeks is nothing! They all act like there's something wrong with us for feeling that the service is unacceptable. And they continue to get away with it."

- **5/17/18:** "We bought our LG LMXS30776S/02 less than two years ago from Best Buy…It stopped working on 5/8 and I called Best Buy - they couldn't send someone for 3 days…. The technician came today and said it needed a new compressor. He commented that this was the 5th LG Refrigerator compressor replacement he's worked on this month."

- **10/1/18:** "I bought a new LG Refrigerator in May 2018. Within a month, I started having issues with the refrigerator. It started making a very loud noise and had cooling issues. I called LG customer service, as it was under a manufacturer's warranty. For last 2.5 months, LG could not even repair the refrigerator or provide a replacement. Highly unprofessional customer service, as the update provided by them changes every week…."

- **1/8/19:** "1 year old LG French door broke down (no cooling) on Thanksgiving. Took them 19 days to get someone out there. Meanwhile was living out of coolers. They replaced the compressor, dryer and condenser… then on Christmas bam stopped working again…"

- **1/10/19:** "The compressor was replaced 5 days ago on Friday 1/4/2019. Five days later I am without a refrigerator and freezer again and have lost $200 -$250 in groceries. I have photos of the water leaking out of the ice maker on the door as well."

- **3/25/19:** "I bought my French door LG refrigerator in Jan 2018. Now - in March 2018 it is no longer cooling. I bought the extended warranty through Lowe's. They sent a tech to assess the problem. Compressor needs replacing. After only 14 months of use!"

76.    Aggrieved consumers formed a Facebook group—"LG Refrigerators – Life is NOT Good"—related to the compressor defect. The group, which has approximately 1,500 likes and follows, contains numerous pictures and accounts of consumers who experienced LG Refrigerator compressor failure.

### C.    LG's Knowledge of the Compressor Defect

77.    Many similar complaints of malfunctioning refrigerators, dating back years, have been made directly to LG on its website and on social media pages that LG regularly monitored. These complaints—and the sampling of complaints reproduced above—demonstrate LG's longtime knowledge of the defect.

78.    LG, moreover, has had exclusive and direct knowledge of the scale of the compressor problems from its communications with its authorized repair personnel, who have been inundated by repair requests for years.

79.    A local CBS television news affiliate recently ran a segment entitled: "'Pandemic' of dying LG fridges has log-jammed repair workers." CBS interviewed a consumer whose LG Refrigerator failed and could not be repaired because LG repair providers said "they were months out or they don't work on LGs anymore." One repair person reported that "[LG's] refrigerators are failing quite pandemically" and "it's a national thing." The repair person informed LG that his company would no longer work on LG refrigerators due to the high repair

volume, explaining "we're just getting buried in it." In response to the story LG said it was hiring more technicians.

80.    Another local news station reported in March 2018 that an LG consumer experienced the defect, but had to wait weeks for service because the replacement compressor was "on back order." Her replacement compressor then failed within a day after being installed.

81.    Yet another television news segment reported in October 2017 that several LG customers experienced the defect, then had replacement compressors fail, and were forced to pay for repairs. "The refrigerators compressors needed to be replaced," the report stated. "And it's not just them, a handful of other LG customers also reached out to Eyewitness News through email with the same problem. Some of the online reviews through consumer reports say much of the same." The reporter also interviewed local repair providers who said the compressor was on backorder or that they no longer work on LG Refrigerators.

82.    The *Clark* litigation, No. 3:13-CV-485-JM (JMA) (S.D. Cal. filed Feb. 28, 2013), further placed LG on notice of the widespread failures of its refrigerators containing the defective compressors.

83.    Additionally, LG gained direct knowledge of the compressor defect through its role as designer and manufacturer of the compressor product at issue. In developing the linear compressor, LG conducted testing, including by using

24

specialized lab equipment to measure the force generated by the motor, and by applying the same reliability tests that are applied to conventional motors as a standard measure.

84.    According to a 2002 white paper prepared by three LG Senior Research Engineers, the linear motor powering LG's linear compressor must also satisfy other, more intensive reliability tests due to its use of a magnet and other unique characteristics.

85.    In sum, (1) complaints from (a) consumers and (b) repair shops, (2) news reports, (3) the *Clark* class action, and (4) its own product testing provided LG with knowledge—well before Plaintiffs purchased their refrigerators—that the compressors in the LG Refrigerators are defective.

**D.    Inadequate Warranty Service**

86.    Many of the consumers who experienced the defect have voiced frustration with LG's warranty service or the warranty service of its authorized sellers and repair providers. Despite being aware of the defect, LG replaces defective parts with defective parts, exposing customers repeat failures.

87.    LG also requires consumers to wait for overwhelmed repair providers to obtain a replacement compressor and attempt the repair. Worse still, LG instructs technicians not to bring replacement compressors to the initial visit, thereby unnecessarily extending the time consumers must wait before receiving a

repair. And any repair will be temporary, at best, because the replacement part is equally defective.

88.     Further, LG until 2018 required consumers, after the first year of ownership, to pay for the labor associated with replacing the defective compressor. LG covered only the cost of replacement parts. Such costs generally range from $200 to over $1,000. (For LG Refrigerators purchased after January 1, 2018, LG covers parts for ten years and parts and labor for five years.)

89.     Regardless of whether LG pays labor costs for some consumers, its warranty performance, and the warranty performance of its authorized agents, is deficient. Plaintiffs and class members uniformly overpaid for their LG Refrigerators because of the defective compressor, and those who experienced the defect have been left without a refrigerator while waiting for LG to diagnose the problem and arrange for repairs.

90.     To date, LG has not implemented an effective remedy for those who suffer the compressor defect. LG instead continues to advise such individuals to replace their defective compressors with other defective compressors.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

91.     At all relevant times, LG knew that the LG Refrigerators were defective and knew that Plaintiffs and class members did not have that knowledge. Despite reasonable diligence on their part, Plaintiffs and class

members were kept ignorant by LG of the factual bases for the claims for relief asserted below.

92.    LG actively concealed the compressor defect by touting the LG Refrigerators' high quality and functionality without disclosing their defective nature. LG's concealment prevented Plaintiffs and class members from discovering their injuries and pursuing legal relief from LG.

93.    Plaintiffs did not discover and could not reasonably have discovered the compressor defect until their refrigerators prematurely failed.

## CLASS ACTION ALLEGATIONS

94.    Plaintiffs bring this action on their own behalf, and on behalf of the following class and state subclasses pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3):

**Class**

All persons within the United States, except in California, who purchased, other than for resale, an LG Refrigerator[1] from LG or its authorized retailers between January 30, 2014 and the present.

**Florida Subclass**

All persons who purchased, other than for resale, within Florida, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present.

---

[1] The LG Refrigerators include, without limitation, the models listed in Exhibit A.

27

### Michigan Subclass

All persons who purchased, other than for resale, within Michigan, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present.

### Washington Subclass

All persons who purchased, other than for resale, within Washington, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present.

### Utah Subclass

All persons who purchased, other than for resale, within Utah, an LG Refrigerator from LG or its authorized retailers between January 30, 2014 and the present.

95.    Excluded from the class are LG, its parents, subsidiaries, affiliates, officers and directors, any entity in which LG has a controlling interest, all class members who timely elect to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. Plaintiffs reserve the right to modify, change, or expand the class definition, including proposing additional subclasses, based on discovery and further investigation.

96.    **Numerosity.** The members of the class are so numerous that joinder is impractical. The class includes at least tens of thousands of individuals.

97.    **Typicality.** Plaintiffs' claims are typical of the claims of the class in that Plaintiffs, like all class members, were deprived of the benefit of their

bargain in purchasing LG Refrigerators. Plaintiffs and class members would not have purchased, or would have been willing to purchase only at a lower price, LG Refrigerators had they known of the compressor defect.

98.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interests adverse to the interests of any other class member and are committed to vigorously prosecuting this case. Plaintiffs have retained competent counsel experienced in the prosecution of consumer protection class actions involving defective goods.

99.    **Commonality and Predominance.** There are questions of law and fact common to the class, and the common questions predominate over any questions affecting only individual class members. Among the questions common to the class are:

a.    Whether the LG Refrigerators were defective at the time of sale;

b.    Whether and to what extent the compressor defect impairs the value of the LG Refrigerators;

c.    Whether LG knew of the compressor defect but continued to promote the LG Refrigerators, including their linear compressors, without disclosing the defect or its consequences to consumers;

      d.     Whether a reasonable consumer would consider the compressor defect and its consequences important to the decision whether to purchase an LG Refrigerator;

      e.     Whether LG breached implied warranties connected with the LG Refrigerators;

      f.     Whether LG's representations and omissions relating to the LG Refrigerators and linear compressors were likely to deceive a reasonable consumer;

      g.     Whether Plaintiffs and class members overpaid for their LG Refrigerators as a result of the violations alleged herein;

      h.     Whether Plaintiffs and class members are entitled to equitable relief, including restitution and injunctive relief; and

      i.     Whether Plaintiffs and class members are entitled to damages or other monetary relief, and if so, in what amount.

100.   **Superiority.** A class action is superior to all other methods available for the fair and efficient adjudication of this controversy. Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and given LG's financial resources, no class member would be likely to pursue legal redress individually for the violations detailed herein. Individual suits also would create the potential for inconsistent and contradictory rulings. By

contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard, and allows comprehensive supervision by a single court.

101. **Injunctive Relief.** Class certification is also appropriate under Rule 23(b)(2) because LG acted and refused to act on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the class as a whole.

## FIRST CLAIM FOR RELIEF
### Breach of the Implied Warranty of Merchantability

102. Plaintiffs bring this claim on behalf of the Class.

103. Alternatively, this claim is brought by Michael Bentley on behalf of the Michigan Subclass, Robert Degner on behalf of the Florida Subclass, Cheryl Ervin on behalf of the Utah Subclass, and Sam Lee on behalf of the Washington Subclass, under, respectively, Mich. Comp. Laws § 440.2314; Fla. Stat. § 672.314; Utah Code § 70A-2a-212; and Wash. Rev. Code § 62A.2-314.

104. LG is a "merchant" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

105. The LG Refrigerators are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

106.   LG impliedly warranted that the LG Refrigerators were of a merchantable quality and fit for their ordinary and intended use of cooling food and beverages.

107.   At the point of sale, the LG Refrigerators contained an unseen compressor defect whose manifestation renders the refrigerators inoperable during its useful life. The defect in the LG Refrigerators existed when they left LG's possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the LG Refrigerators entered the stream of commerce and were purchased by Plaintiffs and Class members, the LG Refrigerators were defective and substantially certain to fail.

108.   LG knew that the LG Refrigerators were defective and prone to premature failure. LG acquired such knowledge from multiple sources, including, without limitation, its own design, development, and testing of the linear compressor, linear compressor repairs it or its authorized repair personnel performed, consumer complaints that it received, interactions with its repair personnel, media reports, and the *Clark* class action.

109.   LG breached the implied warranty of merchantability because the LG Refrigerators were not of a merchantable quality, but instead contained a compressor defect. Had Plaintiffs and Class members known of the embedded,

latent defect in the LG Refrigerators, they would not have purchased their refrigerators.

110.   Plaintiffs and Class members were in privity of contract with LG by virtue of their interactions with LG. Alternatively, privity of contract need not be established, and is not required, because Plaintiffs and Class members are the intended third-party beneficiaries of the implied warranties and other contracts between LG and retailers who sold the LG Refrigerators. LG's warranties were designed and intended for the benefit of consumers who purchased LG Refrigerators.

111.   Plaintiffs provided LG with an opportunity to cure its breach of warranty, to no avail. LG has refused to recall, adequately repair, replace, or refund the purchase price of failed LG Refrigerators.

112.   Any attempt by LG to disclaim the implied warranty of merchantability imposed by law would be inappropriate, particularly given the parties' unequal bargaining power and LG's exclusive knowledge of the defect and the true quality of the LG Refrigerators. LG knowingly sold a defective product without disclosing the defect and made representations concerning the reliability and quality of the LG Refrigerators without revealing their propensity to fail. Moreover, the remedies LG offered injured purchasers were inadequate

and unconscionable. Fairness therefore requires invalidating the disclaimer of the implied warranty of merchantability.

113.    The strict time limit of LG's warranty period is also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining the time limit, the terms of which unreasonably favored LG and Class members, and LG knew that the refrigerators were defective at the time of sale and that they would fail well before their useful lives.

114.    Plaintiffs and Class members have complied with any and all obligations under the implied warranty of merchantability or otherwise have been excused from such compliance by reason of LG's conduct described herein.

115.    LG's breach of the implied warranty of merchantability damaged Plaintiffs and Class members in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Violations of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq.* ("MMWA")

116.    Plaintiffs incorporate the above allegations by reference.

117.    The LG Refrigerators are "consumer products" under the MMWA. 15 U.S.C. § 2301(1).

118.    Plaintiffs and Class members are "consumers" under the MMWA. 15 U.S.C. § 2301(3).

119.   LG is a "supplier" and "warrantor" under the MMWA. 15 U.S.C. § 2301(4)-(5).

120.   Through its implied warranty, LG warranted to Plaintiffs and Class members that the LG Refrigerators they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which a refrigerator is used.

121.   LG breached and refused to honor these implied promises. As a result of the compressor defect, the LG Refrigerators are inoperable and fail to perform in accordance with their ordinary and intended purposes.

122.   LG has been given reasonable opportunities to cure its breaches of warranty. LG had actual knowledge and ample notice that the LG Refrigerators are defective as detailed above, but failed to provide an adequate remedy.

123.   For the reasons set forth in paragraphs 113, *supra*, LG's durational limitation on implied warranties is unconscionable and unenforceable under 15 U.S.C. § 2308(b).

124.   The amount in controversy for purposes of Plaintiffs' individual claims exceeds $25. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

125.   As a direct and proximate result of LG's breaches of its implied warranty pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

126.   Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

### THIRD CLAIM FOR RELIEF
### Violations of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq*. ("FDUTPA")

127.   Plaintiffs incorporate the above allegations by reference.

128.   Plaintiff Degner asserts this claim on behalf of himself and the Florida Subclass.

129.   Degner and Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

130.   LG engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

131.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

132.   LG's acts and practices, described herein, are unfair, deceptive, and unconscionable in violation of Florida law for the reasons stated in paragraphs 107-109 of the First Claim for Relief, *supra*.

36

133.    LG committed deceptive acts and practices with the intent that consumers, such as Degner and Florida Subclass members, would rely upon LG's representations and omission when deciding whether to purchase a LG Refrigerator.

134.    Degner and Florida Subclass members suffered ascertainable loss as a direct and proximate result of LG's unfair and deceptive acts or practices. Had Degner and Florida Subclass members known that the LG Refrigerators are defective, they would not have purchased a LG Refrigerator or would have paid significantly less for one. Among other injuries, Degner and Florida Subclass members overpaid for their LG Refrigerators, and their LG refrigerators suffered a diminution in value.

135.    Degner and the Florida Subclass members are entitled to recover their actual damages, under Fla. Stat. § 501.211(2), and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

136.    Degner also seeks an order enjoining LG's unfair and deceptive acts or practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the FDUTPA.

**FOURTH CLAIM FOR RELIEF**
**Violations of the Michigan Consumer Protection Act**
**Mich. Comp. Laws § 445.901, *et seq*. ("MCPA")**

137.    Plaintiffs incorporate the above allegations by reference.

138.  Plaintiff Bentley asserts this claim on behalf of himself and the Michigan Subclass.

139.  Bentley, Michigan Subclass members, and LG are "persons" under Mich. Comp. Laws § 445.902(1)(d).

140.  LG's acts or practices, as set forth above, occurred in the conduct of "[t]rade or commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

141.  Michigan law prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ."  Mich. Comp. Laws § 445.903(1).

142.  LG's methods, acts, and practices, as alleged in this complaint, violate Mich. Comp. Laws § 445.903(1)(c), (e), (g), (s), (bb), and (cc) because they include unfair, unconscionable, and deceptive methods, acts, and practices—including fraudulent omissions—in connection with the marketing and sale of defective refrigerators. In violation of the MCPA, LG:

- represented that the LG Refrigerators had characteristics, uses, and benefits they do not have;

- represented that the LG Refrigerators are of a standard, quality, or grade when in fact they are not;

- advertised the LG Refrigerators with intent to not sell them as advertised;

- misled or deceived consumers by failing to reveal a material fact which could not reasonably be known by consumers;

- represented facts material to the transaction such that consumers reasonably believed the state of affairs to be other than it actually was; and

- failed to disclose facts that were material to the transaction in light of LG's positive representations of fact concerning LG Refrigerators.

143.   LG's methods, acts, and practices, described herein, are unfair, unconscionable, and deceptive in violation of the MCPA for the reasons stated in paragraphs 107-109 of the First Claim for Relief, *supra*.

144.   LG committed deceptive acts and practices with the intent that consumers, such as Bentley and Michigan Subclass members, would rely on LG's representations and omission when deciding whether to purchase an LG Refrigerator.

145.   Because the defect in the LG Refrigerators is latent and unobservable until it arises, the defective nature of the compressors and related parts in the LG Refrigerators were not the sort of defects that consumers could reasonably be expected to discover.

146.    Bentley and Michigan Subclass members suffered ascertainable loss as a direct and proximate result of LG's unfair, unconscionable, and deceptive practices.  Had Bentley and Michigan Subclass members known that LG Refrigerators were defective, they would not have purchased a LG Refrigerator or would have paid significantly less for one. Among other injuries, Bentley and Michigan subclass members overpaid for their LG Refrigerators, and their LG Refrigerators suffered a diminution in value.

147.    Under Mich. Comp. Laws § 445.911(1)(b) and (3) Bentley and Michigan Subclass members further seek an order enjoining LG from engaging in practices that violate the MCPA.

### FIFTH CLAIM FOR RELIEF
### Violations of the Washington Consumer Protection Act
### Wash. Rev. Code § 19.86.010, *et seq.* ("WCPA")

148.    Plaintiffs incorporate the above allegations by reference.

149.    Plaintiff Lee asserts this claim on behalf of himself/herself and the Washington Subclass.

150.    Lee, the Washington Subclass, and LG are "persons" under Wash. Rev. Code § 19.86.010(1).

151.    LG's acts or practices, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

40

152.   Washington law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices." Wash. Rev. Code §§ 19.86.020.

153.   LG's acts and practices, described herein, are unfair and deceptive in violation of Washington law for the reasons stated in paragraphs 107-109 of the First Claim for Relief, *supra*.

154.   By selling defective LG Refrigerators with exclusive knowledge of the defect, and by failing to disclose the defect or honor warranty claims in good faith, LG acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

155.   LG committed deceptive acts and practices with the intent that consumers, such as Lee and Washington Subclass members, would rely upon LG's representations and omissions when deciding whether to purchase a LG Refrigerator.

156.   Lee and Washington Subclass members suffered ascertainable loss as a direct and proximate result of LG's unfair and deceptive acts or practices. Had Lee and Washington Subclass members known that the LG Refrigerators were defective, they would not have purchased a LG Refrigerator or would have paid significantly less for one. Among other injuries, Lee and Washington Subclass

members overpaid for their LG Refrigerators, and their LG Refrigerators suffered a diminution in value.

157.   LG's violations of the WCPA present a continuing risk to Lee and Washington Subclass members, as well as to the general public. LG's unlawful acts and practices adversely affect the public interest.

158.   Under Wash. Rev. Code § 19.86.090, Lee and the Washington Subclass seek an order enjoining LG's unfair and deceptive acts or practices, providing for appropriate monetary relief, including trebled damages, and awarding reasonable attorneys' fees and costs.

159.   In accordance with Wash. Rev. Code § 19.86.095, a copy of this Complaint has been served on the Attorney General of Washington.

### SIXTH CLAIM FOR RELIEF
### Violations of the Utah Consumer Sales Practices Act
### Utah Code § 13-11-1, *et seq.* ("UCSPA")

160.   Plaintiffs incorporate the above allegations by reference.

161.   Plaintiff Ervin asserts this claim on behalf of herself and the Utah Subclass.

162.   The sale of LG Refrigerators to Ervin and Utah Subclass members constitute "consumer transactions" within the meaning of Utah Code § 13-11-3(2)(a).

163.   LG is a "supplier" within the meaning of Utah Code § 13-11-3(6).

164.   Utah law prohibits "deceptive act[s] or practice[s]" and "unconscionable act[s] or practice[s] by a supplier in connection with a consumer transaction . . . ."  Utah Code §§ 13-11-4, 5.

165.   LG's acts and practices, as alleged in this complaint, violate Utah Code §§ 13-11-4(2)(a), (b), and (j)(ii)because they include false misleading, and deceptive acts and practices—including fraudulent omissions—in connection with the marketing and sale of defective refrigerators. In violation of the TDTPA, LG:

- represented that the LG Refrigerators had characteristics, uses, and benefits they do not have;

- represented that the LG Refrigerators are of a standard, quality, or grade when in fact they are not; and

- failed to honor its warranty.

166.   LG's acts and practices, described herein, are unconscionable and deceptive in violation of Utah law for the reasons stated in paragraphs 107-109 of the First Claim for Relief, *supra*.

167.   LG committed deceptive acts and practices with the intent that consumers, such as Ervin and Utah Subclass members, would rely upon LG's representations and omission when deciding whether to purchase a LG Refrigerator.

43

168.   Ervin and Utah Subclass members suffered ascertainable loss as a direct and proximate result of LG's unfair and deceptive acts or practices. Had Ervin and Utah Subclass members known that the LG Refrigerators are defective, they would not have purchased a LG Refrigerator or would have paid significantly less for one. Among other injuries, Ervin and Utah Subclass members overpaid for their LG Refrigerators, and their LG refrigerators suffered a diminution in value.

169.   Ervin and the Utah Subclass members are entitled to recover their actual damages, under Utah Code § 13-11-19(4)(a), and reasonable attorneys' fees under Utah Code §§ 13-11-19(5)).

170.   Ervin also seeks an order enjoining LG's unfair and deceptive acts or practices pursuant to Utah Code § 13-11-19(3), and any other just and proper relief available under the UCSPA. In the course of its business, LG failed to disclose and actively concealed the defective nature of the LG Refrigerators with the intent that consumers rely on that concealment in deciding whether to purchase a LG Refrigerator.

## SEVENTH CLAIM FOR RELIEF
### Fraud by Concealment

171.   Plaintiffs incorporate the above allegations by reference.

172.   Plaintiffs bring this claim on behalf of the Class under the law of the state in which each respective Plaintiff purchased an LG Refrigerator.

173.   LG intentionally suppressed and concealed material facts about the performance and quality of the LG Refrigerators. As alleged herein, LG knew about the defective nature of the compressors and related parts in the LG refrigerators. Further, LG was aware of numerous consumer complaints concerning defect-related problems, but never disclosed the compressor defect to Plaintiffs and class members.

174.   Because the defect in the LG Refrigerators is latent and unobservable until it arises, Plaintiffs and class members had no reasonable means of knowing that LG's representations concerning the LG Refrigerators, and their compressors, were incomplete, false, or misleading, or that it had failed to disclose that the LG Refrigerators are defective. Plaintiffs and class members did not and reasonably could not have discovered LG's deceit before they purchased their LG Refrigerators or before the end of their buyer's remorse periods.

175.   Had Plaintiffs and class members known that the LG Refrigerators are defective, they would not have purchased an LG Refrigerator, would not have purchased an LG Refrigerator at the price they did, or would have returned their LG Refrigerator for a refund during their respective buyers' remorse periods.

176.   LG had a duty to disclose the compressor defect because the defect is material and LG possessed exclusive knowledge of it. LG acquired its knowledge of the compressor defect from multiple sources, including, without limitation, its

45

own design, development, and pre-release testing of the linear compressor, consumer complaints that it received, interactions with its authorized repair personnel, media reports, and the *Clark* class action.

177.  LG also had a duty to disclose the compressor defect because, through advertising, product brochures, external labeling, statements made through its authorized retail channels, statements made on its website, and in other sources that Plaintiffs and class members encountered before purchasing their LG Refrigerators, LG made partial representations regarding the supposed high quality of the LG Refrigerator and its linear compressor—including representations about its reliability—but failed to disclose facts that would have materially qualified these partial representations. Having volunteered information relating to the compressor to Plaintiffs and class members, LG had a duty to disclose the whole truth about the compressor and, in particular, its defective nature.

178.  Each Plaintiff was exposed to LG's specific representations about the LG Refrigerator before and immediately after purchase, and within the time period in which they could have returned their LG Refrigerator without penalty. Each Plaintiff saw LG's representations about the LG Refrigerator online or in product advertisements, and received further information from LG about the LG Refrigerator in product manuals and brochures that accompanied the refrigerator.

None of the informational sources Plaintiffs saw—advertisements, websites, product manuals, brochures, or promotional materials—indicated that the LG Refrigerator is defective.

179.   LG concealed the compressor defect to sell more LG Refrigerators at a premium price, prevent damage to its brand, and avoid the costs of an effective fix and of repairs, replacements, and refunds for its customers.

180.   The facts about the LG Refrigerator that LG suppressed and omitted were material, and Plaintiffs and class members were unaware of them until they experienced the defect. Had LG disclosed the defect, including through advertising, press releases, promotional materials, or retailer statements, Plaintiffs and class members would not have purchased an LG Refrigerator, would have paid substantially less for it, or would have returned it for a refund.

181.   When deciding to purchase an LG Refrigerator, Plaintiffs and class members reasonably relied to their detriment upon LG's material misrepresentations and omissions regarding the quality of the LG Refrigerator and the absence of a product defect.

182.   Plaintiffs and class members sustained damages as a direct and proximate result of LG's deceit and fraudulent concealment. Among other damage, Plaintiffs and class members did not receive the value associated with the price they paid for the LG Refrigerator.

183.   LG's fraudulent concealment was malicious, oppressive, deliberate, intended to defraud Plaintiffs and class members and enrich LG, and in reckless disregard of Plaintiffs' and class members' rights, interests, and well-being. LG's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the class, respectfully request that this Court:

A.   Certify the class defined above and appoint Plaintiffs as class representatives and their counsel as class counsel;

B.   Determine that LG is liable for the violations set forth above;

C.   Award damages to Plaintiffs and class members, in addition to pre-judgment and post-judgment interest, as provided by law;

D.   Grant appropriate equitable relief, including, without limitation, an order requiring LG to adequately disclose the LG Refrigerators' defective nature;

E.   Award reasonable attorneys' fees and costs; and

F.   Grant such further and other relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs request a trial by jury of all issues triable as of right.


Dated: June 7, 2019                    Respectfully submitted,


                                       */s/ Benjamin F. Johns*
                                       Benjamin F. Johns  (NJ ID No. 03818-2005)
                                       **CHIMICLES SCHWARTZ KRINER
                                        & DONALDSON-SMITH LLP**
                                       One Haverford Centre
                                       361 West Lancaster Avenue
                                       Haverford, PA 19041
                                       Telephone: (610) 642-8500
                                       *bfj@chimicles.com*

                                       Daniel C. Girard (*pro hac vice to be submitted*)
                                       Jordan Elias (*pro hac vice to be submitted*)
                                       Adam E. Polk (*pro hac vice to be submitted*)
                                       Simon S. Grille (*pro hac vice to be submitted*)
                                       **GIRARD SHARP LLP**
                                       601 California Street, 14th Floor
                                       San Francisco, California 94108
                                       Tel: (415) 981-4800
                                       *dgirard@girardsharp.com*
                                       *jelias@girardsharp.com*
                                       *apolk@girardsharp.com*
                                       *sgrille@girardsharp.com*

                                       *Counsel for Plaintiffs*