## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL BURRAGE, DIANE TERRY, TERRY DRISCOLL, CHERYL ERVIN, LEAH SCALA ISRAEL, SARAH JOHNSON, SAM LEE, PATRICK ROMANO, AND CARLOS STOCCO, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>        v.<br><br>LG ELECTRONICS U.S.A., INC.<br><br>                    Defendant. | Case No. 2:19-cv-13554-MCA-MAH (consolidated with Case Nos. 2:19-cv-15185-MCA-MAH, 2:19-cv-15826-MCA-MAH, and 2:20-cv-07652-MCA-MAH)<br><br>**PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

## <u>NATURE OF THE ACTION</u>

1.      This class action is brought on behalf of individuals who purchased LG-branded refrigerators manufactured by LG Electronics U.S.A., Inc. ("LG") during the period from January 1, 2014 to December 31, 2017, that were equipped with linear compressors (the "LG Refrigerators"). LG designed, manufactured, promoted, distributed, and sold the LG Refrigerators, pricing them in the range of $1,400 to $7,000.

2.      A common defect causes failure of the LG Refrigerators' linear compressor, a central component responsible for cooling. The compressor defect renders the LG Refrigerators unable to perform their most basic function: cooling and preserving food and beverages. When the compressor defect manifests, the

refrigerator warms and its perishable contents spoil, unless they are moved to a working refrigerator or cooler. While refrigerators normally are durable, lasting 13 years on average, the LG Refrigerators have been failing *en masse* within 36 months.

3.     LG previously settled a class action alleging that certain of its refrigerators are defective. LG, however, continued selling defective LG Refrigerators that have failed at extremely high rates—a "pandemic," according to one news report. Despite its knowledge of the compressor defect, LG sold the LG Refrigerators without disclosing the defect or its related problems to purchasers.

4.     When consumers have made warranty claims on malfunctioning LG Refrigerators, LG has not replaced them with working units or offered refunds. Instead, LG has attempted futile repairs or replaced defective compressors with other defective compressors—a practice that, for many, has resulted in repeated refrigerator failures. Consumers who bought LG Refrigerators have been forced to live out of coolers or prematurely buy replacement refrigerators.

5.     The compressor defect existed in each LG Refrigerator at the time it was sold. Plaintiffs were deprived of the benefit of their bargain and bring this action to obtain relief for themselves and others who purchased an LG Refrigerator.

## PARTIES

6.     Plaintiff Michael Burrage is a citizen and resident of Folsom, California.

7.     Plaintiff Diane Terry is a citizen and resident of Corona, California.

8.    Plaintiff Terry Driscoll is citizen and resident of Abernathy, Texas.

9.    Plaintiff Cheryl Ervin is a citizen and resident of West Valley City, Utah.

10.   Plaintiff Leah Scala Israel is a citizen and resident of Suffern, New York.

11.   Plaintiff Sarah Johnson is a citizen and resident of Elk River, Minnesota.

12.   Plaintiff Sam Lee is a citizen and resident of Shoreline, Washington.

13.   Plaintiff Patrick Romano is a citizen and resident of Westfield, New Jersey.

14.   Plaintiff Carlos Stocco is a citizen and resident of Oak Park, Illinois.

15.   Defendant LG Electronics U.S.A., Inc., the North American subsidiary of LG Electronics Inc., is incorporated under Delaware law and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendant are domiciled in different states.

17.   The Court has personal jurisdiction over LG because its principal place of business is within this District and it has sufficient minimum contacts with

New Jersey to render this Court's exercise of jurisdiction appropriate.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

19.     Upon information and belief, the relevant conduct described herein emanated from LG's domestic headquarters in Englewood Cliffs, New Jersey. LG oversees the importation of various consumer products, including refrigerators, into the United States from its New Jersey headquarters. LG has been registered to do business in New Jersey since October 1980. LG's sales and marketing leadership, as well as its accounting, financial, and legal departments, are all based in its New Jersey headquarters. Most of LG's marketing, marketing analysis, and sales and financial documents also were created and are located at its New Jersey headquarters. Given the foregoing, New Jersey has a more significant relationship to this case than any other state. Accordingly, New Jersey law may properly apply to the claims of class members who purchased an LG Refrigerator both within and outside of New Jersey.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Plaintiff Michael Burrage (California)

20.     Mr. Burrage purchased an LG Refrigerator (Model LFXC24726S /02) for approximately $2,250 on September 28, 2015 from Lowe's in Folsom, California.

21.     Before purchasing the refrigerator, Mr. Burrage saw sales and

marketing materials portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, LG provided him with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Mr. Burrage see any disclosure that the refrigerator is defective and prone to compressor failure.

22.     In July 2017, Mr. Burrage's refrigerator failed from the compressor defect.  His refrigerator would not stay cool, resulting in spoiled food.

23.     Mr. Burrage contacted LG, and a repair person replaced the refrigerator's compressor on July 10, 2017.  Mr. Burrage paid over $300 in repair costs.

24.     On or about March 17, 2019, Mr. Burrage's refrigerator failed again from the compressor defect.  His refrigerator would not stay cool, resulting again in spoiled food.

25.     Mr. Burrage contacted LG, and a repair person replaced the refrigerator's compressor, condenser, and evaporator on March 23, 2019.  The repair person told Mr. Burrage that the last compressor should not have failed so quickly and should have lasted at least 10 years before failing.  The repair person also noted that there was a small leak in the evaporator on Mr. Burrage's refrigerator.

26.     Because of the multiple compressor repairs, Mr. Burrage was without a working refrigerator for approximately 22 days.

27.     Before purchasing his refrigerator and until it failed, Mr. Burrage did not know that the LG Refrigerators suffer from the compressor defect. Had LG

disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG refrigerator at the price he did, or would have returned his LG Refrigerator for a refund during Lowe's 90-day return period.

### Plaintiff Diane Terry (California)

28.    Ms. Terry purchased an LG Refrigerator (Model LMXS30776S/03) for approximately $3,200 on June 28, 2016 from the Pacific Sales Kitchen & Home store in Corona, California.

29.    Before purchasing the refrigerator, Ms. Terry saw sales and marketing materials portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, LG provided her with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Ms. Terry see any disclosure that the refrigerator is defective and prone to compressor failure.

30.    In or about June 2017, Ms. Terry's refrigerator began to malfunction, and could no longer dependably cool her food. She called LG in June or July 2017 to report the problem. The LG representative did not mention the compressor defect, and directed her to engage in troubleshooting measures, which did not fix the problem. Ms. Terry continued to experience cooling failures, and on September 24, 2018, her refrigerator failed completely.

31.    About three days after Ms. Terry called LG again, LG sent out a repair

person, who diagnosed the problem as a failed compressor and spent several hours attempting a repair. The repair attempt was unsuccessful, and the repair person returned the next day to try again to fix Ms. Terry's refrigerator. Ms. Terry did not have a working refrigerator during the six days between her reporting of the failure and completion of the repair.

32.     Before purchasing her refrigerator and until it failed, Ms. Terry did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, or in the accompanying brochures, she would not have bought an LG Refrigerator, would not have bought an LG refrigerator at the price she did, or would have returned her LG Refrigerator for a refund during Pacific Sales's 15-day return period.

### Plaintiff Terry Driscoll (Texas)

33.     On February 5, 2017, Plaintiff Terry Driscoll purchased an LG Refrigerator, Model LFXC24726D/01 for approximately $1,898.48 from a Lowe's store in Lubbock, Texas.

34.     Before purchasing the refrigerator, Mr. Driscoll saw sales and marketing materials portraying it as reliable, high quality, and fully functional. After purchasing the refrigerator, but before using it, Mr. Driscoll was provided with additional information about the unit and its compressor in product brochures and owners' manuals. At no point before using the refrigerator did Mr. Driscoll see any disclosure that the refrigerator is defective and prone to compressor failure.

35.     Mr. Driscoll at all times used and maintained the refrigerator consistent with the expected use and maintenance of a household refrigerator.

36.     On March 12, 2019, Mr. Driscoll's refrigerator failed from the compressor defect. His refrigerator would not stay cool, resulting in spoiled food.

37.     Mr. Driscoll contacted Lowe's to request repairs. Approximately one week later, a repair technician visited Mr. Driscoll's home and replaced the compressor. The repair technician told Mr. Driscoll that he was aware of problems with the LG compressors and that they were failing in large numbers.

38.     Before purchasing his refrigerator and until it failed, Mr. Driscoll did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund during Lowe's 90-day return period. As a result of LG's conduct described herein, Mr. Driscoll has been injured.

**Plaintiff Cheryl Ervin (Utah)**

39.     Plaintiff Cheryl Ervin and her husband purchased an LG Refrigerator (Model LDCS24223W) for $1,338 on December 23, 2017 from an RC Willey store in Salt Lake City, Utah.

40.     Before purchasing the refrigerator, Ms. Ervin saw sales and marketing materials portraying the refrigerator as high quality, reliable, and fully functional.

After purchasing the refrigerator, but before using it, Ms. Ervin was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Ms. Ervin see any disclosure that the refrigerator is defective and prone to compressor failure.

41.     Ms. Ervin and her husband at all times used and maintained the refrigerator consistent with the expected use and maintenance of a household refrigerator.

42.     On September 27, 2018, Ms. Ervin's refrigerator failed from the compressor defect. Her refrigerator would not stay cool, resulting in spoiled food.

43.     Ms. Ervin contacted RC Willey, which directed her to contact LG. LG then directed Ms. Ervin to call Mr. Appliance, an authorized repair provider.

44.     A Mr. Appliance repairman visited Ms. Ervin's home and determined that her LG Refrigerator needed a new compressor, evaporator, and condenser. The repairman told Ms. Ervin that she was "in for a battle" because LG compressors fail frequently.

45.     After waiting approximately four weeks to get the needed parts from LG, the Mr. Appliance repairman returned to Ms. Ervin's home to attempt a repair. The new compressor, however, did not work. The Mr. Appliance repairman offered to return with a working part.

46.     After another four weeks, Ms. Ervin called Mr. Appliance to inquire about the status of the new part. She was informed that the Mr. Appliance repairman had not ordered the part because LG refused to pay him for his work or the other parts he had ordered.

47.    Ms. Ervin again called LG, and its representative told her that LG would contact Mr. Appliance about the repair. Ms. Ervin then called Mr. Appliance again, but Mr. Appliance told Ms. Ervin that it is not accepting any more jobs from LG.

48.    Ms. Ervin once again called LG, and it agreed to send an LG technician. Over the course of two visits, the LG technician determined there was a leak in the cooling system and replaced the compressor and related parts.

49.    Ms. Ervin did not have a working refrigerator during the nine weeks between when she reported the problem and the repair.

50.    Before purchasing her refrigerator and until it failed, Ms. Ervin did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, or in the accompanying brochures, she would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price she did, or would have returned her LG Refrigerator for a refund during RC Willey's 14-day return period. As a result of LG's conduct described herein, Ms. Ervin has been injured.

**Plaintiff Leah Scala Israel (New York)**

51.    In February 2018, Plaintiffs Leah Scala Israel and her husband purchased an LG Refrigerator (Model LSXS22423B) for approximately $1,397.70, from Home Depot's website. Ms. Scala Israel's LG Refrigerator was manufactured prior to December 31, 2017. The LG Refrigerator was delivered to the Israels'

home in Suffern, New York on March 2, 2018.

52.     Before purchasing the refrigerator, Ms. Scala Israel saw sales and marketing materials portraying the refrigerator as reliable, high quality, and fully functional. After purchasing the refrigerator, but before using it, Ms. Scala Israel was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Ms. Israel see any disclosure that the refrigerator is defective and prone to compressor failure.

53.     The Israels at all times used and maintained the refrigerator consistent with the expected use and maintenance of a household refrigerator.

54.     In April 2019, Ms. Scala Israel's refrigerator failed from the compressor defect. Her refrigerator would not stay cool, resulting in spoiled food.

55.     Ms. Israel contacted LG to report the failure and request repairs. Over the course of approximately one week, Ms. Scala Israel and her husband made at least four phone calls to LG, during which LG representatives suggested troubleshooting procedures.

56.     The Israels followed the recommended troubleshooting procedures, but they did not permanently fix the refrigerator. On June 9, 2019, Ms. Israel's refrigerator failed again. The Israels contacted LG, whose representative again suggested futile troubleshooting procedures, such as making sure the refrigerator was level. After two more calls, an LG representative advised Ms. Scala Israel to schedule a service appointment.

57.     Over the next five weeks, the Israels participated in over 15 telephone

calls with representatives from LG and a local repair company, A&D Appliance. During these calls, the Israels were given inconsistent and contradictory information about how to schedule repairs, whether they would be charged, and which company (LG or A&D) would need to make initial diagnoses.

58.    On July 13, 2019, an A&D repair technician replaced the compressor in Ms. Israel's LG Refrigerator, but after the repair, the refrigerator still would not cool and freeze food and beverages.

59.    During the next two weeks, LG-authorized repair technicians from A&D made three more service calls to the Israels' home. The first technician determined the compressor had failed but did not perform any repairs. Several days later, a second A&D repair technician visited their home and replaced the compressor for the second time. The Israels exchanged at least seven more phone calls with representatives from A&D and LG before an LG technician visited the Israel's home on July 24, 2019. That technician determined that freon was leaking and pinholes had formed in the evaporator coils, which the technician repaired.

60.    Because the Israels were without a working refrigerator for approximately seven weeks, they incurred costs from dining out, ordering takeout meals, and buying ice to store small amounts of necessary food and beverages in a cooler. Ms. Scala Israel paid approximately $143.91 for a small refrigerator necessary to store milk for her toddler.

61.    During multiple service visits to the Israels' home, repair technicians stated that they had encountered compressor failures in many LG refrigerators; that it is a known problem to the technicians; and that LG knows about the defect.

12

62.     Before purchasing her refrigerator and until it failed, Ms. Scala Israel did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, or in the accompanying brochures, she would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price she did, or would have returned her LG Refrigerator for a refund. As a result of LG's conduct described herein, Ms. Scala Israel has been injured.

### Plaintiff Sarah Johnson (Minnesota)

63.     On July 13, 2016, Plaintiff Sarah Johnson purchased a new LG Refrigerator (Model LFXS29766S) for approximately $2,198.00 from a Home Depot store in Elk River, Minnesota.

64.     Before purchasing the refrigerator, Ms. Johnson saw sales and marketing materials portraying the refrigerator as reliable, high quality, and fully functional. After purchasing the refrigerator, but before using it, Ms. Johnson was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Ms. Johnson see any disclosure that the refrigerator is defective and prone to compressor failure.

65.     Ms. Johnson at all times used and maintained the refrigerator consistent with the expected use and maintenance of a household refrigerator.

66.     In January 2019, Ms. Johnson's refrigerator failed from the compressor defect. Her refrigerator would not stay cool, resulting in spoiled food.

67.     Because the failure coincided with a planned family vacation, Ms. Johnson first called for service in February 2019. She called Asurion, the provider of a third-party warranty—the Home Depot Protection Plan—that she had purchased from Home Depot.

68.     Over nearly two months, Ms. Johnson made over 50 phone calls and engaged in several online conversations with Asurion to seek repairs. After multiple service visits in which Asurion technicians replaced multiple parts, Asurion informed Ms. Johnson that there was nothing more they could do. She was left with a refrigerator that would not stay below 50 degrees.

69.     In late April 2019, Ms. Johnson contacted LG to request repairs. During the first service visit, an LG repair technician determined that the compressor had failed and needed to be replaced. The service technician returned twice and replaced the compressor during the second visit but was unable to fix Ms. Johnson's refrigerator.

70.     As a result of the repeated failures, Ms. Johnson and her family did not have a working refrigerator for nearly five months. Before purchasing her refrigerator and until it failed, Ms. Johnson did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, or in the accompanying brochures, she would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price she did, or would have returned her LG Refrigerator for a refund. As a result of LG's conduct described herein, Ms. Johnson has been injured.

14

**Plaintiff Sam Lee (Washington)**

71.     Plaintiff Sam Lee purchased an LG Refrigerator (Model
LPCS34886C) for $3,613.49 on January 3, 2016 from Costco. He purchased his
LG Refrigerator while living in Shoreline, Washington, and on February 3, 2016,
Costco delivered the refrigerator to his home in Shoreline.

72.     Before purchasing the refrigerator, Mr. Lee saw sales and marketing
materials portraying the refrigerator as high quality, reliable, and fully functional.
After purchasing the refrigerator, but before using it, Mr. Lee was provided with
additional information about the unit, and its compressor, in product brochures and
owners' manuals. At no point before using the refrigerator did Mr. Lee see any
disclosure that the refrigerator is defective and prone to compressor failure.

73.     Mr. Lee at all times used and maintained the refrigerator consistent
with the expected use and maintenance of a household refrigerator.

74.     On April 18, 2019, Mr. Lee's refrigerator failed from the compressor
defect. His refrigerator would not stay cool, resulting in spoiled food.

75.     Mr. Lee contacted an independent repair shop, which declined to work
on his refrigerator because it was made by LG. Mr. Lee then contacted a second
repair shop, which directed him to contact LG.

76.     When Mr. Lee contacted LG, its representative advised him to turn his
refrigerator off and back on, but this troubleshooting measure did not work. LG
then agreed to send a repair person.

77.     Thereafter, an LG repairman replaced the compressor on Mr. Lee's
refrigerator. He informed Mr. Lee that he had replaced the compressors in at least

15

two other LG Refrigerators that same day and warned Mr. Lee that the refrigerator would likely fail again.

78.     Before purchasing his refrigerator and until it failed, Mr. Lee did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund during Costco's 90-day return period. As a result of LG's conduct described herein, Mr. Lee has been injured.

**Plaintiff Patrick Romano (New Jersey)**

79.     Plaintiff Patrick Romano purchased an LG Refrigerator (Model LMXS30776S) for $3,105.00 on February 18, 2016 from a Home Depot store in New Jersey.

80.     Before purchasing the refrigerator, Mr. Romano saw sales and marketing materials portraying the refrigerator as reliable, high quality, and fully functional. After purchasing the refrigerator, but before using it, Mr. Romano was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Mr. Romano see any disclosure that the refrigerator is defective and prone to compressor failure.

81.     Mr. Romano at all times used and maintained the refrigerator

consistent with the expected use and maintenance of a household refrigerator.

82.     In June 2019, Mr. Romano's refrigerator failed from the compressor defect. His refrigerator would not stay cool, resulting in spoiled food.

83.     Mr. Romano contacted LG on June 18, 2019, to report the problem and schedule a repair visit for his refrigerator. LG informed him that it would take two to three weeks before a technician would be available to service his refrigerator. Mr. Romano then contacted an independent repair company, J&J Refrigeration, whose technician visited his home the next day.

84.     The J&J repair person replaced the compressor on Mr. Romano's refrigerator. The technician told Mr. Romano that LG's linear compressors, like the one in Mr. Romano's refrigerator, were experiencing widespread failures.

85.     The initial attempted repairs of Mr. Romano's refrigerator were unsuccessful. In the weeks that followed, J&J sent a repair person back to Mr. Romano's home at least two more times to perform additional repairs related to the compressor defect. Mr. Romano paid $750.00 for all of the repair visits.

86.     Before purchasing his refrigerator and until it failed, Mr. Romano did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund. As a result of LG's conduct described herein, Mr. Romano has been injured.

**Plaintiff Carlos Stocco (Illinois)**

87.     On March 25, 2016, Plaintiff Carlos Stocco purchased a new LG refrigerator (Model LFXS29626S), for approximately $2,665.80 from a Grand Appliance store in Forest Park, Illinois.

88.     Before purchasing the refrigerator, Mr. Stocco saw sales and marketing materials portraying the refrigerator as reliable, high quality, and fully functional. After purchasing the refrigerator, but before using it, Mr. Stocco was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Mr. Stocco see any disclosure that the refrigerator is defective and prone to compressor failure.

89.     Mr. Stocco at all times used and maintained the refrigerator consistent with the expected use and maintenance of a household refrigerator.

90.     In late July 2019, Mr. Stocco's refrigerator failed from the compressor defect. His refrigerator would not stay cool, resulting in spoiled food.

91.     Mr. Stocco contacted LG to report the failure and request repairs. After several phone calls, LG sent a replacement compressor to Mr. Stocco's home and scheduled an A&E repair technician to install the compressor on July 31, 2019. However, no repair technician visited Mr. Stocco's home on that date.

92.     Mr. Stocco called to reschedule the service visit. On August 2, 2019, a technician came to his home and replaced the compressor in his refrigerator. Mr. Stocco paid $334 for these attempted repairs. They did not fix his refrigerator. After the attempted repairs, Mr. Stocco's refrigerator still did not cool or freeze

food and beverages.

93.     A&E repair technicians returned to Mr. Stocco's home three more times—on August 8, 17, and 30—to complete the repair.

94.     As a result of the repeated failures, Mr. Stocco did not have a working refrigerator for over one month. Before purchasing his refrigerator and until it failed, Mr. Stocco did not know that the LG Refrigerators suffer from the compressor defect. Had LG disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, or in the accompanying brochures, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund before using it. As a result of LG's conduct described herein, Mr. Stocco has been injured.

*     *     *

95.     Plaintiffs purchased their LG Refrigerators because they preferred the features and aesthetics of the LG Refrigerators to other refrigerators. LG continues to advertise the LG Refrigerators' high quality and functionality. But, because of their experience with the LG Refrigerators, Plaintiffs do not trust LG's representations about the LG Refrigerators. As a result, although Plaintiffs would like to buy another LG Refrigerator, they will not do so unless LG takes sufficient steps to cure the defect and ensure the accuracy of its representations about the LG Refrigerators.

## COMMON FACTUAL ALLEGATIONS

96.    Refrigerators, an essential part of the modern American household, can be found in 99.9% of homes. Refrigerators allow people to preserve food, drink, and medications like insulin, and reduce the risk of food-borne disease.

97.    According to the National Association of Home Builders, the average lifespan of a refrigerator is approximately 13 years. LG has represented that its refrigerators have a 20-year life span.

98.    The industry standard is that a refrigerator should not have any major failures within the first 10 years of use.

### A.    The LG Refrigerators and LG's Representations About Them

99.    LG designs, manufactures, distributes, and sells refrigerators throughout the country. The LG Refrigerators are available for purchase in large retail stores like Sears, Home Depot, and Best Buy as well as in smaller appliance stores and online. The Manufacturer's Suggested Retail Price for the LG Refrigerators ranges from approximately $1,400 to $7,000, with most models falling in the $2,000 to $4,000 MSRP range.

100.    A compressor is the central component—the "engine"—of any refrigerator. The compressor pumps refrigerant throughout the refrigerator's cooling system.

101.    After being released from the compressor, refrigerant flows through the refrigerator's condenser. The condenser—usually located outside of the refrigerator—condenses vaporized refrigerant to liquid form, releasing heat in the

process. The liquid refrigerant then flows through the refrigerator's evaporator, which draws heat from the parts of the refrigerator that need to be cooled, thus cooling the inside of the refrigerator and also causing the refrigerant to vaporize. The vaporized refrigerant then returns to the compressor, and the cycle repeats.

102.   LG developed its proprietary linear compressor in the early 2000s. LG designed the linear compressor to be an energy-efficient replacement for the reciprocating compressor used in many other refrigerators. Instead of the traditional, less efficient crank mechanism, which converts rotary motion into reciprocating motion, LG's linear compressor uses a magnet and springs to drive a piston motor.

103.   LG's proprietary linear compressor refrigerators are important to its business and are featured prominently in its public representations, including in advertisements and marketing materials. LG represented in a November 24, 2014 press release that 10 million LG Refrigerators had been sold since 2001:

> In 2001, LG introduced the world's first refrigerator powered by an Inverter Linear Compressor, continuing to improve the technology ever since. . . . LG's technology employs a straight piston drive instead of a conventional reciprocating drive, resulting in less internal friction than conventional motors. This increases the refrigerator's reliability and durability while also generating less noise while running. LG refrigerators featuring Inverter Linear Compressor technology proved to be approximately 32 percent more energy efficient than those equipped with conventional reciprocating compressors, contributing significantly to lower electricity bills.

104.   In the same release, LG represented that the LG Refrigerators are "up to 25 percent quieter" than refrigerators powered by reciprocating compressors. LG

21

also touted the linear compressor's reliability, stating that the component "reduced internal friction by 64.2 percent, causing less wear to the refrigerator and helping it to achieve a 20 year life-span, a first in the industry."

105.   LG singled out the linear compressor in its public statements about its refrigerators: "LG is so confident in its technology that the Inverter Linear Compressor has been covered under a 10-year warranty since 2009, a first in the industry."

106.   LG issued another press release on March 21, 2017 to mark the sale of its "15th million refrigerator worldwide powered by its proprietary Inverter Linear Compressor"—which LG termed "the appliance division's most successful core technology." In the same release, LG projected that it would sell 4 million more units in 2017, or "an average of seven refrigerators sold every minute." As in its 2014 press release, LG cited statistics concerning the linear compressor's performance, claiming that it "delivers 55 percent better energy efficiency and 15 percent less noise compared [to] its first generation compressor."

107.   Similar statements appear on the LG website's refrigerator home page and product pages:

- "Inverter Linear Compressor" "Energy Saving up to 32% and more durability for 20 years"

- "When you buy a refrigerator, you don't want to worry that it won't last. Because the Linear Compressor uses fewer moving parts and operates more efficiently, LG confidently backs the Linear Compressor with a 10-year limited warranty."

- "The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer."

- "You'll get all the latest features like LG's exclusive Linear Compressor technology, which delivers optimum cooling, operating efficiency and reliability."

108.   Statements approved by LG and made by its authorized resellers also advertised the linear compressors and the LG Refrigerators' overall functionality. These statements include the following:

- **Best Buy:**
  - "Achieve the right chill. Vents and a linear compressor will keep temperature and humidity conditions at ideal levels inside the fridge."
  - "Along with a linear compressor, dual evaporators and vents helps [*sic*] ensure food is constantly surrounded by cool air."

- **Home Depot:**
  - "Linear compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer; strategically-placed vents in every section help to surround your food with cool air no matter where you put it."
  - "Smart Cooling Plus System uses a fresh air filter, dual evaporator linear compressor, multi-air flow technology, digital sensors, and digital controls to keep your food at its freshest…"
  - "With LG Smart Cooling® Plus technology, digital sensors help the Linear Compressor maintain optimum temperature and humidity levels…"

- **Lowes:**
  - "Smart Cooling® system is designed to maintain superior conditions within the refrigerator. The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer."
  - "Smart Cooling system monitors and maintains temperature and humidity levels to help keep food fresh."

- **P.C. Richard & Son:**
  - "With LG Smart Cooling® Plus technology, digital sensors help the Linear Compressor and Dual Evaporators maintain optimum temperature and humidity levels…"
  - "The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer."

23

o "LG Smart Cooling"

- **Barry's Appliance:**
  - o "The Linear Compressor and Dual Evaporators react quickly to humidity and temperature levels and help keep your food fresher, longer.

109.   The substantially similar language—e.g., "reacts quickly to temperature fluctuations," "maintains optimum temperature"—and copyrighted phrases ("Smart Cooling®" technology) used in this marketing messaging demonstrate that LG provides substantively uniform marketing materials to its resellers and authorizes the statements they make about the LG Refrigerators, particularly with regard to the refrigerators' cooling capabilities.

110.   LG's authorized resellers also run LG-branded advertisements and video clips touting the performance of LG's linear compressor.

B.    **The Defect Manifests in the LG Refrigerators**

111.   LG's linear compressors have caused consumers problems for many years. When an LG compressor fails, the refrigerator warms and the perishables within it spoil.

112.   LG's linear compressor contains an intake valve, where refrigerant enters, and a discharge valve, where refrigerant exits. These valves are responsible for regulating and controlling the flow of refrigerant through the compressor.

113.   The LG compressor's discharge valve is made of a plastic material that is prone to failure from ordinary usage.

114.   LG's linear compressor works in close connection with another

important component, called the evaporator. The evaporator is where heat transfer takes place. Together, the compressor and evaporator are essential components for cooling. Before refrigerant enters the compressor, it flows through the evaporator. The evaporator absorbs heat from the interior of the refrigerator and into the refrigeration system. This process causes the refrigerant to vaporize, and the vaporized refrigerant is then sent through the compressor.

115. As used herein, the term "compressor defect" refers to the defective nature of the linear compressor and related parts, including the evaporator, in the LG Refrigerators.

116. The tubing of the evaporator in LG Refrigerators also is defective and prone to corrosion and pitting from ordinary usage. Pinholes develop in the evaporator tubing, which cause leaks and allow atmospheric air to enter. When a leak forms, it is very hard to diagnose, which can preclude effective repair.

117. Because of the air leakage, the refrigerant that passes from the evaporator to the condenser generates excess pressure that stresses the compressor and contaminates oil in the compressor. The contaminated oil infects the entire sealed system.

118. The compressor's components are defective and incapable of withstanding the additional pressure, resulting in failure. Typically, the weakest component of the compressor—the discharge valve—is the first to fail.

119. Once the compressor used in the LG Refrigerator fails, even if a repair is performed, the refrigerator remains substantially certain to fail within two to three years because LG and its authorized technicians use the same defective parts

as replacements.

120.   LG's linear compressors are thus inherently defective—and the defect inevitably manifests. LG nevertheless has responded to warranty claims by attempting futile repairs. As a result, consumers have been left without a refrigerator for weeks while they wait for service, and many have experienced repeated failures.

**C.**   **Technicians in the Field Observe Widespread LG Refrigerator Failures**

121.   LG refrigerator technicians repeatedly have noted the compressor defect in the field and reported the compressor failures they saw directly to LG.

122.   Authorized repair technicians are in a direct reporting relationship with LG. These technicians report to LG after performing repairs on LG Refrigerators.

123.   Authorized repair technicians have been reporting a large volume of compressor defect failures to LG since at least 2014.

124.   One authorized repair technician, who worked on LG refrigerators since at least 2014, described an LG tech line used by technicians to speak directly with LG about refrigerator failures, troubleshoot problems, and discuss repairs. Other authorized repair technicians have confirmed the existence of this LG tech line and also confirmed that they report failures to LG after they perform compressor repairs.

125.   After receiving failure reports from authorized technicians, LG's engineering department acquires certain failed refrigerators and performs research

to determine the cause of their failures.

126.   One technician, whose company was previously an authorized repair unit for LG, reported that LG compressors fail at alarming rates compared to other brands of refrigerators. He recalled replacing about 80 LG compressors per month. In contrast, his company replaced only about three to five compressors per month for competing refrigerator brands such as Thermador, Sub-zero, and Whirlpool. The technician stopped doing business with LG because of the high rate of compressor failure and LG's failure to adequately respond to the problem by providing non-defective parts for repairs.

127.   Another repair technician reported that he performed between five and ten compressor failure repairs per week.

128.   A different authorized repair technician also stopped working on LG Refrigerators because of the overwhelming volume of compressor failures. This technician estimated a failure rate close to 100%, and explained that his team could not handle the workload.

129.   Yet another technician reported that he often had to replace compressors after a leak formed in the refrigerator's evaporator, causing compressor failure. He described the leak as "unfixable," explaining that it requires replacement of multiple parts in the sealed system. Eventually, this technician's company decided to stop working on LG Refrigerators because it was not economically feasible to perform the repairs.

**D.**   **Thousands of Consumers Report the LG Refrigerator Failure, Both Online and Directly to LG**

130.   There have been thousands of complaints from refrigerator repair professionals, in addition to consumers, about LG Refrigerator failures. These complaints date back several years and include the following, for example:

- **2/5/11:** "On November 21, 2010, I went to Home Depot and bought an LG refrigerator (Model LMX25964ST) for about $1300. This is my first purchase of LG product. On January 5, 2011, the refrigerator was delivered and installed in my house. After the refrigerator was plugged in and after 24 hours, I noticed that the refrigerator will not cool down lower than 41-42 def F. The freezer temperature was OK. I had to call LG for warranty work on January 10, 2011. The repair personnel came and said that I needed to replace the damper assembly. On January 20, 2011, he replaced the damper assembly and it didn't fix the problem. The temperature in the refrigerator still remain around 41-42 deg F. Even lower the temperature setting will not do anything. I was informed by LG personnel on January 24, 2011, that I had to call back the repair center and have them come back and look at the problem again. On February 3, 2011, the repair personnel replaced the control circuit broad and temperature sensor. It didn't fix the problem. The coldest temperature that I can achieve inside the refrigerator is around 40.5 def. I will have to call back the repair center again … So beware of LG and don't be fool by their advertisements on TV. Life has not been good for this customer. Update as of February 16, 2011: On February 8, 2011, the repair personnel came out the 3rd time and he contacted the LG tech rep. The result was to test the control circuit broad that was replaced. The test showed the broad was working properly. The repair personnel informed that he doesn't know what else to do. I contacted LG and they said that I had to contact another repair center and have them look at the refrigerator again. Beware of buying LG product and their warranty. I will follow up on this after I contact another repair center to look at the refrigerator that doesn't work.

28

- **2/2/12:** ". . . Four years to the day, after plugging in our new fridge, the compressor failed. That was November 22, 2011. I am sending this note on February 2, 2012, and we are still waiting for parts to repair the new LG."

- **1/21/13:** "We purchased a top of the line LG refrigerator Model #LFX28978ST from Home Depot on July 4th, 2012. On December 23, 2012, it quit working. It is now January 21, 2013 and I am still without a refrigerator! I called the LG Hotline on December 23rd and was told that they could have their certified repairman out on the 28th of December. He came out and told me we needed a new compressor; he didn't carry this part on his truck so it would have to be ordered. The compressor would take a week to get here."

- **6/22/13:** ". . . The compressor failed within 4 years, and it never keeps the right temperature, constantly freezing food in the fridge. We set it at 45-47, it does 30-32. We're throwing away lots of vegetables ruined by freezing. Even worse, when we needed repair for the compressor, under warranty, we contacted LG. Their repairman came out and said he would order the part, and then we never heard from him again. Only one local vendor would work on it. The rest said they refuse to work on LG…"

- **6/24/13:** "Compressor failed in less than 2 years. LG would not help me and then hung up on me. This is an awful company that makes cheap poor quality products!!! Be warned. Do not buy their products."

- **7/30/13:** "After slightly less than 3 years my French Door Refrigerator suddenly could not get cold enough to safely refrigerate the food and safely keep foods frozen. The temperature in the refrigerator box hovered at about 40 and the freezer at around 32. The temperatures would not change even though I increased the coldness setting. A repairman from a reputable repair company and after testing and checking all of the different components he said the compressor was failing. He said that it was a common problem with the LG refrigerator. He said he had several compressor failures in them a year and that nearly all of them were less than 3 years old. The repair cost is more than it is worth."

- **8/30/13:** "Purchased this LG Refrigerator Model LFX25974 on July 3, 2013 from Home Depot and was delivered on July 16. 7 weeks later, the freezer and refrigerator stopped cooling…. The ice was water! LG arranged to have an "authorized" repairman to come out. The appointment was confirmed with the ApplianceMan in Westerville, Ohio for Thursday, August 29th between 1-5p. NEVER SHOWED!!!! When I

contacted them Fri. am, was told they "lost" my appt. After they arrived Friday afternoon, was told I needed new compressor and evaporator and parts ordered. 1-2 weeks before they come in and then need to schedule another appt to fix.... According to the other reviews, this seems to be the trend with LG. I will never purchase another LG appliance."

- **2/2/14:** "This was the biggest mistake buying the LG LFX 2578ST. After only 6 months the compressor conked out. LG has left us waiting for a replacement compressor on order that will take "2 or 3 days" at which point the repair person would be sent out…LG has been less than helpful and really left us stranded with no fridge. I have no confidence in their product and customer service has been disappointing. They are not solution focused, have no intention of replacing the fridge and state they will cover only $250 in perishables in a lifetime. I would not recommend this product…."

- **6/9/14:** "We have had numerous issues with flooding and ice all over the floor and with the unit not keeping food cold enough. We contacted LG for service, only to realize that it would take two weeks to install a new compressor and worrying if that would hold. I lost over $200.00 in food."

- **8/3/14:** "Our 9 month old LG French Door Refrigerator has had a horrible vibrating sound almost from the day we bought it. As a final measure before throwing it out, I took the lower rear cover off the compressor area. The compressor is vibrating very loudly to the point of complete annoyance."

- **1/23/15:** "Model LFX28978SB - For the 2nd time in the last 4 months, I have thrown away all of the food in our LG refrigerator/freezer. This refrigerator had the compressor replaced 4 months ago and then again, one month later."

- **10/27/15:** "They have been to my house 5 times, replaced the compressor twice along with other parts. I had to pay $600+ for the labor and parts that weren't under warranty. It still doesn't work. My wife called LG and they said there is nothing more they can do. I'm out $600 and a fridge. Lousy product and a lousy company!"

- **6/3/16:** "Our LG Refrigerator is 5 years old and stopped working two weeks ago. We called one of their service companies to come out to repair it. We paid an upfront fee. Someone came out and said the Freon leaked out and they would have to contact LG to see what they wanted to do. (I took a day off work to wait for this service person.) We did not hear back. Called the service company and was told to contact LG customer service. They were extremely rude and unhelpful. My husband

talked to a manager and they were also rude. After a few days he called again and was told we would have to start the whole process over again with a new service company. We called them and were assigned a day and time. They would be out between 10-2. (Yes, another day off work.) They said they wouldn't be fixing it just looking at it. (So one of us will have to take another day off work if we are lucky enough to ever get someone out to fix it.) We have had no fridge for two weeks now and there is no end in sight. LG does not respect their customers nor do they stand by their products evidently."

- **2016**: "My wife and I bought this frig 14 months ago. After the first month we needed to have a water valve replaced. That would have been fine on its own but we recently lost all of our food in the freezer because it would not hold temp. We had LG come and take a look at it and it turned out the be a bad compressor with a freon leak and a possible bad board. The kicker is that the compressor is on back order and will not be in for at least 3 weeks. LGs tech was friendly and helpful but there costumer service was very poor. We are now on our way to buy a new frig and I can assure you it will not be another LG"

- **11/10/16:** "Terrible product. Compressor not functioning after only 18 months. Calling the service line is a joke. 40 minutes on the phone…. After all was said and done, it will cost me $348 for a service call which can only be done by their service techs. Absolutely pitiful product, Model LMXC23746S/00. I built homes for 40 years and never had to deal with a malfunctioning appliance this quickly."

- **4/28/17:** "Compressor went bad after 11 months. LG replaced the compressor. That one was bad as soon as it was plugged in. Replaced a third time. It has worked for 5 years and stopped cooling again. Been trying for 2 weeks to get someone to come and fix it. 4 bad compressors in 5 years. If you're thinking of buying a refrigerator think other than LG."

- **10/4/17**: "Bought this LG fridge 18 months ago. 3 compressors have broken and LG refuses to return unit for full (or even partial) refund. Customer care won't let me escalate. Lost over $300 in food and been down for over 3 weeks with family of 4. I just want it to go away - they need to admit it was a lemon and do the right thing!!! Customer service there is so horrible- they don't care at all....DO NOT BUY A FRIDGE FROM LG!!!"

- **12/15/17:** "LG fridge LFXS29626S French Door…Compressor went out 1yr 4mos… No fridge for Thanksgiving and looks like no fridge for Christmas. Don't get me started on the customer service. One rep told me pretty much to get over it, she was without fridge once for 5 mos. 6

31

weeks is nothing! They all act like there's something wrong with us for feeling that the service is unacceptable. And they continue to get away with it."

- **5/17/18:** "We bought our LG LMXS30776S/02 less than two years ago from Best Buy…It stopped working on 5/8 and I called Best Buy - they couldn't send someone for 3 days…. The technician came today and said it needed a new compressor. He commented that this was the 5th LG Refrigerator compressor replacement he's worked on this month."

- **10/1/18:** "I bought a new LG Refrigerator in May 2018. Within a month, I started having issues with the refrigerator. It started making a very loud noise and had cooling issues. I called LG customer service, as it was under a manufacturer's warranty. For last 2.5 months, LG could not even repair the refrigerator or provide a replacement. Highly unprofessional customer service, as the update provided by them changes every week...."

- **1/8/19:** "1 year old LG French door broke down (no cooling) on Thanksgiving. Took them 19 days to get someone out there. Meanwhile was living out of coolers. They replaced the compressor, dryer and condenser… then on Christmas bam stopped working again…"

- **1/10/19:** "The compressor was replaced 5 days ago on Friday 1/4/2019. Five days later I am without a refrigerator and freezer again and have lost $200 -$250 in groceries. I have photos of the water leaking out of the ice maker on the door as well."

- **3/25/19:** "I bought my French door LG refrigerator in Jan 2018. Now - in March 2018 it is no longer cooling. I bought the extended warranty through Lowe's. They sent a tech to assess the problem. Compressor needs replacing. After only 14 months of use!"

131.  Aggrieved consumers formed a Facebook group—"LG Refrigerators – Life is NOT Good"—related to the compressor defect. The group has approximately 1,500 likes and follows. It contains numerous pictures and accounts of consumers who experienced LG Refrigerator compressor failure.

**E.    LG's Knowledge of the Compressor Defect**

132.  Many similar complaints of malfunctioning LG Refrigerators, dating back years, have been made directly to LG on its website and on social media

pages that LG regularly monitored. These complaints—and the sampling of complaints reproduced above, many of which are complaints *to* LG—demonstrate LG's longtime knowledge of the defect.

133.   LG, moreover, has had exclusive and direct knowledge of the scale of the compressor problems from its communications with its authorized repair personnel, who have been inundated by repair requests for years.

134.   Additionally, local television news stations across the country have reported on consumers' difficulties with the compressor defect.

- A local CBS television news affiliate ran a segment in December 2018 entitled: "'Pandemic' of dying LG fridges has log-jammed repair workers." CBS interviewed a consumer whose LG Refrigerator failed and could not be repaired because LG repair providers said "they were months out or they don't work on LGs anymore." One repair person reported that "[LG's] refrigerators are failing quite pandemically" and "it's a national thing." The repair person informed LG that his company would no longer work on LG refrigerators due to the high repair volume, explaining "we're just getting buried in it." In response to the story LG said it was hiring more technicians.

- A CBS news affiliate in Georgia reported in March 2018 that an LG consumer experienced the defect but had to wait for service for weeks because the replacement compressor was "on back order." Within a day after being installed, her replacement compressor also failed.

- In September 2017, a local San Diego news outlet reported that a man from Escondido, California complained that after his two-year old refrigerator failed, an LG technician diagnosed the refrigerator with the compressor defect but could not fix the problem on an initial service visit. LG charged him for the service visit and an extended warranty but did not replace the compressor or otherwise address the customer's concerns until after LG was contacted by the news station.

- In July 2017, a Connecticut station reported that a frustrated LG refrigerator owner contacted it after numerous delays in getting the compressor in her $2,200 LG refrigerator repaired. The consumer reportedly contacted "over a dozen [LG] authorized workers," none of whom would attempt a repair. The consumer reported, "I spent 10 hours

making phone calls between LG and private servicer that LG recommended," without success.

- In July 2017, a Kansas City Fox News affiliate reported that one consumer's $1,450 LG refrigerator failed from the compressor defect ten months after purchase. After two service visits and a replacement compressor did nothing to fix the problem, LG denied the consumer's claim for a new refrigerator, reportedly stating that the consumer would have to wait for another service visit to attempt another repair. Only after the local news station "called LG and left multiple messages" did LG agree to provide a new refrigerator. Until then, the consumer and his family of six relied on a cooler to preserve their food for three weeks in the middle of the summer.

135.   The *Clark* litigation, No. 3:13-CV-485-JM (JMA) (S.D. Cal. filed Feb. 28, 2013), alleged that LG's proprietary "Smart Cooling System" is defective. That litigation further placed LG on notice of the defective nature of its refrigerators, including refrigerators containing linear compressors.

136.   Moreover, LG gained direct knowledge of the compressor defect through its role as designer and manufacturer of the compressor product at issue. In developing the linear compressor, LG conducted testing, including by using specialized lab equipment to measure the force generated by the motor, and by applying the same reliability tests that are applied to conventional motors as a standard measure.

137.   According to a 2002 white paper prepared by three LG senior research engineers, the linear motor powering LG's linear compressor must also satisfy other, more intensive reliability tests due to its use of a magnet and other unique characteristics.

138.   In sum, (1) complaints from (a) consumers and (b) repair shops, (2) news reports, (3) the *Clark* class action, and (4) its own product testing provided

LG with knowledge—well before Plaintiffs purchased their refrigerators—that the compressors in the LG Refrigerators are defective.

**F.**    **LG's Deficient Warranty Service**

139.    Many of the consumers who experienced the defect have voiced frustration with LG's warranty service or the warranty service of its authorized sellers and repair providers. Despite being aware of the defect, LG replaces defective parts with defective parts, causing customers to suffer repeat failures.

140.    LG also requires consumers to wait for overwhelmed repair providers to obtain a replacement compressor and attempt the repair. And any repair is temporary, at best, because the replacement part is equally defective.

141.    Further, LG until 2018 required consumers, after the first year of ownership, to pay for the labor associated with replacing the defective compressor. Those labor costs generally range from $200 to over $1,000. LG covered only the cost of replacement parts.

142.    Regardless of whether LG pays labor costs for some consumers, its warranty performance, and the warranty performance of its authorized agents, is deficient. Plaintiffs and class members uniformly overpaid for their LG Refrigerators because of the defective compressor, and those who experienced the defect have been left without a refrigerator while waiting for LG to diagnose the problem and arrange for repairs.

143.    To date, LG has not implemented an effective remedy for those who experience the compressor defect. LG instead continues to advise such individuals

35

to replace their defective compressors with other defective compressors.

## TOLLING OF THE STATUTE OF LIMITATIONS

144.   At all relevant times, LG knew that the LG Refrigerators were defective and knew that Plaintiffs and class members did not have that knowledge. Despite reasonable diligence on their part, Plaintiffs and class members were kept unaware by LG of the factual bases for the claims for relief asserted below.

145.   LG actively concealed the compressor defect by touting the LG Refrigerators' high quality and functionality without disclosing their defective nature. LG's concealment prevented Plaintiffs and class members from discovering their injuries and pursuing legal relief from LG.

146.   Plaintiffs did not discover and could not reasonably have discovered the compressor defect until their refrigerators failed.

## CLASS ACTION ALLEGATIONS

147.   Plaintiffs bring this action on their own behalf, and on behalf of the following class and state subclasses pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3):

**Class**

All persons in the United States who purchased from LG or its authorized retailers, other than for resale, an LG Refrigerator[1] produced between January 1, 2014 and December 31, 2017.

---

[1] The LG Refrigerators include, without limitation, the models listed in Exhibit A.

### Illinois subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of Illinois, an LG Refrigerator produced between January 1, 2014 and December 31, 2017.

### Minnesota subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of Minnesota, an LG Refrigerator produced between January 1, 2014 and December 31, 2017.

### New Jersey subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of New Jersey, an LG Refrigerator between produced January 1, 2014 and December 31, 2017.

### New York subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of New York, an LG Refrigerator between produced January 1, 2014 and December 31, 2017.

### Texas subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of Texas, an LG Refrigerator produced between January 1, 2014 and December 31, 2017.

### Utah subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of Utah, an LG Refrigerator produced between January 1, 2014 and December 31, 2017.

### Washington subclass

All persons who purchased from LG or its authorized retailers, other than for resale, within the State of Washington, an LG Refrigerator produced between January 1, 2014 and December 31, 2017.

148.   Excluded from the class are LG, its parents, subsidiaries, affiliates, officers and directors, any entity in which LG has a controlling interest, all class members who timely elect to be excluded, governmental entities, and all judges

37

assigned to hear any aspect of this litigation and their staff and immediate family members. Plaintiffs reserve the right to modify, change, or expand the class definition, including proposing additional subclasses, based on discovery and further investigation. This complaint collectively refers to the class and the state law subclasses defined above as the "class."

149.   **Numerosity.** The members of the class are so numerous that joinder is impractical. The class includes at least tens of thousands of individuals.

150.   **Typicality.** Plaintiffs' claims are typical of the claims of the class in that Plaintiffs, like all class members, were deprived of the benefit of their bargain in purchasing LG Refrigerators. LG's marketing and sale of defective goods forms a common course of conduct underlying the claims of Plaintiff and each class member. Plaintiffs and class members would not have purchased, or would have been willing to purchase only at a lower price, LG Refrigerators had they known of the compressor defect.

151.   **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interests adverse to the interests of any other class member and are committed to vigorously prosecuting this case. Plaintiffs have retained competent counsel experienced in the prosecution of consumer protection class actions involving defective goods.

152.   **Commonality and Predominance.** There are questions of law and fact common to the class, and these common questions predominate over any questions affecting only individual class members. Among the questions common to the class are:

a)      Whether the LG Refrigerators were defective at the time of sale;

b)      Whether and to what extent the compressor defect impairs the value of the LG Refrigerators;

c)      Whether LG knew of the compressor defect but continued to promote the LG Refrigerators, including their linear compressors, without disclosing the defect or its consequences to consumers;

d)       Whether a reasonable consumer would consider the compressor defect and its consequences important to the decision whether to purchase an LG Refrigerator;

e)      Whether LG breached implied warranties connected with the LG Refrigerators;

f)      Whether LG's representations and omissions relating to the LG Refrigerators and linear compressors were likely to deceive a reasonable consumer;

g)      Whether Plaintiffs and class members overpaid for their LG Refrigerators as a result of the violations alleged herein;

h)      Whether Plaintiffs and class members are entitled to equitable relief, including restitution and injunctive relief; and

i)      Whether Plaintiffs and class members are entitled to damages or other monetary relief, and if so, in what amount.

153. **Superiority.** A class action is superior to all other methods available for the fair and efficient adjudication of this controversy. Because the amount of

each individual class member's claim is small relative to the complexity of the litigation, and given LG's financial resources, no class member would be likely to pursue legal redress individually for the violations detailed in this complaint. A class action also presents fewer management difficulties than individual suits, allows claims to be heard which would otherwise go unheard, and allows comprehensive supervision by a single court.

154.   **Injunctive Relief.** Class certification is appropriate under Rule 23(b)(2) because LG acted and refused to act on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the class as a whole.

## CLAIMS FOR RELIEF

155.   Plaintiffs assert their Implied Warranty, Magnuson-Moss Warranty Act, and Fraud by Concealment claims under New Jersey law, or in the alternative, the laws of Plaintiffs' respective states of purchase.

156.   Plaintiffs assert their statutory consumer protection claims under the laws of Plaintiffs' respective states of purchase.

## FIRST CLAIM FOR RELIEF
### Breach of the Implied Warranty of Merchantability
### (On behalf of the class or, alternatively, each of the state subclasses)

157.   Plaintiffs bring this claim on behalf of themselves and the class under New Jersey law, N.J.S.A. § 12A-314.

158.   Alternatively, Carlos Stocco brings this claim on behalf of the Illinois subclass, Sarah Johnson brings this claim on behalf of the Minnesota subclass, Patrick Romano brings this claim on behalf of the New Jersey subclass, Terry

Driscoll brings this claim on behalf of the Texas subclass, Cheryl Ervin brings this claim on behalf of the Utah subclass, and Sam Lee brings this claim on behalf of the Washington subclass under each respective state's statute modeled on Section 314 of the Uniform Commercial Code ("UCC"): 810 Ill. Comp. Stat. 5/2-314, Minn. Stat. § 336.2-314, N.J.S.A. § 12A-314, Tex. Bus. & Com. Code § 2.314, Utah Code Ann. § 70A-2-314, and Wash. Rev. Code § 62A.2-314.

159.   LG is a "merchant" as defined by these statutes.

160.   The LG Refrigerators are "goods" as defined by these statutes.

161.   LG impliedly warranted that the LG Refrigerators were of a merchantable quality and were fit for their ordinary and intended use of cooling food and beverages.

162.   LG knew the specific use for which the LG Refrigerators were purchased. LG directly sold and marketed refrigerators containing linear compressors to customers through its authorized retailers and agents, such as those from whom Plaintiffs and class members bought their LG Refrigerators. LG knew that the LG Refrigerators would and did pass unchanged from the authorized retailers and agents to Plaintiffs and class members, with no modification to the defective compressors.

163.   The LG Refrigerators contained a compressor defect when the refrigerators left LG's possession and at the time of sale. The defect renders the refrigerators inoperable during their useful lives and unfit for their ordinary and intended purpose. At all relevant times, including when the LG Refrigerators entered the stream of commerce and were purchased by Plaintiffs and class

members, the LG Refrigerators were defective and substantially certain to fail long before the end of their useful life.

164.   LG knew of the compressor defect in the LG Refrigerators before Plaintiffs purchased their LG Refrigerators, including through (1) numerous consumer complaints and warranty claims, made online and directly to LG; (2) direct reports of product failures from LG's authorized repair personnel; (3) public news reports; (4) a prior class action, *Clark*, against LG concerning its defective refrigerators; and (5) LG's non-public internal data.

165.   Plaintiffs and class members were in privity of contract with LG by virtue of their interactions with LG and its retailers, who acted as LG's agents.

166.   Alternatively, privity of contract need not be established, and is not required, because Plaintiffs and class members are the intended third-party beneficiaries of the implied warranties and other contracts between LG and retailers who sold the LG Refrigerators. LG's warranties were designed and intended for the benefit of consumers who purchased these refrigerators. LG was aware of Plaintiffs' and class members' reasonable expectation that the LG Refrigerators would reliably cool food and beverages for at least several years after purchase. LG also made direct representations and omissions to Plaintiffs and consumers through its agents, in marketing materials, its website, and in advertisements.

167.   Plaintiffs provided LG with an opportunity to cure its breach of warranty, to no avail. LG has refused to recall, adequately repair, replace, or refund the purchase price of failed LG Refrigerators.

42

168.    Any attempt to disclaim or limit the implied warranty is unconscionable and unavailing given the circumstances. LG knowingly sold LG Refrigerators with a uniform compressor defect that causes these products to prematurely fail. Despite this knowledge, LG failed to inform Plaintiffs and class members of the defect and misrepresented the reliability, quality, performance, and qualities of the LG Refrigerators. The limited remedies offered in LG's warranty unreasonably favor LG and contravene the reasonable expectations of Plaintiffs and class members concerning the LG Refrigerators' performance.

169.    The time limits contained in LG's warranty period are also unconscionable and inadequate to protect Plaintiffs and the class. Plaintiffs and class members had no meaningful choice in determining these time limitations, and their terms unreasonably favor LG. A gross disparity in bargaining power existed between LG and class members, and LG knew that the LG Refrigerators were defective at the time of sale and that the defect would cause premature failure.

170.    Plaintiffs and class members were not required to notify LG of the breach because doing so would have been futile. LG also was on notice of the compressor defect from the complaints and service requests it received from Plaintiffs and class members, from repairs and/or replacements of the linear compressors or components thereof, and through other internal and external sources.

171.    As a direct and proximate cause of LG's breaches, Plaintiffs and class members suffered and will continue to suffer damages, injury in fact, and ascertainable loss, including economic damages at the point of sale of their LG

Refrigerators, repair and replacement costs, monetary losses associated with food spoliation, damage to other property, and loss of use of or access to a refrigerator for daily needs.

172.   LG's breaches of the implied warranty of merchantability thus damaged Plaintiffs and class members in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
**Violations of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301 *et seq.* ("MMWA")**
**(On behalf of the class or, alternatively, each of the state subclasses)**

173.   Plaintiffs incorporate all other allegations by reference.

174.   The LG Refrigerators are "consumer products" under 15 U.S.C. § 2301(1).

175.   Plaintiffs and class members are "consumers" under 15 U.S.C. § 2301(3).

176.   LG is a "supplier" and "warrantor" under 15 U.S.C. § 2301(4)-(5).

177.   Through its implied warranty, LG warranted to Plaintiffs and class members that the LG Refrigerators they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which a refrigerator is used.

178.   LG breached and refused to honor these implied promises. As a result of the compressor defect, the LG Refrigerators are inoperable and fail to perform in accordance with their ordinary and intended purposes.

179.   LG has been given reasonable opportunities to cure its breaches of warranty. LG had actual knowledge and ample notice that the LG Refrigerators are

defective as detailed above, but failed to provide an adequate remedy.

180.   For the reasons set forth in paragraph 189, *supra*, LG's durational limitation on implied warranties is unconscionable and unenforceable under 15 U.S.C. § 2308(b).

181.   The amount in controversy for purposes of Plaintiffs' individual claims exceeds $25. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

182.   As a direct and proximate result of LG's breaches of its implied warranty pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and class members have suffered damages in an amount to be determined at trial.

183.   Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under 15 U.S.C. § 2310(d)(2).

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**In Violation of the Song-Berly Consumer Warranty Act**
CAL. CIV. CODE § 1792 *etseq*.
**(On behalf of the class or, alternatively, Plaintiffs Burrage and Terry and the California subclass)**

184.   Plaintiffs incorporate all other allegations by reference.

185.   Plaintiff Burrage and Terry are "buyers" within the meaning of California Civil Code section 1781(b). Each purchased an LG Refrigerator in California.

186.   LG is a manufacturer within the meaning of California Civil Code section 1791(j). LG was responsible for producing the LG Refrigerators, and

directed and was involved in all stages of their production and manufacturing process.

187.    The LG Refrigerators are "consumer goods" within the meaning of California Civil Code section 1791(a).

188.    LG impliedly warranted to Plaintiffs that the LG Refrigerators were "merchantable" under California Civil Code sections 1791.1(a) and 1792.

189.    LG breached the implied warranty of merchantability by producing, manufacturing, and selling unmerchantable goods. The LG Refrigerators are defective. The compressor defect invariably manifests well before the end of the useful life of each LG Refrigerator. When the defect manifests, the result is total failure-the refrigerator is unable to fulfill its core function of cooling. The LG Refrigerators are thus unfit for the ordinary purposes for which a refrigerator is used and would not pass without objection in the refrigerator trade.

190.    The compressor defect is latent. Though the LG Refrigerators appear to be operable when new, the defect existed within each LG Refrigerator at the time of sale and throughout the periods of the written and statutory warranties. Accordingly, discovery of the defect by a purchaser during or after a warranty period does not bar a Song-Beverly claim for breach of the statutory implied warranty.

191.    Any attempt by LG to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to California Civil Code sections 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple

and concise language" state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis.   (2)  The entire risk as to the quality and performance of the goods is with the buyer. (3)  Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." LG's attempted warranty disclaimer does not conform to sections 1792.3 and 1792.4.

192.   As a direct and proximate cause of LG's breaches of the Song-Beverly Act, Plaintiffs and class members have been damaged in an amount to be proven at trial. Plaintiffs and class members are entitled to recover, among other damages, all amounts paid toward the purchase of the LG Refrigerators.

193.   LG knew of the defect before selling the LG Refrigerators. Thus, its Song-Beverly violations were willful. Plaintiffs accordingly seek a civil penalty of twice their actual damages.

194.   Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, as provided under California Civil Code section 1794.

### FOURTH CLAIM FOR RELIEF
**Violations of the Consumers Legal Remedies Act**
**CAL. CIV. CODE § 1750, *et seq*. ("CLRA")**
**(On behalf of the class or, alternatively, Plaintiffs Burrage and Terry and the California subclass)**

195.   Plaintiffs incorporate the above allegations by reference.

196.   LG is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and the LG Refrigerators are "goods" within the meaning of sections 1761(a) and 1770.

197.   LG's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7), and (9) because they include unfair and deceptive acts and practices-including fraudulent omissions-in connection with the marketing and sale of defective refrigerators. In violation of the CLRA, LG:

a)      represented that the LG Refrigerators had characteristics, uses, and benefits they do not have;

b)      represented that the LG Refrigerators are of a standard, quality, or grade when in fact they are not; and

c)      advertised the LG Refrigerators with intent to not sell them as advertised.

198.   LG knew that the LG Refrigerators were defective and prone to premature failure. LG acquired such knowledge from multiple sources, including, without limitation, its own design, development, and pre-release testing of the linear compressor, consumer complaints that it received, interactions with its authorized repair personnel, media reports, and the *Clark* class action.

199.   LG owed a duty to disclose that the LG Refrigerators are defective because it had superior knowledge of the compressor defect.

200.   LG also owed a duty to disclose that the LG Refrigerators are defective because it made partial, materially misleading statements in reference to the LG Refrigerators' high-quality and reliable features, including the linear compressor, without disclosing that the linear compressor and related parts are defective.

201.   LG had ample means and opportunities to disclose to Plaintiffs and

48

class members prior to purchase that the LG Refrigerators are defective, including through advertisements, on its website, on external labeling, on product brochures, and through its authorized retail channels. Despite its exclusive knowledge of and these opportunities to disclose the LG Refrigerators' defective nature, LG failed to disclose the compressor defect to Plaintiffs prior to purchase or before their respective buyers' remorse periods expired.

202.   LG's misrepresentations and fraudulent omissions were material. Had Plaintiffs known that the LG Refrigerators are defective, they would not have purchased them, would not have purchased them at the prices they did, or would have returned them during the remorse periods.

203.   LG's CLRA violations caused Plaintiffs and class members to sustain ascertainable losses, to be determined according to proof at trial.

204.   Plaintiffs further seek an order enjoining LG from engaging in practices that violate the CLRA.

205.   Under California Civil Code section 1782(a), on their own behalf and on behalf of the class, Plaintiffs separately sent CLRA notices to LG on March 22 and April 1, 2019 via certified mail, return receipt requested, to LG's principal place of business, advising LG that it is in violation of the CLRA and must correct, replace, or otherwise rectify the goods alleged to be in violation of California Civil Code section 1770. Plaintiffs advised that in the event LG did not provide the relief requested within 30 days, they would amend their complaint to include a request for monetary damages pursuant to the CLRA. LG failed to correct its business practices or provide the requested relief within 30 days. Accordingly, Plaintiffs

now seek monetary damages under the CLRA.

206.   In accordance with California Civil Code section 1780(d), a CLRA

venue declaration is attached as Exhibit B to this complaint.

## FIFTH CLAIM FOR RELIEF
### Violations of the Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL")
### (On behalf of the class or, alternatively, Plaintiffs Burrage and Terry and the California subclass)

207.   Plaintiffs incorporate all other allegations by reference.

208.   The UCL proscribes "any unlawful, unfair or fraudulent business act

or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. &

PROF. CODE § 17200.

### Unlawful

209.   LG's conduct is unlawful, in violation of the UCL, because it violates

the Song-Beverly Act, the MMWA, and the CLRA. 15

### Unfair

210.   LG's conduct is unfair in violation of the UCL because it violates

California's public policy, legislatively declared in the Song-Beverly Act, requiring

a manufacturer to ensure that goods it places on the market are fit for their ordinary

and intended purposes. LG violated Song-Beverly because the LG Refrigerators

that it produced, marketed, and sold are unfit for their most basic function:

refrigeration.

211.   LG acted in an unethical, unscrupulous, oppressive, and substantially

injurious manner. LG engaged in unfair business practices in at least the following

respects:

a)      LG failed to exercise adequate quality control and due diligence over the LG Refrigerators before placing them on the market;

b)      LG promoted and sold refrigerators it knew were defective because they contain a compressor that fails prematurely;

c)      LG failed to disclose that the LG Refrigerators are defective, and represented through advertising, on its website, on product labeling, in product brochures, and through its authorized retailers that the LG Refrigerators possess qualities LG knew the products did not possess;

d)      LG directed repairs and furnished replacement products it knew would not permanently fix the defect that caused consumers to experience repeated instances of failure, rendering its Limited Warranty useless; and

e)      LG minimized the scope and severity of the problems with the LG Refrigerators, refusing to acknowledge that the compressor is defective, failing to provide consumers with adequate relief, and suggesting to consumers that they should try to resolve the problem by replacing the compressor when LG knew such a replacement would not be effective.

212.   The gravity of the harm resulting from LG's unfair conduct outweighs any potential utility. The practice of selling defective refrigerators without providing an adequate remedy to cure the defect-and continuing to sell those refrigerators   without full and fair disclosure of the defect-harms the public at large and is part of a   common and uniform course of wrongful conduct.

213.   The harm from LG's conduct was not reasonably avoidable by

consumers. The LG Refrigerators suffer from a latent defect, and LG failed to disclose it even after receiving a large volume of consumer complaints and reports of compressor failure from its authorized repair personnel. Plaintiffs did not know of, and had no reasonable means of discovering, that the LG Refrigerators are defective.

214.    There were reasonably available alternatives that would have furthered LG's legitimate business interests of satisfying and retaining customers while maintaining profitability, such as: (a) acknowledging the defect and providing a permanent, effective fix for the defective refrigerators; (b) adequately disclosing the defect to prospective purchasers; and (c) offering refunds or suitable non-defective replacement refrigerators to consumers with failed refrigerators.

## Fraud by Omission

215.    LG's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer. Among other fraudulent conduct, LG:

a)    knowingly concealed from Plaintiffs and class members that the LG Refrigerators contain a latent defect that gives them a propensity to fail;

b)    volunteered information to Plaintiffs and class members through its website, press releases, and other means that the LG Refrigerators-and their   linear compressors-were functional, premium products without disclosing facts that   would have materially qualified those misleading partial representations; and

c)    promoted the LG Refrigerators as being high quality and

containing premium features, including a purportedly reliable linear compressor, despite knowing the LG Refrigerators are defective, and failed to correct its misleading partial representations.

216.   LG knew that the LG Refrigerators were defective and prone to premature failure. LG acquired such knowledge from multiple sources, including, without limitation, its own design, development, and pre-release testing of the linear compressor, consumer complaints that it received, interactions with its authorized repair personnel, media reports, and the *Clark* class action.

217.   LG owed a duty to disclose that the LG Refrigerators are defective because it had superior knowledge of the compressor defect.

218.   LG also owed a duty to disclose that the LG Refrigerators are defective because it made partial, materially misleading statements in reference to the LG Refrigerators' high-quality and reliable features, including the linear compressor, without disclosing that the linear compressor is defective.

219.   LG had ample means and opportunities to disclose to Plaintiffs and class members prior to purchase that the LG Refrigerators are defective, including through advertisements, on its website, on external labeling, and through its authorized retail channels. Despite its exclusive knowledge of and these opportunities to disclose the LG Refrigerators' defective nature, LG failed to disclose the compressor defect to Plaintiffs prior to purchase or before their respective buyers' remorse periods expired.

220.   LG's misrepresentations and fraudulent omissions were material. Had Plaintiffs known that the LG Refrigerators are defective, they would not have

purchased them, would not have purchased them at the prices they did, or would have returned them during the remorse periods.

221.   Plaintiffs suffered injury in fact, including lost money or property, as a result of LG's unlawful, unfair, and fraudulent acts and omissions. Absent  LG's unlawful, unfair, and fraudulent conduct, Plaintiffs would not have purchased an LG Refrigerator, would not have purchased an LG Refrigerator at the price they did, or would have returned their LG Refrigerator for a refund during their respective buyers' remorse periods.

222.   Through its unlawful, unfair, and fraudulent conduct, LG acquired Plaintiffs' money directly and from LG's authorized resellers (e.g., Best Buy, Home Depot, Lowe's, P.C. Richard & Son, AJMadison, and Pacific Sales Kitchen & Home).

223.   Plaintiffs accordingly seek appropriate relief under the UCL, including (a) restitution in full and (b) such orders or judgments as may be necessary to enjoin LG from continuing its unfair, unlawful, and fraudulent practices. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law, including California Code of Civil Procedure section 1021.5.

### SIXTH CLAIM FOR RELIEF
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1 *et seq.* ("NJCFA")**
**(On behalf of the class or, alternatively, Plaintiff Romano and the New Jersey subclass)**

224.   Plaintiffs incorporate all other allegations by reference.

225.   Plaintiff Romano, New Jersey subclass members, and LG are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

226.   LG's advertisements described herein are "advertisements" within the meaning of N.J. Stat. Ann. § 56:8-1(a).

227.   LG Refrigerators are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

228.   LG's sale of the LG Refrigerators constitutes "sales" within the meaning of N.J. Stat. Ann.§ 56:8-1(e).

229.   The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

230.   LG employed unconscionable commercial practices in its advertising and sale of the LG Refrigerators. LG's practices in connection with its advertising and sale of the LG Refrigerators demonstrate a lack of honesty and fair dealing.

231.   LG also engaged in deceptive trade practices in violation of New Jersey law, by promoting the functionality and quality of the LG Refrigerators while failing to disclose and actively concealing the compressor defect.

232.   LG intended that others rely upon its concealment of the LG's defective nature when purchasing this product. LG knew that disclosure of the defect to Plaintiffs and class members would be important to their decision whether to purchase an LG refrigerator.

233.   Plaintiff Romano and New Jersey subclass members suffered ascertainable loss as a direct and proximate result of LG's unconscionable and

deceptive acts or practices. Had Plaintiff Romano and New Jersey subclass members known that the LG refrigerators contain a latent defect, they would not have purchased a LG Refrigerator or would have paid significantly less for it. Among other injuries, Plaintiff Romano and New Jersey subclass members overpaid for their LG Refrigerators, and their LG Refrigerators suffered damages.

234.   As permitted under N.J. Stat. Ann. § 56:8-19, Plaintiff Romano and New Jersey subclass members seek trebled damages, appropriate injunctive relief, and reasonable attorneys' fees and costs.

235.   In accordance with N.J. Stat. Ann. § 56:8-20, a copy of this complaint will be mailed to the relevant state officials at the time of its filing.

## SEVENTH CLAIM FOR RELIEF
### Violations of the New York Deceptive Acts and Practices Act
### N.Y. Gen. Bus. Law § 349
### (On behalf of Plaintiff Israel and the New York subclass)

1.   Plaintiffs incorporate all other allegations by reference.

236.   Plaintiff Israel and New York subclass members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

237.   LG is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. N.Y. Gen. Bus. Law § 349(b).

238.   Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

239.   In the course of LG's business, it failed to disclose and actively

concealed the compressor defect with the intent that consumers rely on that concealment in deciding whether to purchase an LG Refrigerator.

240.   By intentionally concealing the compressor defect while advertising the LG Refrigerators as functional, premium products, and fit for their ordinary and intended purpose of keeping food and beverages cool, LG engaged in deceptive acts or practices in violation of GBL section 349.

241.   LG's deceptive acts or practices were materially misleading. LG's conduct was likely to and did deceive reasonable consumers, including Israel, about the true performance and value of the LG Refrigerators.

242.   Plaintiff Israel and New York subclass members reasonably relied on LG's misrepresentations and omissions of material facts when purchasing LG Refrigerators. Plaintiff Israel and New York subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that LG suppressed. Had Plaintiff Israel and New York subclass members known that the LG Refrigerators were defective, they would not have purchased LG Refrigerators, would not have purchased them at the prices they did, or would have returned them during the remorse periods.

243.   LG's actions set forth above occurred in the conduct of trade or commerce.

244.   LG's misleading conduct concerns widely purchased consumer products and affects the public interest. LG's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

245.   Plaintiff Israel and New York subclass members suffered ascertainable loss as a direct and proximate result of LG's GBL violations. Among other things, LG and New York subclass members overpaid for their LG Refrigerators, and their LG Refrigerators suffered a diminution in value. These injuries are the direct and natural consequence of LG's material misrepresentations and omissions.

246.   Accordingly, Plaintiff Israel, individually and on behalf of the New York subclass, requests that this Court enter such orders or judgments as may be necessary to enjoin LG from continuing its unfair and deceptive practices. Under the GBL, Plaintiff Israel and New York subclass members are entitled to recover their actual damages or $50, whichever is greater. Additionally, because LG acted willfully or knowingly, Plaintiff Israel and New York subclass members are entitled to recover three times their actual damages.

### EIGHTH CLAIM FOR RELIEF
**Violations of the New York False Advertising Act**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Israel and the New York subclass)**

247.   Plaintiffs incorporate all other allegations by reference.

248.   LG's conduct as alleged herein occurred in "the conduct of business, trade or commerce" within the meaning of GBL section 350.

249.   LG caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by LG, or that through the exercise of reasonable care should have been known by LG, to be untrue and misleading to

Plaintiff Israel and the New York subclass.

250.   LG made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the LG Refrigerators, particularly concerning the reliability, durability, energy efficiency, long-term performance, high quality and advanced technological nature of the LG Refrigerators. Moreover, LG's misrepresentations and omissions concealed that the LG Refrigerators would not fulfill their ordinary and intended purposes of keeping food and beverages cool and frozen over the lifespan of an average refrigerator. LG systematically misrepresented, concealed, suppressed, and omitted material facts relating to the LG Refrigerators and compressor defect in the course of its business, with the intent that consumers would rely upon such misrepresentation, concealment, suppression, and omission.

251.   LG's false advertising was likely to and did deceive reasonable consumers, including Plaintiff Israel and the New York subclass members, regarding the true, defective characteristics of the LG Refrigerators and their embedded compressor defect, the quality of the LG brand, and the true value of the LG Refrigerators.

252.   The LG Refrigerators did not perform as advertised, making them far less valuable than advertised.

253.   Plaintiff Israel and the New York subclass members were exposed to LG's misrepresentations and omissions of material facts, including through its advertisements and marketing materials.

254.   Plaintiff Israel and the New York subclass members would not have

purchased the LG Refrigerators but for LG's false advertising, because knowing that LG Refrigerators would exhibit the compressor defect would have caused Plaintiff Israel and New York subclass members not to purchase the refrigerators. Any reasonable consumer would have considered the compressor defect important in deciding whether to purchase an LG Refrigerator. Plaintiff Israel and New York subclass members did not receive the benefit of their bargain by reason of LG's false advertising.

255.   Plaintiff Israel and the New York subclass members were harmed and suffered injury in fact and/or ascertainable loss and actual damages as a result of LG's false advertising with regard to their LG Refrigerators' compressors. Among other things, they overpaid for their LG Refrigerators, and their refrigerators suffered a diminution in value.

256.   Plaintiff Israel and the New York subclass members are therefore entitled to actual damages and/or equitable relief, injunctive relief, reasonable attorneys' fees, costs, and other appropriate relief under GBL section 350, in an amount to be proven at trial.

257.   Plaintiff Israel and the New York subclass members also seek treble damages up to $10,000, pursuant to N.Y. Gen. Bus. Law § 350-e, because LG's unlawful conduct was committed willfully and knowingly.

## <u>NINTH CLAIM FOR RELIEF</u>
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
Ill. Comp. Stat. § 505/1 *et seq.* ("ICFA")
(On behalf of Plaintiff Stocco and the Illinois subclass)**

258.   Plaintiffs incorporate all other allegations by reference.

259.   Plaintiff Stocco and the Illinois subclass members are "consumers" within the meaning of 815 Ill. Comp. Stat. § 505/1(e). And Plaintiff Stocco, the Illinois subclass, and LG are "persons" within the meaning of 815 Ill. Comp. Stat. § 505/1(c).

260.   LG engaged in "trade" or "commerce" within the meaning of 815 Ill. Comp. Stat. § 505/1(f).

261.   LG engaged in the "sale" of "merchandise" as those terms are defined by 815 Ill. Comp. Stat. §§ 505/1(b) and (d).

262.   Illinois prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce." 815 Ill Comp. Stat. § 505/2.

## Unfair Conduct

263.   LG acted in an immoral, unethical, unscrupulous, oppressive, and substantially injurious manner. LG engaged in unfair business practices in at least the following respects:

      a)   LG failed to exercise adequate quality control and due diligence over the LG Refrigerators before placing them on the market;

      b)   LG promoted and sold refrigerators it knew were defective because they contain a compressor that fails prematurely;

c)      LG failed to disclose that the LG Refrigerators are defective, and represented through advertising, on its website, on product labeling, in product brochures, and through its authorized retailers that the LG Refrigerators possess qualities LG knew the products did not possess;

d)      LG directed repairs and furnished replacement products it knew would not permanently fix the defect that caused consumers to experience repeated instances of failure, rendering its Limited Warranty useless; and

e)      LG minimized the scope and severity of the problems with the LG Refrigerators, refusing to acknowledge that the compressor is defective, failing to provide consumers with adequate relief, and suggesting to consumers that they should try to resolve the problem by replacing the compressor when LG knew such a replacement would not be effective.

264.   The gravity of the harm resulting from LG's unfair conduct outweighs any potential utility. The practice of selling defective refrigerators without providing an adequate remedy to cure the defect—and continuing to sell those refrigerators without full and fair disclosure of the defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

265.   The harm from LG's conduct was not reasonably avoidable by consumers. The LG Refrigerators suffer from a latent defect, and LG failed to disclose it even after receiving a large volume of consumer complaints and reports of compressor failure from its authorized repair personnel. Plaintiff Stocco and Illinois subclass members did not know of, and had no reasonable means of discovering, that the LG Refrigerators are defective.

62

266.   There were reasonably available alternatives that would have furthered LG's legitimate business interests of satisfying and retaining customers while maintaining profitability, such as: (a) acknowledging the defect and providing a permanent, effective fix for the defective refrigerators; (b) adequately disclosing the defect to prospective purchasers; and (c) offering refunds or suitable non-defective replacement refrigerators to consumers with failed refrigerators.

### Fraud by Omission

267.   LG's conduct is fraudulent in violation of the IFCA because it is likely to deceive a reasonable consumer. Among other fraudulent conduct, LG:

a)     knowingly concealed from Plaintiff Stocco and Illinois subclass members that the LG Refrigerators contain a latent defect that gives them a propensity to fail;

b)     volunteered information to Plaintiff Stocco and Illinois subclass members through its website, press releases, authorized resellers, and other means that the LG Refrigerators—and their linear compressors—were functional, premium products without disclosing facts that would have materially qualified those misleading partial representations; and

c)     promoted the LG Refrigerators as being high quality and containing premium features, including a purportedly reliable linear compressor, despite knowing the LG Refrigerators are defective, and failed to correct its misleading partial representations.

268.   LG knew that the LG Refrigerators were defective and prone to

premature failure. LG acquired such knowledge from multiple sources, including, without limitation, its own design, development, and pre-release testing of the linear compressor, consumer complaints that it received, interactions with its authorized repair personnel, media reports, and the *Clark* class action.

269.   LG owed a duty to disclose that the LG Refrigerators are defective because it had superior knowledge of the compressor defect.

270.   LG also owed a duty to disclose that the LG Refrigerators are defective because it made partial, materially misleading statements in reference to the LG Refrigerators' high-quality and reliable features, including the linear compressor, without disclosing that the linear compressor is defective.

271.   LG had ample means and opportunities to disclose to Plaintiff Stocco and Illinois subclass members prior to purchase that the LG Refrigerators are defective, including through advertisements, on its website, on external labeling, and through its authorized retail channels. Despite its exclusive knowledge of and these opportunities to disclose the LG Refrigerators' defective nature, LG did not disclose the compressor defect to Plaintiff Stocco and Illinois subclass members prior to purchase or before their respective buyers' remorse periods expired.

272.   LG's misrepresentations and fraudulent omissions were material. Had Plaintiff Stocco and Illinois subclass members known that the LG Refrigerators are defective, they would not have purchased them, would not have purchased them at the prices they did, or would have returned them during the remorse periods.

273.   Plaintiff Stocco and Illinois subclass members suffered injury in fact, including lost money or property, as a result of LG's unlawful, unfair, and

fraudulent acts and omissions. Absent LG's unlawful, unfair, and fraudulent conduct, Plaintiff Stocco and Illinois subclass members would not have purchased an LG Refrigerator, would not have purchased an LG Refrigerator at the price they did, or would have returned their LG Refrigerator for a refund during their respective buyers' remorse periods.

274.   Through its unfair and fraudulent conduct, LG acquired Plaintiff Stocco and Illinois subclass members' money directly and from LG's authorized resellers (e.g., Sears, Best Buy, Home Depot, Lowe's, P.C. Richard & Son, and Grand Appliance).

275.   Accordingly, pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff Stocco and the Illinois subclass seek actual, compensatory, and punitive damages (pursuant to 815 Ill. Comp. Stat. § 505/10a(c)), injunctive relief, and reasonable attorneys' fees and costs.

### TENTH CLAIM FOR RELIEF
**Violations of the Washington Consumer Protection Act**
**Wash. Rev. Code § 19.86.010 *et seq.* ("WCPA")**
**(On behalf of Plaintiff Lee and the Washington subclass)**

276.   Plaintiffs incorporate all other allegations by reference.

277.   Plaintiff Lee, the Washington subclass, and LG are "persons" under Wash. Rev. Code § 19.86.010(1).

278.   LG's acts or practices, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

279.   Washington law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices." Wash. Rev.

Code §§ 19.86.020.

280.   LG's acts and practices, described herein, are unfair and deceptive in violation of Washington law for the reasons stated in paragraphs 243 through 254 of the Sixth Claim for Relief, *supra*.

281.   By selling defective LG Refrigerators with exclusive knowledge of the defect, and by failing to disclose the defect or honor warranty claims in good faith, LG acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

282.   LG also committed deceptive acts and practices with the intent that consumers, such as Plaintiff Lee and Washington subclass members, would rely upon LG's representations and omissions when deciding whether to purchase a LG Refrigerator.

283.   Plaintiff Lee and Washington subclass members suffered ascertainable loss as a direct and proximate result of LG's unfair and deceptive acts or practices. Had Plaintiff Lee and Washington subclass members known that the LG Refrigerators were defective, they would not have purchased a LG Refrigerator or would have paid significantly less for one. Among other injuries, Plaintiff Lee and Washington subclass members overpaid for their LG Refrigerators, and their LG Refrigerators suffered a diminution in value.

284.   LG's violations of the WCPA present a continuing risk to Plaintiff Lee and Washington subclass members, as well as to the general public. LG's unlawful acts and practices adversely affect the public interest.

285.   Therefore, under Wash. Rev. Code § 19.86.090, Plaintiff Lee and the

Washington subclass seek an order enjoining LG's unfair and deceptive acts or practices, providing for appropriate monetary relief, including trebled damages, and awarding reasonable attorneys' fees and costs.

286.   In accordance with Wash. Rev. Code § 19.86.095, a copy of this complaint has been served on the Attorney General of Washington.

**ELEVENTH CLAIM FOR RELIEF**
**Violations of the Utah Consumer Sales Practices Act**
**Utah Code § 13-11-1 *et seq.* ("UCSPA")**
**(On behalf of Plaintiff Ervin and the Utah subclass)**

287.   Plaintiffs incorporate all other allegations by reference.

288.   The sale of LG Refrigerators to Plaintiff Ervin and Utah subclass members constitute "consumer transactions" within the meaning of Utah Code § 13-11-3(2)(a).

289.   LG is a "supplier" within the meaning of Utah Code § 13-11-3(6).

290.   Utah law prohibits "deceptive act[s] or practice[s]" and "unconscionable act[s] or practice[s] by a supplier in connection with a consumer transaction . . . ." Utah Code §§ 13-11-4, 5.

291.   LG's acts and practices, as alleged in this complaint, violate Utah Code §§ 13-11-4(2)(a), (b), and (j)(ii) because they include false misleading, and deceptive acts and practices—including fraudulent omissions—in connection with the marketing and sale of defective refrigerators. In violation of the UCSPA, LG:

    a)      represented that the LG Refrigerators had characteristics, uses, and benefits they do not have;

    b)      represented that the LG Refrigerators are of a standard, quality,

67

or grade when in fact they are not; and

      c)    failed to honor its warranty.

292.   LG's acts and practices, described herein, are unconscionable and deceptive in violation of Utah law for the reasons stated in paragraphs 243 through 254 of the Sixth Claim for Relief, *supra*.

293.   LG committed deceptive acts and practices with the intent that consumers, such as Plaintiff Ervin and Utah subclass members, would rely upon LG's representations and omission when deciding whether to purchase a LG Refrigerator.

294.   Plaintiff Ervin and Utah subclass members suffered ascertainable loss as a direct and proximate result of LG's unfair and deceptive acts or practices. Had Plaintiff Ervin and Utah subclass members known that the LG Refrigerators are defective, they would not have purchased a LG Refrigerator or would have paid significantly less for one. Among other injuries, Plaintiff Ervin and Utah subclass members overpaid for their LG Refrigerators, and their LG refrigerators suffered a diminution in value.

295.   Plaintiff Ervin and the Utah subclass members are entitled to recover their actual damages, under Utah Code § 13-11-19(4)(a), and reasonable attorneys' fees under Utah Code § 13-11-19(5).

296.   Plaintiff Ervin also seeks an order enjoining LG's unfair and deceptive acts or practices under Utah Code § 13-11-19(3), and any other just and proper relief available under the UCSPA.

## TWELFTH CLAIM FOR RELIEF
### Fraud by Concealment
### (On behalf of the class and the state subclasses)

297.   Plaintiffs incorporate all other allegations by reference.

298.   LG intentionally suppressed and concealed material facts about the performance and quality of the LG Refrigerators. As alleged herein, LG knew about the defective nature of the compressors and related parts in the LG refrigerators. Further, LG was aware of numerous consumer and technician reports of defect-related problems, but never disclosed the compressor defect to Plaintiffs and class members.

299.   Because the defect in the LG Refrigerators is latent and undetectable until it arises, Plaintiffs and class members had no reasonable means of knowing that LG's representations concerning the LG Refrigerators, and their compressors, were incomplete, false, or misleading, or that it had failed to disclose that the LG Refrigerators are defective. Plaintiffs and class members did not and reasonably could not have discovered LG's deceit before they purchased their LG Refrigerators or before the end of their respective buyer's remorse periods.

300.   Had Plaintiffs and class members known that the LG Refrigerators are defective, they would not have purchased an LG Refrigerator, would not have purchased an LG Refrigerator at the price they did, or would have returned their LG Refrigerator for a refund during their respective buyers' remorse periods.

301.   LG had a duty to disclose the compressor defect because the defect is material and LG possessed exclusive knowledge of it. LG acquired its knowledge of the compressor defect from multiple sources, including, without limitation, its

own design, development, and pre-release testing of the linear compressor, consumer complaints that it received, interactions with its authorized repair personnel, media reports, and the *Clark* class action.

302.   LG also had a duty to disclose the compressor defect because, through advertising, product brochures, external labeling, statements made through its authorized retail channels, statements made on its website, and in other sources that Plaintiffs and class members encountered before purchasing their LG Refrigerators, LG made partial representations regarding the purported high quality of the LG Refrigerator and its linear compressor—including representations about its reliability—but failed to disclose facts that would have materially qualified those partial representations. Having volunteered information relating to the compressor to Plaintiffs and class members, LG had a duty to disclose the whole truth about the compressor and its defective nature.

303.   Each Plaintiff was exposed to LG's specific representations about the LG Refrigerator before and immediately after purchase, and within the time period in which they could have returned their LG Refrigerator without penalty. Each Plaintiff saw LG's representations about the LG Refrigerator online or in product advertisements, and received further information from LG about the LG Refrigerator in product manuals and brochures that accompanied the refrigerator. None of the informational sources Plaintiffs saw—advertisements, websites, product manuals, brochures, or promotional materials—indicated that the LG Refrigerator is defective.

304.   LG concealed the compressor defect to sell more LG Refrigerators at

a premium price, in a misguided effort to prevent damage to its brand, and to avoid the costs of an effective fix and of repairs, replacements, and refunds for its customers.

305.   The facts about the LG Refrigerator that LG suppressed and omitted were material, and Plaintiffs and class members were unaware of them until they experienced the defect. Had LG disclosed the defect, including through advertising, press releases, promotional materials, or retailer statements, Plaintiffs and class members would not have purchased an LG Refrigerator, would have paid substantially less for it, or would have returned it for a refund.

306.   When deciding to purchase an LG Refrigerator, Plaintiffs and class members reasonably relied to their detriment upon LG's material misrepresentations and omissions regarding the quality of the LG Refrigerator and the absence of a product defect.

307.   Plaintiffs and class members sustained damages as a direct and proximate result of LG's deceit and fraudulent concealment. Among other damage, Plaintiffs and class members did not receive the value associated with the price they paid for the LG Refrigerator.

308.   LG's fraudulent concealment was malicious, oppressive, deliberate, intended to defraud Plaintiffs and class members and enrich LG, and in reckless disregard of Plaintiffs' and class members' rights, interests, and well-being. LG's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the class, respectfully request that this Court:

A.     Certify the class and subclasses defined above and appoint Plaintiffs as class representatives and their counsel as class counsel;

B.     Determine that LG is liable for the violations set forth above;

C.     Award damages or restitution to Plaintiffs and class members, in addition to pre-judgment and post-judgment interest, as provided by law;

D.     Grant appropriate equitable relief, including, without limitation, an order requiring LG to adequately disclose the LG Refrigerators' defective nature;

E.     Award reasonable attorneys' fees and costs;

F.     Award Plaintiffs and class members trebled and/or punitive damages as authorized by law; and

G.     Grant such further and other relief that the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs request a trial by jury of all issues triable as of right.

Respectfully submitted,

*s/ Amey J. Park*
Dated: August 18, 2020          Shanon J. Carson (*pro hac vice*)
                                Lawrence Deutsch, NJ 034971986

72

Jacob M. Polakoff, NJ 035832006
Amey J. Park, NJ 070422014
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:   (215) 875-3000
Fax:   (215) 875-4604
scarson@bm.net
ldeutsch@bm.net
jpolakoff@bm.net
apark@bm.net

Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Adam E. Polk (*pro hac vice*)
Simon S. Grille (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

Benjamin F. Johns (NJ 038182005)
Samantha E. Holbrook (NJ 034162011)
**CHIMICLES SCHWARTZ KRINER**
  **& DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
bfj@chimicles.com
seh@chimicles.com

*Counsel for Plaintiffs*