# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL BENTLEY, *et al.*, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>          Defendant. | Case No. 2:19-cv-13554-MCA-MAH (consolidated with Case Nos. 2:19-cv-15185-MCA-MAH, 2:19-cv-15826-MCA-MAH, and 2:20-cv-07652-MCA-MAH) |

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

---

**BERGER MONTAGUE PC**
Shanon J. Carson (*pro hac vice*)
Lawrence Deutsch (NJ 034971986)
Jacob M. Polakoff (NJ 035832006)
Amey J. Park (NJ 070422014)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
ldeutsch@bm.net
jpolakoff@bm.net
apark@bm.net

**GIRARD SHARP LLP**
Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Adam E. Polk (*pro hac vice*)
Simon S. Grille (*pro hac vice*)
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

***Counsel for Plaintiffs***

**[Additional Counsel on Signature Page]**

753377.1

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY .........................3

   A.  Plaintiffs' Allegations and Preliminary Investigation .....................3

   B.  Fact and Expert Discovery .........................................................6

   C.  Mediation and Settlement ...........................................................7

   D.  Principal Terms of the Settlement ...............................................8

     1.  Settlement Class Definition .....................................................8

     2.  Settlement Consideration .......................................................9

     3.  Release of Liability ...............................................................11

     4.  Notice and Claim Administration ...........................................12

     5.  Attorneys' Fees and Costs; Service Awards .............................13

III.  ARGUMENT ...................................................................................14

   A. The Parties' Agreement on Attorneys' Fees Merits Approval Under Third Circuit Law. ......................................................................14

     1.  The Lodestar-Multiplier Method Demonstrates That The Base Fee Is Reasonable. ..................................................................17

     2.  The Additional Fee Is Reasonable Under the Percentage Method. ...........19

     3.  The *Gunter* Factors Support Class Counsel's Fee Request. .....................21

       a. Size of Fund and Number of Persons Benefited .....................21

       b. Absence of Objections ....................................................23

       c. Skill and Efficiency of Class Counsel .................................23

       d. Complexity and Duration of the Litigation ..........................24

       e. Risk of Non-Payment .....................................................25

       f.  Amount of Time Devoted by Counsel ................................25

       g. Awards in Similar Cases .................................................25

4. The Discretionary *Prudential* Factors Support the Fee Request. ................26

  a. The Settlement Benefits Resulted Solely From Class Counsel's Efforts. ..........................................................................................27

  b. The Percentage Fee Is Less Than the Fee That Would Have Been Negotiated in the Private Market. ...........................................27

  c. The Settlement Includes Very Innovative Terms. ...................................28

B.  The Court Should Approve the Requested Reimbursement of Litigation Expenses. .......................................................................................28

C.  The Court Should Approve the Requested Service Awards for the Class Representatives. ..............................................................................29

IV.  CONCLUSION ..............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benelli v. BCA Fin. Servs., Inc.*,
   324 F.R.D. 89 (D.N.J. 2018) ............................................................................30

*Blum v. Stenson*,
   465 U.S. 886 (1984) .........................................................................................20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .........................................................................................15

*Careccio v. BMW of N. Am. LLC*,
   No. CIV. A. 08-2619, 2010 WL 1752347, (D.N.J. April 29, 2010) ...................29

*Demaria v. Horizon Healthcare Servs., Inc.*,
   No. 2:11-CV-07298 (WJM), 2016 WL 6089713 (D.N.J. Oct. 18, 2016) ..........19

*Demmick v. Cellco P'ship*,
   No. CV 06-2163 (JLL), 2015 WL 13646311 (D.N.J. May 1, 2015) ..................18

*Flores v. Express Servs., Inc.*,
   No. CV 14-3298, 2017 WL 1177098 (E.D. Pa. Mar. 30, 2017) .........................18

*Frederick v. Range Res.-Appalachia, LLC*,
   No. C.A. 08-288 ERIE, 2011 WL 1045665 (W.D. Pa. Mar. 17, 2011) ..............18

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   No. 05-05437 RBL, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ...............21

*Grimes v. Vitalink Commc'ns Corp.*,
   17 F.3d 1553 (3d Cir. 1994) .............................................................................12

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) .............................................................................21

*Harshbarger v. Penn Mut. Life Ins. Co.*,
   No. CV 12-6172, 2017 WL 6525783 (E.D. Pa. Dec. 20, 2017) .........................18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..................................................................................... 15, 16

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ......................................................................... 15, 26

*In re Cigna Corp. Secs. Litig.*,
   No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ...............................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...............................................................................16

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012) ............................................................................22

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
733 F. Supp. 2d 997 (E.D. Wis. 2010)..................................................20

*In re MyFord Touch Consumer Litig.*,
No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019*)* ..........22

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
No. MDL 1532, 2011 WL 1398485 (D. Me. April 13, 2011) ............................19

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)........... 20, 27, 29

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)................19

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998).......................................................... 18, 26

*In re Rite Aid Corp. Securities Litig.,*
396 F.3d 294 (3d Cir. 2005)...............................................................26

*In re Safety Components Int'l Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .......................................................29

*Jackson v. Wells Fargo Bank, N.A.*,
136 F. Supp. 3d 687 (W.D. Pa. 2015)...................................................26

*Liberty Travel, Inc.*,
No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. April 8, 2011)................30

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................... 9, 12

*McCoy v. HealthNet, Inc.*,
569 F. Supp. 2d 448 (D.N.J. 2008) .....................................................24

*Nottingham Partners v. Trans-Lux Corp.*,
925 F.2d 29 (1st Cir. 1991)......................................................... 12, 13, 14

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003).........................................................21

*Schuler v. Medicines Co.*,
No. 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 23, 2016).......................18

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)......................................................... 15, 26, 30

*Talone v. American Osteopathic Ass'n*,
No. 1:16-CV-04644-NLH-JS, 2018 WL 6318371 (D.N.J. Dec. 3, 2018)..........30

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)....................................................... 25, 30

*Vaughn v. American Honda Motor Co.*,
627 F. Supp. 2d 738 (E.D. Tex. 2007)..................................................21

*Venegas v. Mitchell*,
495 U.S. 82 (1990).........................................................................27

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..........25

**Rules**

Fed. R. Civ. P. 23(h) .......................................................................... 14, 21

**Other Authorities**

4 Newberg on Class Actions § 12:18 (5th ed.).........................................17
Peter Robinson*, An Empirical Study of Settlement Conference Nuts and Bolts:
    Settlement Judges Facilitating Communication, Compromise and Fear*,
    17 Harv. Negot. L. Rev. 97 (2012) ....................................................20

## I.   **INTRODUCTION**

Class Counsel filed this class action alleging that LG refrigerators are prone to experience repeated cooling breakdowns, and investigated and prosecuted this litigation—and the parallel *Sosenko* case in the Central District of California—on a pure contingency basis. After completing core discovery into the merits and class certification, two mediations, and protracted negotiations, Class Counsel achieved a landmark nationwide settlement of both cases for the approximately 1.55 million individuals in the Settlement Class.[1] The Court granted preliminary approval of the Settlement on August 19, 2020. ECF No. 52. Pursuant to the schedule for settlement approval proceedings, Plaintiffs respectfully file this motion for attorneys' fees, reimbursement of litigation expenses, and service awards.

The parties separately negotiated attorneys' fees, expenses, and service awards after they had reached a signed Settlement Agreement on all other issues, including the provisions that provide for payments and non-monetary relief to Plaintiffs and Class members. Thus the fee, expense, and service award provisions are set forth in a First Amendment to the Settlement Agreement that was agreed to and executed only after a separate mediation session with Hon. Jay C. Gandhi (Ret.) on July 20, 2020. As a result of the arms' length fee negotiations, which took into

---

[1] Capitalized terms have the meaning ascribed to them in the Settlement Agreement ("SA"), ECF No. 49-3.

account the substantial value of both the backward-looking relief and forward-looking relief set forth in the Settlement Agreement, as well as the value of Class Counsel's work in this matter, LG agreed to pay Class Counsel $5.5 million plus one-third of the total amount claimed by Settlement Class Members, but excluding the first 16,500 Claims (none of the attorney fee payments will reduce the awards to Settlement Class Members). LG also agreed to reimburse up to $375,000 in litigation expenses that Class Counsel advanced and to pay each Class Representative a service award of $2,000. These amounts are reasonable given the Settlement Agreement before the Court.

As of October 23, 2020, the Settlement Administrator has reported that Settlement Class Members have already submitted over 17,000 claims, mostly through the Settlement Website, www.LGFridgeSettlement.com, and the claim process remains at an early stage, with hundreds of additional claims being filed each day. While Class Counsel will provide the Court with updated information in advance of the Final Approval Hearing, it is already apparent that the Settlement will result in substantial payments to the Settlement Class Members who submit Claims.

The requested fees and expenses conform to Third Circuit precedent and are justified by Class Counsel's work on contingency, over vigorous opposition, to reach an excellent settlement for the Settlement Class Members in this litigation. Thus, as discussed in further detail below, Plaintiffs respectfully request that the Court grant

2

this motion and approve the Settlement's provisions for payment of attorneys' fees, expense reimbursements, and service awards.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   <u>Plaintiffs' Allegations and Preliminary Investigation</u>

Plaintiffs sued to obtain relief for themselves and a class of similarly situated purchasers of LG refrigerators, alleging the refrigerators are defective and that, when they fail, the refrigerators stop cooling their contents. Plaintiffs alleged that LG knew that the linear compressor technology in its refrigerators is defective, as thousands of consumers and LG-authorized repair personnel have reported product failures directly to LG. Before filing Plaintiffs' complaints, Class Counsel investigated the facts and applicable law, including through a detailed analysis of LG's refrigerators and the alleged defect, research into industry practices and related literature and data, and dozens of interviews with LG customers and repair technicians. *See* ECF No. 49-2, Joint Declaration of Daniel C. Girard and Shanon J. Carson in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") ¶¶ 3-4, 22-24.

**The California Action.**  On April 1, 2019, Plaintiffs Gary Sosenko, Diane Terry, and Michael Burrage filed *Sosenko v. LG Electronics U.S.A., Inc.*, No. 8-19-cv-00610-JLS (ADSx) (C.D. Cal.) (*Sosenko*), in the United States District Court for the Central District of California. *Sosenko* Dkt. No. 1. The *Sosenko* Plaintiffs

3

brought claims individually and on behalf of a proposed class of consumers who purchased, in California, LG-manufactured refrigerators equipped with LG's proprietary linear compressors since January 30, 2014. *Id.* ¶ 76. Plaintiffs asserted claims against LG under California consumer protection law. *Id.* ¶¶ 84–145.

On June 12, 2019, LG moved to dismiss *Sosenko*, arguing in part that Plaintiffs failed to plausibly allege a product defect or adequately allege reliance on its omissions, that it had no duty to disclose the alleged defect, that its refrigerators were merchantable, and that Plaintiffs did not meet the MMWA's jurisdictional requirements. *Sosenko*, Dkt. No. 17-1. Plaintiffs opposed the motion (*Sosenko*, Dkt. No. 21) and, on August 29, the California district court largely denied it. *Sosenko*, Dkt. No. 36. The court held in part that "Plaintiffs adequately allege that their refrigerators are defective by virtue of being manufactured with compressors that are prone to failure—and that they did in fact fail." *Id*. The court accordingly found that LG's argument that the refrigerators are merchantable was "undone by the face of the Complaint and common sense." *Id*.

Plaintiffs filed a First Amended Class Action Complaint on September 20, 2019, to which LG answered on October 23, 2019. *Sosenko*, Dkt. Nos. 45, 68.

**The New Jersey Actions, Consolidation, and Coordination.**  On June 7, 2019, Plaintiffs Michael Bentley, Robert Degner, Cheryl Ervin, and Sam Lee filed *Bentley, et al. v. LG Electronics U.S.A., Inc.*, No. 2:19-cv-13554 (D.N.J.) (*Bentley*),

in this Court arising out of the same facts. *Bentley*, Dkt. No. 1. Two other related

class actions against LG were then filed in this District on July 11 and July 25,

2019, respectively: *Stangl, et al. v. LG Electronics U.S.A., Inc.*, No. 2:19-cv-

15185-MCA (D.N.J.), and *Tabora, et al. v. LG Electronics U.S.A., Inc.*, No. 2:19-

cv-15826-MCA (D.N.J.). After this Court entered the parties' stipulation to

consolidate these cases under the *Bentley* caption, Plaintiffs filed a Consolidated

Class Action Complaint on October 21, 2019. *Bentley*, Dkt. Nos. 13, 14, 18.

Plaintiffs brought claims on behalf of a class of purchasers of LG refrigerators

since January 30, 2014, in all states except California, and, for the same period,

state subclasses of consumer purchasers from Florida, Illinois, Massachusetts,

Michigan, Minnesota, New Jersey, New York, Texas, Utah and Washington. *Id.* ¶

166. LG answered in *Bentley* on November 20, 2019. *Bentley*, Dkt. No. 22.

Class Counsel, representing the parties in *Sosenko* and the consolidated

*Bentley* action, agreed in the fall of 2019 to coordinate discovery in the two cases to

avoid duplication of effort, increase efficiency, and minimize expense. Joint Decl. ¶

30. Because *Sosenko* was the first-filed of the LG refrigerator cases, the parties filed

a stipulation to transfer *Bentley* to the Central District of California for consolidation

with *Sosenko*, but on December 9, 2019, the California court denied the stipulation,

noting that *Bentley* "is pending in the district where Defendant's headquarters is

located" and the *Bentley* consolidated complaint "asserts claims under the laws of

ten states other than California on behalf of purchasers in those ten states." *Sosenko*, Dkt. No. 73. The parties therefore proceeded with separate actions while continuing to coordinate discovery efforts. Joint Decl. ¶ 30. After the parties finalized the terms of the Settlement, they stipulated to transfer *Sosenko* to this Court to allow a single court to rule on the fairness of the Settlement. *Sosenko*, Dkt. No. 104. On July 10, 2020, this Court entered an order consolidating the *Sosenko* and *Bentley* actions. *Bentley* Dkt. No. 41.

### B.    Fact and Expert Discovery

In May 2019, Plaintiffs in *Sosenko* served LG with Early Rule 34 Requests for document production under Rule 26(d)(2) as well as a draft stipulated protective order and a draft protocol for the discovery of electronically stored information. Joint Decl. ¶ 6. The *Sosenko* Plaintiffs thereafter served three further sets of document requests, interrogatories, and 20 non-party document subpoenas. *Id.* ¶¶ 7, 14, 16. LG's written discovery responses and document productions were the subject of several disputes among the parties, which resulted in two motions by Plaintiffs to compel production of documents. *Id.* ¶¶ 11, 18. The Court granted those motions. *Sosenko*, Dkt. Nos. 61 & 85. Plaintiffs in *Bentley* also served, and LG responded to, additional document requests and interrogatories. *Id.* ¶ 30.

LG produced more than 28,000 pages of documents, and Plaintiffs issued 20 subpoenas to non-parties that resulted in the production of more documents and data.

Joint Decl. ¶¶ 7, 32. Plaintiffs also deposed LG's Rule 30(b)(6) designee and a former LG employee with knowledge of LG's customer service procedures. *Id.* ¶¶ 15, 20. Plaintiffs retained a mechanical engineer who reviewed the technical basis for the compressor failures, as well as two economists, and a market research expert for purposes of calculating class-wide damages. *Id.* ¶¶ 13, 33.

### C.   Mediation and Settlement

As the litigation proceeded, Plaintiffs simultaneously pursued settlement negotiations with LG. These negotiations spanned a full year. Joint Decl. ¶¶ 31, 34. The parties participated in two in-person mediation sessions overseen by a former Central District of California Magistrate Judge, Hon. Jay Gandhi (Ret.) of JAMS, in August 2019. Following mediation, the parties conferred numerous times over the subsequent months, including at three in-person meetings, and in numerous telephone conferences, often with LG representatives in attendance. *Id*. The parties executed their Settlement Agreement on July 21, 2020, and the First Amendment to the Settlement Agreement, which sets forth the parties' subsequent agreement on fees, expenses, and service awards, on August 14, 2020. *Id*. ¶ 35.

On August 18, 2020, pursuant to stipulation, Plaintiffs filed a First Amended Consolidated Class Action Complaint to consolidate the claims of the *Sosenko* and *Bentley* Plaintiffs in one operative class action complaint and to conform the class definition to the Settlement Class definition. *Bentley*, Dkt. No. 51.

Additionally, Class Counsel issued subpoenas to five additional retailers (bringing the total number of subpoenas issued to retailers to 23), and vigorously pursued additional information sought by the previously issued subpoenas to retailers of the LG Refrigerators. To ensure an adequate notice process for the benefit of the Settlement Class. Class Counsel have also devoted significant time responding to inquiries and assisting hundreds of Settlement Class Members regarding the Settlement, and will continue to do so.

### D.   **Principal Terms of the Settlement**

#### 1.    **Settlement Class Definition**

The Settlement Class that was preliminarily approved by the Court on August 19, 2020 consists of all persons in the United States who purchased from an authorized retailer, other than for resale, a Covered Model of LG Refrigerator produced between January 1, 2014 and December 31, 2017. SA ¶ A.1.bbb. The Covered Models are listed in Exhibit 5 to the Settlement Agreement. *Id.*, Ex. 5. The Covered Models are also listed prominently on the Settlement Website, www.LGFridgeSettlement.com. The Settlement Class is largely co-extensive with the class proposed in the original complaint filed in *Bentley*, except that purchasers of LG refrigerators manufactured after December 31, 2017 (who LG claims are bound by arbitration agreements), and purchasers of Kenmore-branded refrigerators marketed and sold by Sears (now in bankruptcy), are not included in the Settlement

8

Class, and therefore release no claims and preserve all of their rights. Joint Decl. ¶ 37. In addition, purchasers of LG Refrigerator models of which less than 1,000 units were sold or for which the service rate for No-Cooling Events was less than 1% of sales are not included in the Settlement Class and likewise release no claims. Joint Decl. ¶ 37; *see, e.g.*, *McBean v. City of New York*, 228 F.R.D. 487, 496-98 (S.D.N.Y. 2005) (approving settlement-stage certification of narrowed class). Information provided by LG shows that there are approximately 1.55 million members of the Settlement Class provisionally certified by the Court.

### 2. Settlement Consideration

Plaintiffs have already described the settlement consideration in detail (ECF No. 49-1 at 9-15), and a summary is also available at the Settlement Website, www.LGFridgeSettlement.com, and in the Notice of Settlement (also available on the Website at https://www.lgfridgesettlement.com/important-documents.php). For present purposes, therefore, Plaintiffs provide only a general overview of the terms. In sum, the Settlement provides for substantial cash payments to Settlement Class Members who purchased an LG Refrigerator that stopped cooling, resulting in various out-of-pocket costs. The Settlement also provides substantial prospective relief in the form of an extended warranty, enhanced customer care benefits, and payments for No-Cooling Events occurring within the extended warranty period.

There is no cap on the total payments LG will make. The Settlement Class can

receive money to reimburse parts and labor costs as well as property loss (such as spoiled food, beverages, or medicine as a result of the refrigerator having a No-Cooling Event, or related to leaking), and to compensate them for unsuccessful repairs, delayed repairs, and refrigerator replacement costs. Settlement Class Members can choose whether to support their claims with backup documentation or an attestation. Those who make the modest effort to document their claims are eligible for potentially thousands of dollars in recovery based upon their experience, and those without documentation may recover up to $450 simply for filling out the Claim Form (also available at www.LGFridgeSettlement.com).

By way of example, Plaintiffs Sarah Johnson and Leah Scala Israel each experienced repair delays exceeding six weeks, so each of them would receive $1,000 to compensate them for those delays. *Bentley* Compl. ¶¶ 70, 60; SA ¶ A.1.q. Plaintiff Carlos Stocco experienced about one month of repair delays, making him eligible to receive at least $520. *Bentley* Compl. ¶ 94; SA ¶ A.1.q. Because Ms. Johnson and Mr. Stocco experienced an unsuccessful repair, each of them can also recover an additional $180. *Bentley* Compl. ¶¶ 69, 92; SA ¶ A.1.ggg. All three Plaintiffs can also recover up to $250 in undocumented property loss (SA ¶¶ A.1.oo-pp), which means that Ms. Johnson can recover up to $1,430, Ms. Israel up to $1,250, and Mr. Stocco up to $950, as well as reimbursement of their repair costs. Plaintiffs Michael Burrage and Diane Terry each experienced one unsuccessful repair.

*Sosenko* Compl. ¶¶ 23-24, 28-31. Mr. Burrage and Ms. Terry can each therefore recover $180 for the unsuccessful repair and up to $250 in undocumented property loss, for a total of $430. SA ¶ A.1.oo, pp, ggg. Additionally, because the Settlement allows recovery for *documented* property loss ***up to $3,500***, each Plaintiff may recover substantially more if they provide such documentation (SA ¶¶ A.1.oo-pp).

In addition to these generous payments, Settlement Class members will also receive an extended warranty covering the full cost of repairs for cooling failures for five years from the date of purchase. Further, LG has agreed to enhance its warranty service by employing more technicians, developing more reliable replacement parts, and establishing a dedicated team to address cooling failures. LG will also compensate Settlement Class Members for cooling failures and related property loss during the five-year extended warranty period. For three years after the Effective Date, LG will provide a report every six months to Class Counsel confirming and describing its implementation of the Enhanced Customer Care Program, including information about payments to Settlement Class Members who submit claims for monetary relief under the Enhanced Customer Care Program.

### 3.    Release of Liability

In consideration of the Settlement benefits, LG and its related entities and affiliates (defined in the Settlement Agreement as the "Released Parties," SA ¶ 23), will receive an appropriately limited release of claims arising out of or related to the

litigation or the subject matter of the litigation, and which were or could have been asserted in the Litigation. SA ¶ 23. Personal injury claims are excluded; the release is limited to claims arising out of the facts at issue in the litigation. *Id.*; *see Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1561 n.10 (3d Cir. 1994) (enforcing release that "manifest[ed] an intent to settle all disputes that did or might arise out of" the transaction at issue) (citing *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29 (1st Cir. 1991)).

### 4.    Notice and Claim Administration

LG agreed to pay all notice and administration costs. SA ¶ 1.zz. The Court, in granting preliminary approval, approved the parties' proposed Notice Plan and appointed Angeion Group, LLC to serve as the Settlement Administrator. ECF No. 52 ¶¶ 5-10. These costs are substantial. LG has made an initial payment to the Settlement Administrator for notice and administration costs of over $1.9 million.

The Settlement Website, www.LGFridgeSettlement.com, is live and accepting claims. As of the date of this filing, the Settlement Administrator has already received over 17,000 claims and continues to receive claims at a steady and substantial rate. *See* Declaration of Daniel C. Girard ("Girard Decl.") ¶ 13. Class Counsel will update the Court as to notice and claims administration statistics in their final approval briefing.

### 5.    Attorneys' Fees and Costs; Service Awards

The Settlement Agreement provides that LG will separately pay the attorneys' fees and expenses of Class Counsel, without reducing any of the Settlement Payments or other benefits to Settlement Class Members, and subject to the approval of the Court. SA ¶ 29. Absent an agreement, the Settlement Agreement provided that Class Counsel would move the Court for an award of attorneys' fees and costs, and LG would retain its right to oppose the motion. *Id*.

The parties deferred discussion of attorneys' fees until after they had signed the Settlement Agreement. Joint Decl. ¶ 52. On July 20, 2020, the parties appeared again before Judge Gandhi in a mediation focusing on the matter of attorneys' fees, expenses, and service awards, and continued their negotiations in the subsequent weeks. *Id*.

Following the additional mediation session and further negotiations, the parties reached an agreement and executed a corresponding amendment to the Settlement Agreement on August 14, 2020. *See* First Amendment to Settlement Agreement, ECF No. 49-3 at pp. 48-53 of 116. The parties agreed that LG will pay Class Counsel attorneys' fees of $5.5 million plus one-third of the amount claimed by Settlement Class Members, excluding the first 16,500 Claims. *Id*. In other words, if there are fewer than 16,500 Claims, Class Counsel's fee will be limited to $5.5 million. On the other hand, "if, as an illustration, there are 20,000 Claims, then Class

Counsel's total fee will include the Base Fee of $5.5 million plus an Additional Fee of one-third of the amount claimed by Eligible Claimants 16,501 through 20,000, which will be paid by LG without reducing the amounts paid to any Settlement." *Id*.

Under this amendment to the Settlement Agreement, LG further agreed, subject to Court approval, to reimburse Class Counsel's "reasonable, actually incurred costs in full up to $375,000[.]" *Id*. To date, Class Counsel have incurred approximately $306,847.64 in such necessary and reasonable expenses in furtherance of the prosecution and settlement of this litigation, with a substantial part of these expenses having been advanced for expert witnesses and consultants. Girard Decl. ¶¶ 17-18, Carson Decl. ¶¶ 22-23, Declaration of Benjamin F. Johns ("Johns Decl.") ¶¶ 10-11. Class Counsel will provide an update on any additional expenses at the final approval stage.

The parties also agreed, subject to Court approval, to modest service awards of $2,000 to each of the Class Representatives in the consolidated action. First Amendment to Settlement Agreement, ECF No. 49-3 at p. 50 of 116.

## III.   ARGUMENT

### A.   <u>The Parties' Agreement on Attorneys' Fees Merits Approval Under Third Circuit Law.</u>

The Court has discretion to award a reasonable fee to counsel in a class action, *see* Fed. R. Civ. P. 23(h), and counsel who have created benefits for a class may seek an award of attorneys' fees and reimbursement of litigation expenses. *See, e.g.*,

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In this case, by negotiating the fee at arm's length, the parties followed the Supreme Court's admonition that "[i]deally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see In re Cigna Corp. Secs. Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who . . . served as mediator."). Class Counsel respectfully submit that the agreed fee here is reasonable given their efforts in bringing about a favorable result for the Settlement Class and the risks they assumed in handling these complex matters on a fully contingent basis.

To determine whether attorneys' fees are reasonable, the Court may apply the lodestar method, the percentage-of-recovery method, or a combination of the two. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329-30 (3d Cir. 2011); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The parties here have agreed to a hybrid approach, and the Court should similarly evaluate the proposed fee. The "Base Fee" will compensate Class Counsel for their lodestar and perhaps return a modest multiplier, although there remains substantial work ahead to secure settlement approval, monitor settlement administration, and assist Settlement Class Members in filing their claims. Any "Additional Fee" will be a function of the success of the claims procedure. Compensating Class Counsel in relation to the value of claims

15

made in excess of the first 16,500 claims ensures that any significant premium that Class Counsel receive on their time will be attributable solely to the value actually delivered to the Settlement Class.

A lodestar "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. As a result, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. Further, "[b]ecause the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation . . . an adequate fee irrespective of the monetary value of the final relief achieved for the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

In this case, the award of the Base Fee under the lodestar method will fairly compensate Class Counsel for their work in securing the Settlement and giving every member of the Class the right to all the benefits available under its terms. Any Additional Fee will be justified under the percentage-of-recovery method as it will depend on the total number of claims above the first 16,500 Claims. Without affecting the benefits to the Class, the one-third fee percentage for the Additional Fee ensures Class Counsel's interest in maximizing the number of Claims made. *See* 4 Newberg on Class Actions § 12:18 (5th ed.). In sum, fees in excess of the Base

Fee will be directly proportionate to the cash benefits provided to the Class.

**1.    The Lodestar-Multiplier Method Demonstrates That The Base Fee Is Reasonable.**

The lodestar of the three law firms that led the prosecution of these cases —

Girard Sharp LLP, Berger Montague PC, and Chimicles Schwartz Kriner &

Donaldson-Smith LLP, is currently $3,966,947.75. Girard Decl. ¶ 11, Carson Decl.

¶ 12, Johns Decl. ¶ 5. The multiplier in relation to the Base Fee is therefore 1.39.

This figure will decrease with the passage of time between today and the conclusion

of this case, as Class Counsel will perform additional supervisory and monitoring

work and will continue to advise Settlement Class Members and Claimants during

the years in which the Settlement relief will be available. Girard Decl. ¶ 12, Carson

Decl. ¶ 18. Pursuant to the forward-looking provisions of the Settlement Agreement,

Class Counsel expect to continue to assist Class members and monitor compliance

for the next three years. SA ¶ C.6.c. (Every six months for a period of three years

following Effective Date, LG to provide Class Counsel with a report describing

implementation of the Enhanced Customer Care Program, including the information

regarding Enhanced Customer Care Payments claimed and paid.)

Furthermore, Class Counsel have been active and engaged in the notice and

administration of the Settlement, including by issuing subpoenas to 23 retailers of

LG Refrigerators and following up with them and negotiating to obtain contact

information for potential Settlement Class Members, so that those individuals can

17

receive direct notice of the Settlement. Class Counsel will provide their updated lodestar to the Court with their final approval briefing.

The current lodestar already sufficiently confirms the reasonableness of the fee agreed on by the parties. In the Third Circuit, courts routinely permit multipliers of up to 4.0. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998); *Demmick v. Cellco P'ship,* No. CV 06-2163 (JLL), 2015 WL 13646311, at *1, *5 (D.N.J. May 1, 2015) (3.97 multiplier); *Harshbarger v. Penn Mut. Life Ins. Co.*, No. CV 12-6172, 2017 WL 6525783, at *6 (E.D. Pa. Dec. 20, 2017) (3.67 multiplier found reasonable in light of contingent nature of litigation, minimal objections, and significant recovery); *Merino v. Wells Fargo & Co.*, No. 16-cv-07840, ECF Nos. 137-1, 144 (D.N.J. Jan. 15, 2020) (3.66 multiplier on the undersigned class counsel's (Berger Montague PC) lodestar); *Schuler v. Medicines Co.*, No. 14-1149 (CCC), 2016 WL 3457218, at *10 (D.N.J. June 23, 2016) (awarding 3.57 multiplier as reasonable under Third Circuit precedent).[2]

---

[2] *See also Frederick v. Range Res.-Appalachia, LLC*, No. C.A. 08-288 ERIE, 2011 WL 1045665, at *13 (W.D. Pa. Mar. 17, 2011) (settlement consisting of initial cash payment and future relief valued at $20.3 million resulted in fee award of $4.6 million, equal to 5.95 multiplier); *Flores v. Express Servs., Inc*., No. CV 14-3298, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 30, 2017) (4.6 multiplier found reasonable); *Holbert v. Waste Mgmt., Inc.*, No. 18-cv-02649 (E.D. Pa. Aug. 7, 2019), ECF No. 52 (approving attorneys' fees for the undersigned counsel (Berger Montague PC) representing a multiplier of over 4.5); *Demaria v. Horizon Healthcare Servs., Inc.*,

### 2.  The Additional Fee Is Reasonable Under the Percentage Method.

Under the parties' agreement, Class Counsel will receive one-third of the value of any amounts claimed by Settlement Class Members after the first 16,500 Claims. *See* First Amendment to Settlement Agreement, ECF No. 49-3 at pp. 49-50 of 116. Even though there are approximately 1.55 million Settlement Class Members, the number of reported No-Cooling Events is much lower; and, as is customary in class actions, not all Settlement Class Members who experienced a No-Cooling Event will file a claim, a choice over which Class Counsel have no control. *See, e.g.*, *In re New Motor Vehicles Canadian Export Antitrust Litig.*, No. MDL 1532, 2011 WL 1398485, at *3 (D. Me. April 13, 2011) (finding a 3.9% response rate from the class favorable); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (recognizing that the claims rate in class settlements is frequently 5% or less). Thus, if there are tens of thousands of Claims in excess of the 16,500 cutoff, Class Counsel will have delivered an outstanding result for which they should be paid under traditional percentage-of-recovery principles.

The one-third fee percentage for the Additional Fee conforms to the typical

---

No. 2:11-CV-07298 (WJM), 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) (awarding fees equal to a 4.3 multiplier, which the court found "not unreasonable" and "consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve success.").

percentage reserved for attorneys' fees in contingency representation agreements. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring) (noting that "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers."); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) ("If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery."); *see also* Peter Robinson, *An Empirical Study of Settlement Conference Nuts and Bolts: Settlement Judges Facilitating Communication, Compromise and Fear*, 17 Harv. Negot. L. Rev. 97, 112 (2012) ("In many instances, the attorney's fee would be 33% of a settlement, but 40% if it goes to trial.").

Moreover, the one-third percentage for the Additional Fee does not include the value of the Settlement attributable to the non-monetary relief it provides. As this Court recognized in granting preliminary approval, "[i]n addition to substantial monetary consideration, the Settlement provides the Class with valuable prospective relief in the form of warranty extensions and modification to LG's customer service protocols and procedures." ECF No. 52 ¶ 3. Where a settlement provides class members with valuable warranty extensions, that relief typically factors into the determination of a reasonable attorneys' fee. *See In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1008, 1014 (E.D. Wis. 2010) ("find[ing] that $45.7 million is a reasonable estimate of the value of

warranty relief" and "with a [total] settlement value of $110.7 million, . . . the applicable fee percentage should be 25%, with a resulting fee of $27,675,000."); Fed. R. Civ. P. 23(h) advisory committee's notes (2003) (advising that "it is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award.") (citation omitted).[3]

### 3. The *Gunter* Factors Support Class Counsel's Fee Request.

The propriety of the requested fee based on a hybrid lodestar / percentage-of-fund approach gains further support from a broader consideration of the litigation and the Settlement. In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000), the Third Circuit set out a number of factors to consider in evaluating fee applications in class actions, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

These factors <u>all</u> support the fee requested by Class Counsel in this case.

### a. Size of Fund and Number of Persons Benefited

---

[3] *See also Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *5 (W.D. Wash. Apr. 24, 2008); *Vaughn v. American Honda Motor Co.*, 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 305 (E.D. Pa. 2003).

21

The uncapped monetary relief under the Settlement is available to over 1.55 million Americans who purchased the allegedly defective LG Refrigerators. In contrast to the risks, uncertainty, expense, and delay associated with nationwide consumer class action litigation, the proposed Settlement provides certain, timely, and very substantial relief, including both backward-looking and forward-looking relief, to the Settlement Class. By completing the Claim Form with an attestation or by submitting records, Settlement Class Members can receive cash payments for ineffective or delayed repairs, labor and replacement parts, property loss, or refrigerator replacement.[4] *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement . . . Class Counsel have avoided significant expense and delay and have also provided an immediate

---

[4] The payment structure under the Settlement provides compensation that is commensurate with the type and extent of harm surrounding LG Refrigerator failures. Settlement Class Members are eligible to receive: (1) payments of up to $450 for claimants without supporting documentation, simply by filling out the Claim Form; or (2) payments for documented claims consisting of: (a) up to $1,000 for unsuccessful repairs ($180 for two No-Cooling Events; $500 for three No-Cooling Events; and $1,000 for four or more No-Cooling Events); (b) up to $1,000 for delayed repairs of at least ten days, which start at $120 and increase with each additional day of delay; (c) reimbursement of labor repair costs; (d) up to $3,500 for property loss (including the value of spoiled food, beverages, medicine, perishables, or the value of other property that was damaged from a No-Cooling Event); (e) $650 for Class members who replaced or disposed of their refrigerator after a failed repair attempt (in lieu of the payments identified in (a)–(c) above); and (3) reimbursement of parts repair costs. *See In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019*)* (noting that more reimbursement for class members who sought more repairs is equitable because "the number of repair attempts serves as a proxy for the seriousness of [the] defects").

22

benefit"). Moreover, the entire Settlement Class benefits by virtue of the valuable prospective relief secured by the Settlement, which includes an extended warranty and the Enhanced Customer Care benefits. The requested fee will not diminish or affect any of these benefits. As such, this factor strongly supports the parties' agreement regarding attorneys' fees.

### b.   Absence of Objections

Out of the approximately 1.55 million Settlement Class Members, there are no valid objections. Class Counsel received an email sent by one individual who has been flagged as a "professional objector" by several federal judges. The emailed objection lacks any indication this individual is a class member and otherwise fails to comply with the Court's preliminary approval order. Class Counsel will address this and any other objections that are submitted by the Objection and Opt-Out Deadline at one time, in their memorandum of law in support of their Motion for Final Approval of Class Action Settlement. At this stage, the absence of valid objections supports the requested fee.

### c.   Skill and Efficiency of Class Counsel

Class Counsel have diligently and efficiently prosecuted Plaintiffs' claims and have invested the necessary time and costs to properly investigate and pursue the class claims and position them for settlement. Joint Decl. ¶¶ 4, 6-30. Class Counsel's work has included investigating the cause of the cooling failures; drafting the

complaints; successfully opposing a motion to dismiss; propounding written discovery requests; engaging in written discovery and depositions; and briefing, arguing, and prevailing on motions to compel discovery. On a separate track, Class Counsel also engaged in protracted ADR and settlement negotiations with LG, which included several mediation sessions and numerous meetings, and ultimately achieved a very favorable result against highly skilled defense counsel. *See*, *e.g.*, *McCoy v. HealthNet, Inc*., 569 F. Supp. 2d 448, 476 (D.N.J. 2008) (citing "the performance and quality of opposing counsel" as a factor in evaluating the quality of class counsel's work). Accordingly, this factor supports the requested fee.

### d.    Complexity and Duration of the Litigation

This factor also counsels in favor of awarding the requested fee. The settlement resolves litigation that proceeded in two jurisdictions on both sides of the country. *Sosenko* was filed on April 1, 2019 and involved complex claims and defenses involving numerous consumer fraud and warranty laws. Joint Decl. ¶¶ 3-5. The facts were also highly complex, implicating hundreds of thousands of durable goods, many different product models, and extensive distribution and repair networks. *Id*. ¶¶ 4, 33. In prosecuting the actions, Class Counsel reviewed and analyzed voluminous documents produced by LG and over two dozen subpoenaed non-parties; took and defended depositions; and retained and worked with expert witnesses and consultants. *Id*. ¶¶ 32-33. The Settlement is the product of negotiations

that occurred over a twelve-month period. *Id*. ¶¶ 31, 34-35.

### e.    Risk of Non-Payment

Class Counsel handled these matters on a fully contingent basis and at all times faced a considerable risk of receiving no payment at all. Even so, counsel "paid out [hundreds of thousands] of their own dollars in expenses so they could depose witnesses, obtain experts, and pay for other litigation costs." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 253 (D.N.J. 2005). This factor further supports Class Counsel's fee request.

### f.    Amount of Time Devoted by Counsel

As reflected in the accompanying declarations, Class Counsel devoted a significant amount of time to these cases, including 7,667.7 hours to date. Adequately representing the Class required no less of a commitment, particularly given the procedural history of these matters, their nationwide scope, and the high stakes. Hence, once again, this *Gunter* factor weighs heavily in favor of approval.

### g.    Awards in Similar Cases

As discussed above, the Base Fee is justified by Class Counsel's existing lodestar, and the Additional Fee based upon the claim rate also "is appropriate and comfortably within the range of fees typically awarded." *Yedlowski v. Roka Bioscience, Inc*., No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016) (awarding 30% fee and recognizing that fee awards in this Circuit have ranged from 19% to 45%).

In *In Re Rite Aid Corp. Securities Litig.*, the Third Circuit found no abuse of discretion in a district court's reliance on three studies finding that the average awards in various types of class action settlements were 31%, 27-30%, and 25-30%, respectively. 396 F.3d 294, 303 (3d Cir. 2005); *see also Sullivan*, 667 F.3d at 333 (noting those same studies and citing *Rite Aid*). The percentage for the Additional Fee in this case is in keeping with awards in similar cases. *See, e.g.*, *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 713 (W.D. Pa. 2015) (awarding 25.6% of constructive common fund in attorneys' fees).

Thus, as applied and demonstrated here, each of the *Gunter* factors shows that Class Counsel's requested fee is reasonable.

### 4. The Discretionary *Prudential* Factors Support the Fee Request.

In another of its leading class action cases, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338-40 (3d Cir. 1998), the Third Circuit identified three other considerations that *may* bear on the reasonableness of a fee award. Those factors are "(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any 'innovative' terms of settlement." *AT&T*, 455 F.3d at 165 (quoting *Prudential*, 148 F.3d at 338-40)

26

(citations omitted). Like the *Gunter* criteria, each of the *Prudential* factors strongly supports approval of the requested fee here.

### a. The Settlement Benefits Resulted Solely From Class Counsel's Efforts.

No government agency sued LG over the conduct or products at issue in this litigation. Nor has there been any governmental investigation, to Class Counsel's knowledge. All Settlement benefits have resulted solely from the efforts of Class Counsel in the *Bentley* and *Sosenko* cases. The first *Prudential* factor therefore supports the fee request.

### b. The Percentage Fee Is Less Than the Fee That Would Have Been Negotiated in the Private Market.

Private contingent fee agreements routinely provide for percentage fees of at least 30%, and typically one-third and ranging up to 40%. *See Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (approving private contingent fee agreement for 40% in civil rights case); *Ocean Power*, 2016 WL 6778218, at *29 ("If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery."). Thus, as noted above, the one-third percentage associated with the Additional Fee resembles and is modeled upon fee provisions negotiated in the private marketplace for legal services. In fact, the true percentage here is significantly lower, as the one-third percentage provided for in the parties' Settlement Agreement regarding the Additional Fee will not reduce the Settlement

Payments previously agreed to for the Settlement Class Members (before the fee was negotiated), and, in addition, does not account for the substantial value of the non-monetary relief and forward-looking benefits provided under the Settlement.

Therefore, this factor also supports the requested fee.

### c.   The Settlement Includes Innovative Terms.

The Settlement Agreement contains innovative and creative terms that will benefit the Settlement Class, such that this factor supports approving the requested fee. Specifically, in addition to the fee provision that gives Class Counsel an incentive to promote the filing of claims by Settlement Class Members, already discussed above, the Settlement's provisions regarding the Enhanced Customer Care Program should provide a model for resolutions of future cases brought by consumers for allegedly deficient customer service. LG has agreed, for instance, not only to increase the number of its service technicians, but also to develop a new mobile service application to improve the accuracy of diagnoses of refrigerator problems in the field. SA ¶ A.1.u.

Accordingly, all three of the discretionary *Prudential* factors lend further support to approval of Class Counsel's requested fee.

### B.   The Court Should Approve the Requested Reimbursement of Litigation Expenses.

Class Counsel also request reimbursement of their out-of-pocket litigation expenses up to $375,000. At this time, Class Counsel have already incurred expenses

of $306,847.64 reasonably advanced while investigating and prosecuting this litigation. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Careccio v. BMW of N. Am. LLC*, No. CIV. A. 08-2619, 2010 WL 1752347, at *7, (D.N.J. April 29, 2010) (quoting *In re Safety Components Int'l Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001)).

The attached declarations of Class Counsel provide documentation of the current out-of-pocket expenses, summarized by category. *See Ocean Power*, 2016 WL 6778218, at *29 (approving class counsel's expenses where they were "summarized by category" and were "the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund"). The Court should approve reimbursement of these expenses, which were necessary to the litigation and settlement of these vigorously contested cases. Girard Decl. ¶¶ 17-18, Carson Decl. ¶¶ 21-23, Johns Decl. ¶¶ 10-11.

C.    **The Court Should Approve the Requested Service Awards for the Class Representatives.**

Finally, the Settlement Agreement permits the Class Representatives in the *Bentley* and *Sosenko* matters to apply for service awards of $2,000 each. "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws."

29

*Benelli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 111 (D.N.J. 2018) (quoting *Sullivan*, 667 F.3d at 333 n.65). Courts in this District have approved service awards of $10,000 or more. *See, e.g.*, *Talone v. American Osteopathic Ass'n*, No. 1:16-CV-04644-NLH-JS, 2018 WL 6318371, at *17 (D.N.J. Dec. 3, 2018) ($15,000 to each plaintiff); *Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *22-23 (D.N.J. April 8, 2011) ($10,000 to each plaintiff, payable from common fund).

The amounts requested for Class representatives here are relatively modest, even though these Plaintiffs made significant contributions to the litigation and the Settlement, including by retaining counsel, assisting in preparing the complaints, and gathering records. Girard Decl. ¶ 19, Carson Decl. 25. Thus, the $2,000 service awards requested are reasonable and merit approval. *See Varacallo*, 226 F.R.D. at 257 (awarding $10,000 to plaintiffs who had produced documents and been deposed, and $1,000 and $3,000, respectively, to plaintiffs who played lesser roles but who were still "necessary in obtaining this Settlement").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for attorneys' fees, reimbursement of expenses, and service awards in accordance with the Settlement Agreement.

Dated: October 23, 2020                    Respectfully submitted,

                                                          *s/ Amey J. Park*
                                                          Shanon J. Carson (*pro hac vice*)

30

Lawrence Deutsch (NJ 034971986)
Jacob M. Polakoff (NJ 035832006)
Amey J. Park (NJ 070422014)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:   (215) 875-3000
Fax:   (215) 875-4604
scarson@bm.net
ldeutsch@bm.net
jpolakoff@bm.net
apark@bm.net

Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Adam E. Polk (*pro hac vice*)
Simon S. Grille (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

Benjamin F. Johns (NJ 038182005)
Samantha E. Holbrook (NJ 034162011)
**CHIMICLES SCHWARTZ KRINER &**
  **DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
bfj@chimicles.com
seh@chimicles.com

*Counsel for Plaintiffs and the Settlement
Class*