# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL BENTLEY, *et al.*, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>                Defendant. | Case No. 2:19-cv-13554-MCA-MAH (consolidated with Case Nos. 2:19-cv-15185-MCA-MAH, 2:19-cv-15826-MCA-MAH, and 2:20-cv-07652-MCA-MAH) |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

**GIRARD SHARP LLP**
Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Adam E. Polk (*pro hac vice*)
Simon S. Grille (*pro hac vice*)
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

**BERGER MONTAGUE PC**
Shanon J. Carson (*pro hac vice*)
Lawrence Deutsch (NJ 034971986)
Jacob M. Polakoff (NJ 035832006)
Amey J. Park (NJ 070422014)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
ldeutsch@bm.net
jpolakoff@bm.net
apark@bm.net

***Counsel for Plaintiffs***

**[Additional Counsel on Signature Page]**

753377.1

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ......................................................................................1

II.    SUMMARY OF FACTS AND PROCEDURAL HISTORY ...........................3

    A.  The California Action (*Sosenko*) ......................................................3

    B.  The Consolidated New Jersey Action (*Bentley*)...........................4

    C.  Fact and Expert Discovery...............................................................6

    D.  Mediation and Settlement .................................................................7

    E.  Material Settlement Terms.................................................................8

       1.  Settlement Class Definition....................................................8

       2.  Settlement Consideration .......................................................9

       3.  Release of Liability ...............................................................11

       4.  Notice and Claim Administration ........................................11

       5.  Attorneys' Fees and Costs; Service Awards ...........................13

III.    ARGUMENT .........................................................................................14

    A.  The Court Should Finally Approve The Settlement As Fair, Reasonable, And Adequate. .........................................................................................14

    B.  The Two Objections Should Be Overruled. .................................22

C.    The Court Should Certify The Settlement Class. ........................................26

    1.    Numerosity Under Rule 23(a)(1). ...........................................................27

    2.    Commonality Under Rule 23(a)(2). .........................................................27

    3.    Typicality Under Rule 23(a)(3)................................................................28

    4.    Adequacy of Representation Under Rule 23(a)(4). .................................29

    5.    Predominance and Superiority Under Rule 23(b)(3). .............................30

IV.    CONCLUSION ............................................................................................32

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*Alin v. Honda Motor Co.*,
   No. CIV.A. 08-4825 KSH, 2012 WL 8751045 (D.N.J. Apr. 13, 2012)..............27

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................30

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994).......................................................................27

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006)....................................................................29

*Beneli v. BCA Fin. Servs., Inc.*,
   324 F.R.D. 89 (D.N.J. 2018)........................................................... 15, 22

*Butler v. Porsche Cars N. Am.*,
   2017 WL 1398316 (N.D. Cal. Apr. 19, 2017)....................................18

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ..............................................................20

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010).................................................................14

*Feder v. Elec. Data Systems Corp.*,
   248 F. App'x 579 (5th Cir. 2007) .......................................................25

*Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   No. 2:13-CV-6272-MCA-MAH, 2016 WL 7209649 (D.N.J. Oct. 13, 2016).....14

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975).................................................................16

*Grimes v. Vitalink Commc'ns Corp.*,

    17 F.3d 1553 (3d Cir. 1994)...............................................................................11

*Haag v. Hyundai Motor Am.*,

    No. 12-CV-6521L, 2019 WL 1029002 (W.D.N.Y. Mar. 5, 2019).....................18

*Haas v. Burlington Cty.*,

    Civil No. 08-1102 (NLH/JS), 2019 WL 413530 (D.N.J. Jan. 31, 2019)............21

*Henderson v. Volvo Cars of N. Am., LLC*, No.,

    CIV.A. 09-4146 CCC, 2013 WL 1192479 (D.N.J. Mar. 22, 2013) ...................31

*Hovsons, Inc. v. Secretary of Interior*,

    711 F.2d 1208 (3d Cir. 1983)..............................................................................26

*In re Cendant Corp. Litig.*,

    264 F.3d 201 (3d Cir. 2001)................................................................................15

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,

    269 F.R.D. 468 (E.D. Pa. 2010)..........................................................................28

*In re Cigna Corp. Secs. Litig.*,

    No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) .................................15

*In re Cmty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg.*

    *Loan Litig.*,

    622 F.3d 275 (3d Cir. 2010)...............................................................................29

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

    No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...........25

*In re Ins. Brokerage Antitrust Litig.*,

    282 F.R.D. 92 (D.N.J. 2012)...................................................................... 18, 28

*In re Ins. Brokerage Antitrust Litig.,*

    579 F.3d 241 (3d Cir. 2009)................................................................................31

*In re MyFord Touch Consumer Litig.*,

    No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ...........21

iv

*In re National Football League Players Concussion Injury Litig.*,

    821 F.3d 410 (3d Cir. 2016)...................................................................... 14, 17, 28

*In re Philips/Magnavox Television Litig.*,

    No. CIV.A. 09-3072 CCC, 2012 WL 1677244 (D.N.J. May 14, 2012)....... 19, 29

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,

    148 F.3d 283 (3d Cir. 1998)...................................................................22

*In re Warfarin Sodium Antitrust Litig.*,

    391 F.3d 516 (3d Cir. 2004)....................................................................15

*Marchese v. Cablevision Sys. Corp.*,

    No. CV-102190-MCA, 2016 WL 7228739 (D.N.J. Mar. 9, 2016) ....................26

*McBean v. City of New York*,

    228 F.R.D. 487 (S.D.N.Y. 2005) ..........................................................8

*McCoy v. HealthNet, Inc.*,

    569 F. Supp. 2d 448 (D.N.J. 2008) .......................................................21

*McGee v. Cont'l Tire N. Am., Inc.*, No. CIV. 06-6234 (GEB),

    2009 WL 539893 (D.N.J. Mar. 4, 2009)................................................29

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

    259 F.3d 154 (3d Cir. 2001)....................................................................28

No. 3:11-CV-03082-LB,

    2016 WL 631880 (N.D. Cal. Feb. 17, 2016) .......................................25

*Nottingham Partners v. Trans-Lux Corp.*,

    925 F.2d 29 (1st Cir. 1991).................................................................. 11, 13, 14

*O'Brien v. Brain Research Labs, LLC*,

    No. CIV.A. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ..........................31

*Reyes v. Netdeposit, LLC*,

    802 F.3d 469 (3d Cir. 2015).................................................................30

*Rodman v. Safeway Inc.*,

    No. 11-CV-03003-JST, 2018 WL 4030558 n.6 (N.D. Cal. Aug. 23, 2018) .......24

*Shapiro v. All. MMA, Inc.*,

    No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ......15

*Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW,

    2016 WL 70817 (D.N.J. Jan. 6, 2016)................................................................28

*Sullivan v. DB Invs., Inc.*,

    667 F.3d 273 (3d Cir. 2011)...............................................................................19

*Udeen v. Subaru of Am., Inc.*,

    No. CV 18-17334 (RBK/JS), 2019 WL 4894568

    (D.N.J. Oct. 4, 2019)........................................................................ 15, 19, 27

*Varacallo v. Mass. Mut. Life Ins. Co.*,

    226 F.R.D. 207 (D.N.J. 2005)............................................................................30

*Warth v. Seldin*,

    422 U.S. 490 (1975)...........................................................................................26

*Yaeger v. Subaru of Am., Inc.*,

    114CV4490JBSKMW, 2016 WL 4541861 (D.N.J. Aug. 31, 2016)...................19

## Rules

Federal Rule of Civil Procedure 23 ................................................................ *passim*

## Other Authorities

*Newberg on Class Actions* § 13:22 (5th ed. 2014) ..................................................25

## I.  __INTRODUCTION__

Plaintiffs respectfully ask this Court to grant final approval of the parties'
Settlement[1] that will provide substantial cash payments and other relief to consumers
across the nation whose LG Refrigerators stopped cooling because of an alleged
design defect. The Court granted preliminary approval and authorized notice to the
Settlement Class on August 19, 2020. The Settlement Administrator has mailed the
Notice to approximately 1,250,000 potential Settlement Class Members, e-mailed it
to approximately 978,000 potential Settlement Class Members, and implemented a
robust Notice Plan that included press releases, publication notice, and a digital and
social media campaign. By their actions, the Settlement Class Members have
resoundingly voted in favor of the Settlement. Over 43,000 Settlement Class
Members have already submitted Claims—the great majority through the easy-to-
use Settlement Website, http://www.LGFridgeSettlement.com—and the Class
Members still have until February 5, 2021 to submit Claims, with hundreds still
being submitted each week. To date, only 44 of the approximately 1.55 million
members of the Settlement Class have requested exclusion, and only two have
objected. Those objections lack merit and should be overruled for the reasons
discussed in Section III.B below.

---

[1] Capitalized terms have the meaning as defined in the Settlement Agreement
("SA"), ECF No. 49-3.

1

The Claimants will receive substantial cash payments to reimburse parts and labor costs as well as property loss (such as spoiled food or medicine), and to compensate them for unsuccessful repairs, delayed repairs, and refrigerator replacement costs. Claimants who make the modest effort to document their claims are eligible for thousands of dollars in recovery depending on their circumstances, and those without documentation may still recover up to $450 with a simple attestation on their Claim Form. There is no cap on the amount of money that LG will pay to the Settlement Class. Class Counsel separately moved for attorneys' fees, reimbursement of litigation expenses, and service awards for the Class Representatives (ECF Nos. 56-59), and any such awards will not reduce the cash recoveries for the Class Members.

The Settlement Class Members also will receive an extended warranty covering the full cost of repairs for cooling failures for five years from the date of purchase. LG will compensate Class Members for such repairs, as well as related property loss, incurred during the five-year extended warranty period. LG has also agreed to improve its warranty service by employing more technicians, developing more reliable replacement parts, and creating a dedicated team to address cooling failures. The Settlement is the product of a full year of negotiations that were informed by substantial discovery and which included two mediations before a respected mediator. The Settlement is a win for the Class and should be finally

approved under established Third Circuit law. Plaintiffs therefore respectfully request that the Court enter the proposed Final Approval Order and Judgment submitted herewith.

## II.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

Plaintiffs brought claims on behalf of a class of similarly situated purchasers of LG Refrigerators, which Plaintiffs alleged are defective and prone to experience cooling failures. Plaintiffs also alleged that LG was aware of the defect, as thousands of consumers and LG-authorized repair technicians have reported product failures to LG. Before filing Plaintiffs' complaints, Class Counsel investigated the facts and applicable law concerning the LG Refrigerators and the alleged linear compressor defect, including through "tear-downs" of LG refrigerators, detailed technical analysis, research into industry practices, and dozens of interviews with LG customers and repair technicians. *See* ECF No. 49-2, Joint Declaration of Daniel C. Girard and Shanon J. Carson in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") ¶¶ 3-4, 22-24 (which is incorporated here by reference).

### A.    The California Action (*Sosenko*)

On April 1, 2019, Plaintiffs Gary Sosenko, Diane Terry, and Michael Burrage filed *Sosenko v. LG Electronics U.S.A., Inc.*, No. 8-19-cv-00610-JLS (ADSx) (C.D. Cal.) (*Sosenko*), in the United States District Court for the Central District of

California. *Sosenko*, Dkt. No. 1. The *Sosenko* Plaintiffs brought claims individually and on behalf of a proposed class of consumers who purchased, in California, LG-manufactured refrigerators equipped with LG's proprietary linear compressors since January 30, 2014. *Id.* ¶ 76. Plaintiffs asserted claims against LG under California consumer protection law. *Id.* ¶¶ 84-145.

On June 12, 2019, LG moved to dismiss *Sosenko*. *Sosenko*, Dkt. No. 17-1. Plaintiffs opposed the motion (*Sosenko*, Dkt. No. 21) and, on August 29, the California district court largely denied it. *Sosenko*, Dkt. No. 36. The court held in part that "Plaintiffs adequately allege that their refrigerators are defective by virtue of being manufactured with compressors that are prone to failure—and that they did in fact fail." *Id*. The court found that LG's argument that the refrigerators are merchantable was "undone by the face of the Complaint and common sense." *Id*.

Plaintiffs filed a First Amended Class Action Complaint on September 20, 2019, to which LG answered on October 23, 2019. *Sosenko*, Dkt. Nos. 45, 68.

## B.    The Consolidated New Jersey Action (*Bentley*)

On June 7, 2019, Plaintiffs Michael Bentley, Robert Degner, Cheryl Ervin, and Sam Lee filed *Bentley, et al. v. LG Electronics U.S.A., Inc.*, No. 2:19-cv-13554 (D.N.J.) (*Bentley*), in this Court arising out of the same facts. *Bentley*, Dkt. No. 1. Two other related class actions against LG were then filed in this District on July 11 and July 25, 2019, respectively: *Stangl, et al. v. LG Electronics U.S.A., Inc.*, No.

4

2:19-cv-15185-MCA (D.N.J.), and *Tabora, et al. v. LG Electronics U.S.A., Inc.*, No. 2:19-cv-15826-MCA (D.N.J.). The Court entered the parties' stipulation to consolidate these cases under the *Bentley* caption, and Plaintiffs filed a Consolidated Class Action Complaint. *Bentley*, Dkt. Nos. 13, 14, 18. Plaintiffs brought claims on behalf of a class of purchasers of LG refrigerators since January 30, 2014, in all states except California, and, for the same period, state subclasses of consumer purchasers from ten states. *Id.* ¶ 166. LG answered in *Bentley* on November 20, 2019. *Bentley*, Dkt. No. 22.

Class Counsel, representing Plaintiffs in both *Sosenko* and *Bentley*, agreed in the Fall of 2019 to coordinate discovery to avoid duplication of effort, increase efficiency, and minimize expense. Joint Decl. ¶ 30. Because *Sosenko* was the first-filed of the LG refrigerator cases, the parties filed a stipulation to transfer *Bentley* to the Central District of California for consolidation with *Sosenko*, but on December 9, 2019, the California court denied the stipulation, stating that *Bentley* "is pending in the district where Defendant's headquarters is located" and the *Bentley* consolidated complaint "asserts claims under the laws of ten states other than California on behalf of purchasers in those ten states." *Sosenko*, Dkt. No. 73. The parties accordingly proceeded with separate actions while continuing to coordinate discovery efforts. Joint Decl. ¶ 30. After the parties finalized the terms of the Settlement, they stipulated to transfer *Sosenko* to this Court to allow a single court

to rule on the fairness of the Settlement. *Sosenko*, Dkt. No. 104. On July 10, 2020, this Court consolidated *Sosenko* with *Bentley*. *Bentley*, Dkt. No. 41.

### C.   Fact and Expert Discovery

In May 2019, Plaintiffs in *Sosenko* served LG with Early Rule 34 Requests for document production under Rule 26(d)(2) as well as draft stipulated protective and ESI orders. Joint Decl. ¶ 6. The *Sosenko* Plaintiffs subsequently served LG with three further sets of document requests and interrogatories, and 20 subpoenas *duces tecum* to non-parties, such as retailers and appliance repair entities. *Id.* ¶¶ 7, 14, 16. LG's written discovery responses and document productions were the subject of several disputes among the parties, which resulted in two motions by Plaintiffs to compel production of documents, each of which the Court granted. *Id.* ¶¶ 11, 18; *Sosenko*, Dkt. Nos. 61 & 85. Plaintiffs in *Bentley* also served, and LG responded to, additional document requests and interrogatories. Joint Decl. ¶ 30.

LG produced over 28,000 pages of documents, and Plaintiffs' subpoenas to non-parties led to the production of additional documents and data. Joint Decl. ¶¶ 7, 32. Plaintiffs also deposed LG's Rule 30(b)(6) witness and a former LG employee with knowledge of LG's customer service procedures. *Id.* ¶¶ 15, 20. Plaintiffs retained a mechanical engineer who reviewed the technical basis for the compressor failures, and two economists and a market research expert for purposes of calculating class-wide damages. *Id.* ¶¶ 13, 33.

**D.**   **Mediation and Settlement**

As the litigation proceeded, the parties concurrently began engaging in settlement discussions, with negotiations eventually spanning a full year. Joint Decl. ¶¶ 31, 34. In August 2019, the parties participated in two in-person mediation sessions overseen by a former Central District of California Magistrate Judge, Hon. Jay Gandhi (Ret.) of JAMS. Following mediation, the parties conferred numerous times over the subsequent months, including at three in-person meetings, and in many telephone conferences, often with LG representatives participating. *Id*. The parties ultimately executed their Settlement Agreement on July 21, 2020, and then separately negotiated attorneys' fees, expenses, and service awards after they had reached agreement on all other issues. The First Amendment to the Settlement Agreement, dated August 14, 2020, reflects that subsequent agreement. *Id*. ¶ 35.

On August 18, 2020, pursuant to stipulation, Plaintiffs filed a First Amended Consolidated Class Action Complaint to consolidate the claims of the *Sosenko* and *Bentley* Plaintiffs and conform the class definition to the Settlement Class definition. *Bentley*, Dkt. No. 51. Additionally, Class Counsel issued subpoenas to five additional retailers (bringing the total number of subpoenas issued to retailers to 23), and pursued additional information sought by the previously issued subpoenas to retailers of the LG Refrigerators.

7

E.      **Material Settlement Terms**

1.      **Settlement Class Definition**

The Settlement Class provisionally certified by the Court on August 19, 2020 comprises all persons in the United States who purchased from an authorized retailer, other than for resale, a Covered Model of LG Refrigerator produced between January 1, 2014 and December 31, 2017. SA ¶ A.1.bbb. The Covered Models are listed in Exhibit 5 to the Settlement Agreement. *Id.*, Ex. 5. The Covered Models are also prominently listed on the Settlement Website, www.LGFridgeSettlement.com. The Settlement Class is largely co-extensive with the class proposed in the original complaint filed in *Bentley*, except that purchasers of LG refrigerators manufactured after December 31, 2017 (who LG claims are bound by arbitration agreements), and purchasers of Kenmore-branded refrigerators marketed and sold by Sears (now in bankruptcy), are not included in the Settlement Class, and thus release no claims and preserve all of their rights. Joint Decl. ¶ 37. In addition, purchasers of LG Refrigerator models of which less than 1,000 units were sold or for which the service rate for No-Cooling Events was less than 1% of sales are not included in the Settlement Class and likewise release no claims. Joint Decl. ¶ 37; *see, e.g.*, *McBean v. City of New York*, 228 F.R.D. 487, 496-98 (S.D.N.Y. 2005) (approving settlement-

8

stage certification of narrowed class). Information provided by LG shows that there are approximately 1.55 million members of the Settlement Class. Joint Decl. ¶ 38.

### 2.    Settlement Consideration

Plaintiffs have already described the settlement consideration in detail (ECF No. 49-1 at 9-15), and a summary is also available at the Settlement Website, www.LGFridgeSettlement.com, and in the Notice of Settlement (also available on the Website at https://www.lgfridgesettlement.com/important-documents.php). In sum, the Settlement provides for cash payments to Settlement Class Members who purchased an LG Refrigerator that stopped cooling, leading to delays in repairs, inconvenience, and out-of-pocket costs. The Settlement also provides prospective relief in the form of an extended warranty, enhanced customer care benefits, and payments for No-Cooling Events occurring within the extended warranty period.

There is no cap on the total payments LG will make. The Settlement Class can receive money to reimburse parts and labor costs as well as property loss (*e.g.*, spoiled food, beverages, or medicine as a result of the refrigerator experiencing a No-Cooling Event), and to compensate them for unsuccessful repairs, delayed repairs, and refrigerator replacement costs. Settlement Class Members can choose whether to support their claims with documentation or a simple attestation. Those who document their claims are eligible for potentially thousands of dollars in recovery based upon their experience, and those without documentation may recover

up to $450 simply for filling out the Claim Form (also available at www.LGFridgeSettlement.com).

For example, Plaintiffs Sarah Johnson and Leah Scala Israel each experienced repair delays exceeding six weeks, so each of them would receive $1,000 to compensate them for those delays. *Bentley* Compl. ¶¶ 70, 60; SA ¶ A.1.q. Plaintiff Carlos Stocco experienced about one month of repair delays, making him eligible to receive at least $520. *Bentley* Compl. ¶ 94; SA ¶ A.1.q. Because Ms. Johnson and Mr. Stocco experienced an unsuccessful repair, each of them can also recover an additional $180. *Bentley* Compl. ¶¶ 69, 92; SA ¶ A.1.ggg. All three Plaintiffs can also recover up to $250 in undocumented property loss (SA ¶¶ A.1.oo-pp), which means that Ms. Johnson can recover up to $1,430, Ms. Israel up to $1,250, and Mr. Stocco up to $950, as well as reimbursement of their repair costs. Additionally, because the Settlement allows recovery for *documented* property loss ***up to $3,500***, each Plaintiff may recover substantially more. SA ¶¶ A.1.oo-pp.

In addition to payments, Settlement Class Members will receive an extended warranty covering the full cost of repairs for cooling failures for five years from the date of purchase, as well as added payments for three or more No-Cooling Events, repair delays of more than 30 days, and property-loss reimbursement. SA, Ex. 3 (Future Relief Payment Schedule). Further, LG has agreed to enhance its warranty service by employing more technicians, developing more reliable replacement parts,

10

and establishing a dedicated team to address cooling failures. LG will also compensate Settlement Class Members for property loss from cooling failures during the five-year extended warranty period. SA ¶ A.1.u. For three years after the Effective Date, LG will provide a report every six months to Class Counsel describing its implementation of the Enhanced Customer Care Program, including information about payments to Settlement Class Members who submit claims for monetary relief under the Enhanced Customer Care Program. SA ¶ C.6.c.

### 3.    Release of Liability

As consideration for the Settlement benefits, LG and its related entities and affiliates (defined in the Settlement Agreement as the "Released Parties," SA ¶ 23), will receive an appropriately limited release of claims arising out of or related to the litigation or the subject matter of the litigation, and which were or could have been asserted in the Litigation. SA ¶ 23; *see Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1561 n.10 (3d Cir. 1994) (enforcing release that "manifest[ed] an intent to settle all disputes that did or might arise out of" the transaction at issue) (citing *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29 (1st Cir. 1991)).

### 4.    Notice and Claim Administration

LG has paid and will continue to pay all notice and administration costs. SA ¶ 1.zz. In granting preliminary approval, the Court appointed Angeion Group, LLC

to serve as the Settlement Administrator and approved its proposed Notice Plan. ECF No. 52 ¶¶ 5-10.

Following preliminary approval, Class Counsel worked to extract Settlement Class Member contact information from U.S. retailers of the LG Refrigerators, and the parties then worked with the Settlement Administrator to de-duplicate that data and pre-populate Claim Forms with individual Settlement Class Member information where possible. ECF Nos. 54, 61; Supplemental Joint Declaration of Daniel C. Girard and Shanon J. Carson in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Supp. Decl."), ¶¶ 4-5. By November 6, 2020, the Settlement Administrator had mailed the Settlement Notice to 1,250,613 Settlement Class Members and e-mailed it to approximately 911,654 Settlement Class Members. ECF No. 61; Declaration of Steven Weisbrot, Esq. of Angeion LLC ("Weisbrot Decl.") ¶¶ 10, 13. The corresponding extensions approved by this Court ensured adequate time intervals for Class Members to respond to the Notice by deciding whether and how to participate in the Settlement. ECF Nos. 54, 61. Settlement Class Members may submit claims until February 5, 2021, and they have until December 10, 2020—more than 30 days after the Notice Plan was completed— to opt out, comment on, or object to the Settlement. ECF No. 61.

Tens of thousands of Settlement Class Members have visited the Settlement Website. Weisbrot Decl. ¶ 30. As of this filing, Settlement Class Members have

submitted over 43,399 Claims, and many additional Claims are being filed each day. Weisbrot Decl. ¶ 35. Only two Settlement Class Members have objected, and just 44 have asked to be excluded from the Settlement Class. Weisbrot Decl. ¶ 37.

### 5.    Attorneys' Fees and Costs; Service Awards

The Settlement Agreement provides that LG will separately pay the attorneys' fees and expenses of Class Counsel, without reducing any of the Settlement Payments or other benefits to Settlement Class Members, subject to the approval of the Court. SA ¶ 29. As noted above, the parties deferred discussion of attorneys' fees until after they had signed the Settlement Agreement. Joint Decl. ¶ 52. On July 20, 2020, the parties appeared again before Judge Gandhi in a mediation focusing on the matter of attorneys' fees, expenses, and service awards, and continued their negotiations in the subsequent weeks. *Id*. The parties ultimately reached an agreement and executed a corresponding amendment to the Settlement Agreement on August 14, 2020. *See* First Amendment to Settlement Agreement, ECF No. 49-3 at pp. 48-53 of 116.

The parties agreed that LG will pay Class Counsel attorneys' fees of $5.5 million plus one-third of the amount claimed by Settlement Class Members, excluding the first 16,500 Claims. *Id*. Thus, if there were fewer than 16,500 Claims, Class Counsel's fee would be limited to $5.5 million. On the other hand, "if, as an illustration, there are 20,000 Claims, then Class Counsel's total fee will include the

13

Base Fee of $5.5 million plus an Additional Fee of one-third of the amount claimed by Eligible Claimants 16,501 through 20,000, which will be paid by LG without reducing the amounts paid to any Settlement Class Member." *Id*.

Under this amendment to the Settlement Agreement, LG further agreed, subject to Court approval, to reimburse Class Counsel's "reasonable, actually incurred costs in full up to $375,000[.]" *Id*. And the parties also agreed, subject to Court approval, to service awards of $2,000 to each of the Class Representatives. First Amendment to Settlement Agreement, ECF No. 49-3 at p. 50 of 116.

## III.   ARGUMENT

### A.   The Court Should Finally Approve The Settlement As Fair, Reasonable, and Adequate

Rule 23 requires that a class action settlement be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:13-CV-6272-MCA-MAH, 2016 WL 7209649, at *1 (D.N.J. Oct. 13, 2016). There is a "strong presumption in favor of voluntary settlement agreements," and this presumption "is especially strong" in class actions. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010). Likewise, an "initial presumption of fairness" applies when "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436

14

(3d Cir. 2016) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); That presumption applies where, as here, "the settlement negotiations preceded the actual certification of the class." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 101 (D.N.J. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

The Settlement Agreement here represents the culmination of a full year of negotiations between the parties and was reached only after in-person mediation sessions overseen by Judge Gandhi. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *3 (D.N.J. June 28, 2018) (citation and alternation omitted); *see also In re Cigna Corp. Secs. Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007). Reviewing 28,000 documents produced by LG and conducting two depositions, including of LG's corporate designee, also gave Plaintiffs "a clear understanding of the strengths and weaknesses of their case." *Udeen v. Subaru of Am., Inc.*, No. CV 18-17334 (RBK/JS), 2019 WL 4894568, at *3 (D.N.J. Oct. 4, 2019). The Court recognized that "[t]he Settlement is the product of non-collusive arm's-length negotiations between experienced counsel who were well informed of the strengths and weaknesses of the Litigation, including through discovery and motion practice . . . ."

15

ECF No. 52, ¶ 3.

As discussed below, the Settlement meets all the criteria for approval set out

by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 157 (internal citations omitted).

**The complexity, expense, and duration of the litigation.** The Settlement

resolves complex litigation that proceeded in multiple jurisdictions. *Sosenko* was

filed on April 1, 2019 and involved complex claims and defenses relating to

numerous consumer fraud and warranty laws. Joint Decl. ¶¶ 3-5. The facts were also

highly complex, implicating hundreds of thousands of durable goods, numerous

product models, and a variety of distribution and repair networks. *Id*. ¶¶ 4, 33. The

Settlement resulted from negotiations that occurred over a twelve-month period. *Id*.

¶¶ 31, 34-35. As such, the first *Girsh* factor weighs in favor of final approval.

**The reaction of the Class to the Settlement.** After an extensive notice

program, only 44 exclusion requests and only two objections—each of which lacks

merit (*see infra* Section B)—have been submitted. Weisbrot Decl. ¶ 37. At the same

time, over 43,399 Claims have already been filed. Weisbrot Decl. ¶ 35. Thus, the Class has reacted very favorably to the Settlement, supporting its final approval.

**The stage of the proceedings and the amount of discovery completed.** In *NFL*, the Third Circuit found this factor satisfied based on informal discovery and counsel's investigation, even where no formal discovery had occurred. 821 F.3d at 438-39. In prosecuting these actions, Class Counsel reviewed and analyzed voluminous documents and data produced by LG and subpoenaed non-parties; took and defended depositions; and retained and worked with expert witnesses and consultants. Joint Decl. ¶¶ 32-33. Therefore, this *Girsh* factor supports final approval here even more strongly than in *NFL*.

**The risks of establishing liability and damages.** LG defended these cases vigorously, asserting numerous legal defenses, such as that it lacked sufficient knowledge to give rise to a duty to disclose the alleged defect, and that it provided adequate warranty service. *Sosenko*, Dkt. No. 17-1. In contrast to the risks, uncertainty, delay, and expense of continued litigation, the Settlement provides certain, timely, and substantial relief to Settlement Class Members both for past no-cooling events and breakdowns that may occur in the future. The uncapped monetary relief under the Settlement is available to over 1.55 million Americans who purchased the allegedly defective LG Refrigerators. By completing the Claim Form, either with a simple attestation or supported by records, Settlement Class Members

17

can receive substantial cash payments for ineffective or delayed repairs, labor and replacement parts, property loss, or refrigerator replacement. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement . . . Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit"). Moreover, the Settlement Class as a whole benefits by virtue of the valuable prospective relief secured by the Settlement, which includes an extended warranty and the Enhanced Customer Care benefits. The requested fee will not diminish or affect any of these benefits. Consequently, this factor strongly supports final approval.

**The risk of maintaining a class action through trial.** Had this action proceeded, Plaintiffs would have faced LG's arguments that no class could be certified where the alleged defect did not necessarily manifest in every Class Member's refrigerator. *See, e.g.*, *Butler v. Porsche Cars N. Am.*, 2017 WL 1398316, at *6 (N.D. Cal. Apr. 19, 2017); *Haag v. Hyundai Motor Am.*, No. 12-CV-6521L, 2019 WL 1029002, at *4 (W.D.N.Y. Mar. 5, 2019) (finding common issues did not predominate in a putative product class action, as "there is no basis for the Court to infer that a reasonable consumer—let alone an entire class of consumers—would have demanded a lower purchase or lease price if they were informed that they might have to perform [auto part] replacement and maintenance . . . earlier than they otherwise expected.") (internal citation omitted). And even if the Court certified a

18

litigation class, Plaintiffs would then face the difficult task of explaining their theory of damages to a lay jury. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig. (Glazer v. Whirlpool Corp.)*, No. 1:08-wp-65001-CAB (N.D. Ohio Oct. 31, 2014), ECF No. 60 (consumer class action resulting in defense verdict following jury trial). Continued litigation therefore would have presented significant costs and risks. *See Udeen*, 2019 WL 4894568, at \*3; *Yaeger v. Subaru of Am., Inc.*, 114CV4490JBSKMW 2016 WL 4541861, at \*9 (D.N.J. Aug. 31, 2016) (prospect of "protracted motion practice" involving the "nuances of various state laws" as well as "costly discovery" weighed in favor of settlement); *In re Philips/Magnavox Television Litig.*, No. CIV.A. 09-3072 CCC, 2012 WL 1677244, at \*8-9 (D.N.J. May 14, 2012) (that claims involved "many complex legal and technical issues that would have required, among other things, expert testimony at trial" supported settlement approval).

**The ability of Defendant to withstand a greater judgment.** LG could undoubtedly withstand a judgment if Plaintiffs prevailed at trial. But that is no barrier to settlement approval under Third Circuit law: "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 323 (3d Cir. 2011) (*en banc*). Thus, this factor is neutral.

19

**The range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.** The parties' Settlement approximates the individual prove-up process that would have followed a successful class trial— but with simplified proof requirements and immediate relief. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (explaining that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members . . . will often be the sensible way to proceed.") (citations omitted). The payment structure under the Settlement provides compensation for the scenarios Class Counsel determined were usually associated with the refrigerator failures—delays and repeat repairs leading to inconvenience and loss of use, expenses for parts and labor, food spoilage, and in some cases, damage to flooring from leaks. All are compensable under the Settlement.

Settlement Class Members can receive: (1) payments of up to $450 without supporting documentation, simply by filling out the Claim Form; or (2) payments for documented claims consisting of: (a) up to $1,000 for unsuccessful repairs (up to $180 for two No-Cooling Events; up to $500 for three No-Cooling Events; and up to $1,000 for four or more No-Cooling Events); (b) up to $1,000 for delayed repairs of at least ten days, starting at $120 and increasing with each additional day of delay; (c) reimbursement of repair costs; (d) up to $3,500 for property loss

20

(including the value of spoiled food, beverages, medicine, perishables, or other property damaged from a No-Cooling Event); (e) $650 for Class members who replaced their refrigerator after a failed repair attempt (in lieu of the payments identified in (a)–(c) above); and (3) reimbursement of parts repair costs. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019*)* (finding that more reimbursement for class members who sought more repairs is equitable).

Given the considerable risks as to liability, class certification, and damages, the Settlement "represents a fair deal for the class" by providing each Settlement Class Member the opportunity to fully recover costs incurred because of the refrigerator failures at issue. *Haas v. Burlington Cty.*, Civil No. 08-1102 (NLH/JS), 2019 WL 413530, at *8 (D.N.J. Jan. 31, 2019); *see also McCoy v. HealthNet, Inc.*, 569 F. Supp. 2d 448, 461-62 (D.N.J. 2008) (noting risks to plaintiffs from "difficult questions of law" and "inherent risks" of conflicting testimony). Thus, all the applicable *Girsh* factors weigh in favor of granting final approval to the Settlement.

Final approval is further supported by additional factors the Court may consider "when appropriate"—including "whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims

under the settlement is fair and reasonable." *Beneli*, 324 F.R.D. at 102 (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 323 (3d Cir. 1998)).

First, Settlement Class Members are permitted to opt out of the Settlement. SA ¶ 21. Second, as discussed in Class Counsel's fee application (ECF No. 56), the Base Fee will return Class Counsel's "lodestar" and compensate them for their ongoing monitoring of LG's compliance with its enhanced warranty commitments.[2] Any Additional Fee will be earned under the percentage-of-recovery method as it will depend on the number and value of claims made. ECF No. 56. Third, the claim procedure is fair, and an experienced and impartial Settlement Administrator will review the Claim Forms and determine the payment amounts.

### B.    The Two Objections Should Be Overruled

Out of the approximately 1.55 million Settlement Class Members, Class Counsel have to date received only two objections. Neither has any merit.

The objection from Samuel E. Whitley is based on a misimpression of the extended warranty relief under the Settlement. ECF No. 62. Mr. Whitley writes that the Settlement should provide for a warranty extension of five years—yet the Settlement in fact *does* provide the Class with a five-year warranty extension

---

[2] Class Counsel's lodestar as of the filing of its Motion for Attorneys' Fees, Expenses, and Service Awards was already $3,966,947.75, such that the Base Fee would correspond to a "multiplier" of only 1.37. ECF No. 56-1 at 17. Class Counsel's lodestar has increased since that filing and will continue to increase.

covering both parts and labor. SA ¶¶ A.1.q, ss, yy, ggg; C.6.b; Exs. 1, 4 (Claim Forms referring to failures within five-year period). This warranty extension provides four years of additional and expanded coverage, beyond the one-year labor warranty LG previously offered in connection with these products. Mr. Whitley's primary objection, therefore, is already addressed by the relief under the Settlement.

Contrary to Mr. Whitley's belief that his refrigerator will inevitably fail, the inverse is true—the odds are in Mr. Whitley's favor, as failure remains the exception and not the rule across all the Covered Models. Moreover, while LG specifically discloses that refrigerators equipped with the magnetic compressor used in the Covered Models are prone to making "a loud rattling noise" if moved while the compressor is operating, any concerns on Mr. Whitley's part about the operation of his refrigerator should be raised with the manufacturer immediately while the appliance remains under warranty, rather than waiting until the warranty expires. As to the merits of Mr. Whitley's objection that counsel should have held out for a longer extended warranty, Class Counsel did in fact hold out. The extension of the warranty was the subject of extensive discussions, and the Settlement reflects the best available terms after a full year of negotiations. LG was simply unwilling to offer a greater warranty extension, considering its legal defenses, the other benefits available under the Settlement and industry standards.

23

Mr. Whitley also complains that the separate one-year warranty extension provided under the Settlement starts from the Effective Date or the Notice Date, whichever comes first.[3] SA ¶ C.6.d. The purpose of the separate one-year warranty extension is to provide additional coverage to the small percentage of Settlement Class Members who are not eligible for the five-year extension because they made their relevant purchase before December 2015. Individuals in that group also can submit a claim for compensation if they experienced a No-Cooling event within the first five years after purchase, and, consistent with the Settlement benefits, those who did not experience such an event have received five years of ordinary usage. Again, even if such a Settlement Class Member experiences a No-Cooling event outside of the five-year window, the Settlement provides them with an additional extended warranty period—covering free repairs and enhanced customer care benefits—through the earlier of the Effective Date or one year after the Notice Date. These provisions reasonably ensure all Settlement Class Members receive protection.

Class Counsel also received an e-mail attaching a purported objection (Supp. Decl. Ex. A) from a disbarred lawyer, Steven Helfand, who has been flagged by multiple federal judges as a "professional objector." *See Rodman v. Safeway Inc.*,

---

[3] Mr. Whitley did not provide his purchase date. Without that information, Class Counsel are unable to determine if Mr. Whitley is eligible for this separate extension and has standing to raise the issue.

No. 11-CV-03003-JST, 2018 WL 4030558, at *7 n.6 (N.D. Cal. Aug. 23, 2018); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *42 (N.D. Ga. Mar. 17, 2020). Mr. Helfand did not follow the designated procedure for objecting to this Settlement, as he neither mailed his purported objection to the Settlement Administrator nor provided any evidence demonstrating that he is a Settlement Class Member. SA ¶ 22. Thus, as in *Brown v. Hain Celestial Group*, "Mr. Helfand, has provided no proof that he is a class member. . . . [H]e neither provides receipts nor identifies the products he claims to have bought." No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016). He therefore lacks standing to object. *See Feder v. Elec. Data Systems Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007); *Newberg on Class Actions* § 13:22 (5th ed. 2014) ("[O]bjectors who fail to demonstrate their class membership are often held not to have standing, as they have not met the burden").

Mr. Helfand's conclusory objections are frivolous in any event. Contrary to his assertion that the Notice is "ineffectual," Class Counsel went above and beyond to subpoena Settlement Class Member contact information from 23 U.S. retailers of the LG Refrigerators; direct notice was mailed to 1,250,613 Settlement Class Members and e-mailed to 911,654 Settlement Class Members (who will also receive a second notice by e-mail shortly), and the Settlement Administrator has already received over 43,399 Claims. Weisbrot Decl. ¶ 35.

Mr. Helfand's demand for an extension of all deadlines ignores the existing extensions for Settlement Class Members to make a claim, opt out, or object. ECF No. 61. Moreover, because Mr. Helfand states that he reviewed the Notice—and therefore had the opportunity to participate in (or timely object to) the Settlement—these arguments do not apply to him and he lacks standing to assert the rights of third parties. *See Hovsons, Inc. v. Secretary of Interior*, 711 F.2d 1208, 1213 (3d Cir. 1983) (citing *Warth v. Seldin*, 422 U.S. 490, 499-501 (1975)). Mr. Helfand also fails to explain why it would be necessary for the Notice to project a claims rate when the monetary relief is uncapped rather than a fixed sum to be divided among claimants. The Court has already found that the Notice satisfies Rule 23 and due process. ECF No. 52, ¶ 5. Mr. Helfand's remaining assertions are similarly devoid of any support and baseless for reasons that Plaintiffs have previously described.

### C.   <u>The Court Should Certify The Settlement Class</u>

In addition to finally approving the Settlement, the Court should make final its provisional certification of the Settlement Class. ECF No. 52, ¶¶ 1-2. "A class may be certified for settlement purposes where the proposed class satisfies the four requirements of Federal Rule of Civil Procedure 23(a) and one of the elements of Rule 23(b)." *Marchese v. Cablevision Sys. Corp.*, No. CV-102190-MCA, 2016 WL

7228739, at *1 (D.N.J. Mar. 9, 2016).

### 1.    Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Class includes purchasers of approximately 1,550,000 LG Refrigerators. Numerosity is therefore satisfied.

### 2.    Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The test for commonality is "easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994), and it is met here. *See Alin v. Honda Motor Co.*, No. CIV.A. 08-4825 KSH, 2012 WL 8751045, at *5 (D.N.J. Apr. 13, 2012) (defect was "a common thread . . . sufficient to satisfy the commonality requirement").

This case involves a set of products with a common design and alleged defect, and the common questions of law and fact include whether the LG Refrigerators were defective at the time of sale; whether and to what extent the alleged defect impairs the value of the LG Refrigerators; whether LG knew of the alleged defect but continued to sell the LG Refrigerators without disclosing the defect or its consequences to consumers; whether the alleged defect is material to consumers; and whether LG had a duty to disclose it. *See, e.g.*, *Udeen*, 2019 WL 4894568, at *5 (common questions included "whether the class vehicles are defective, whether Defendants should have disclosed the alleged defect, whether the allegedly

27

concealed information was material to consumers, and whether class members were harmed"). Thus, commonality is readily satisfied.

### 3.     Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "[I]f the claims of the named Plaintiffs and class members involve the same conduct by the defendant, typicality is established." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 107 (D.N.J. 2012) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)); *see NFL*, 821 F.3d at 428.

The claims of Plaintiffs and all Settlement Class Members are typical because they arise under similar consumer and warranty laws and stem from a common alleged defect and course of conduct by LG, which marketed and sold the allegedly defective goods. *See, e.g.*, *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW, 2016 WL 70817, at *6 (D.N.J. Jan. 6, 2016) (typicality satisfied where class suit alleged defendants "knowingly placed Class Vehicles containing the alleged defect into the stream of commerce and refused to honor its warranty obligations"); *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 478 (E.D. Pa. 2010) (typicality met where "all claims are based on the failure of CertainTeed shingles and CertainTeed's liability for that failure.").

28

### 4.     Adequacy of Representation Under Rule 23(a)(4)

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement assures that the named plaintiffs' claims "are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); *see also In re Cmty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 622 F.3d 275, 291 (3d Cir. 2010).

Plaintiffs and Settlement Class Members have a common interest in seeking fair compensation for their damage attributable to LG's allegedly defective refrigerators. Plaintiffs have no interests adverse to the interests of any other class member and are committed to vigorously prosecuting this case. *See, e.g.*, *In re Philips/Magnavox*, 2012 WL 1677244, at *6 (plaintiffs would adequately represent interests of class where they purchased the same allegedly defective televisions as the rest of the class and were allegedly injured in the same manner).

Additionally, Plaintiffs have retained competent counsel experienced in the prosecution of consumer protection class actions who are familiar with the legal and factual issues involved in this matter. *See, e.g.*, *McGee v. Cont'l Tire N. Am., Inc.*, No. CIV. 06-6234 (GEB), 2009 WL 539893, at *11 (D.N.J. Mar. 4, 2009) (counsel's relevant experience supported finding of adequacy). Class Counsel's work has

29

included investigating the cause of the cooling failures; drafting the complaints; successfully opposing a motion to dismiss; propounding written discovery requests; taking written discovery and depositions; and briefing, arguing, and prevailing on motions to compel discovery. On a separate track, Class Counsel also engaged in protracted ADR and settlement negotiations with LG, which included several mediation sessions and numerous meetings, and ultimately achieved a favorable result against skilled defense counsel. Joint Decl. ¶¶ 3-35.

Thus, the adequacy requirement is met.

### 5.    Predominance and Superiority Under Rule 23(b)(3)

For settlement purposes, common questions of law and fact predominate over questions that may affect individual Settlement Class Members. Predominance "does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances," *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015), but asks if "efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005) (citation omitted). And there is "a 'key' distinction between certification for settlement purposes and certification for litigation: when taking a proposed settlement into consideration, individual issues which are normally present in litigation usually become irrelevant, allowing the common issues to predominate." *Id.*; *see Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 618-20 (1997).

Plaintiffs and the Settlement Class Members all purchased LG Refrigerators with the same alleged defect. Whether the refrigerators are defective, whether LG had a duty disclose the defect, whether the concealed information was material, and whether Class members sustained cognizable harm are all questions capable of resolution by common evidence. By contrast, the individual questions mostly relate to damages and are less important. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, No. CIV.A. 09-4146 CCC, 2013 WL 1192479, at *6 (D.N.J. Mar. 22, 2013) (predominance met where "[t]he Class Members share common questions of law and fact, such as whether Volvo knowingly manufactured and sold defective automobiles without informing consumers . . . . [and] liability in this case depends on Volvo's alleged conduct in manufacturing and selling the Class Vehicles.").

The superiority requirement of Rule 23(b)(3) is met when—as here— adjudicating claims in one action is "far more desirable than numerous separate actions litigating the same issues." *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 259 (3d Cir. 2009). Moreover, because the amount of each individual Settlement Class Member's claim is small relative to the complexity of the litigation and the cost to litigate against LG on an individual basis, no Class Member would be likely to pursue a separate action. *See O'Brien v. Brain Research Labs, LLC,* No. CIV.A. 12-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012). The proposed

31

Settlement delivers prompt, certain relief while avoiding the substantial judicial burdens and the risk of inconsistent rulings that would arise from repeated adjudication of the same issues in individual actions. *See Henderson*, 2013 WL 1192479, at *6.

Thus, all requirements of Rule 23 are satisfied, making it appropriate to grant final certification of the Settlement Class.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval of the Settlement and enter the Final Approval Order and Judgment.

Dated: November 24, 2020                    Respectfully submitted,

<u>s/ Amey J. Park</u>
Shanon J. Carson (*pro hac vice*)
Lawrence Deutsch (NJ 034971986)
Jacob M. Polakoff (NJ 035832006)
Amey J. Park (NJ 070422014)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:   (215) 875-3000
Fax:   (215) 875-4604
scarson@bm.net
ldeutsch@bm.net
jpolakoff@bm.net
apark@bm.net

Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Adam E. Polk (*pro hac vice*)

32

Simon S. Grille (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
sgrille@girardsharp.com

Benjamin F. Johns (NJ 038182005)
Samantha E. Holbrook (NJ 034162011)
**CHIMICLES SCHWARTZ KRINER &**
  **DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
bfj@chimicles.com
seh@chimicles.com

*Counsel for Plaintiffs and the Settlement
Class*